Robert V. Prongay (SBN 270796)
   *rprongay@glancylaw.com*
Charles Linehan (SBN 307439)
   *clinehan@glancylaw.com*
Pavithra Rajesh (SBN 323055)
   *prajesh@glancylaw.com*
GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Counsel for Plaintiffs Rick Green and Evgenia Nikitina*

[Additional Counsel on Signature Page]

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICK GREEN AND EVGENIA NIKITINA, Individually And On Behalf Of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> MAISON SOLUTIONS INC., JOHN XU, ALEXANDRIA M. LOPEZ, TAO HAN, BIN WANG, MARK WILLIS, XIAOXIA ZHANG, JOSEPH STONE CAPITAL, LLC, and AC SUNSHINE SECURITIES LLC, <br><br> Defendants. | Case No. <br><br> **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> **JURY TRIAL DEMANDED** |

Plaintiffs Rick Green and Evgenia Nikitina ("Plaintiffs"), individually and on behalf of all others similarly situated, by and through their attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiffs, which are alleged upon personal knowledge. Plaintiffs' information and belief is based upon, among other things, their counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Maison Solutions Inc. ("Maison" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Maison; and (c) review of other publicly available information concerning Maison.

## NATURE OF THE ACTION AND OVERVIEW

1.     This is a class action on behalf of persons and entities that purchased or otherwise acquired Maison (a) Class A common stock pursuant and/or traceable to the registration statement and prospectus (collectively, the "Registration Statement") issued in connection with the Company's October 2023 initial public offering ("IPO" or the "Offering"); and/or (b) securities between October 5, 2023 and December 15, 2023, inclusive (the "Class Period"). Plaintiffs pursue claims under the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act").

2.     Maison is a specialty grocery retailer offering Asian food and merchandise to U.S. consumers.

3.     On October 5, 2023, the Company filed its prospectus on Form 424B4 with the SEC, which forms part of the Registration Statement. In the IPO, the Company sold 2,500,000 shares of Class A common stock at a price of $4.00 per share. The Company received net proceeds of approximately $10 million from the Offering. The proceeds from the IPO were purportedly to be used for new store acquisitions and expansion, including opening new stores and the acquisition of businesses and supermarkets that complement the business, including to acquire

"90% equity interests in (a) the Alhambra Store from Ms. Grace Xu, spouse of John Xu, our chief executive officer, and (b) Dai Cheong from Mr. Xu, by paying off the SBA loans held by each entity of approximately $2.0 million and $2.4 million, respectively, as partial consideration for such acquisitions[.]"

4.     On December 15, 2023, at approximately 2:30 p.m. Eastern Standard Time, Hindenburg Research published a report about Maison, alleging a number of "red flags" concerning potentially illegal activities. Hindenburg reported that Defendant John Xu, the Company's Chief Executive Officer, is also the President of J&C International Group ("J&C") a company which "support[s] immigration services for high-net-worth Chinese investors" and that J&C, John Xu and an alleged related entity, Hong Kong Supermarkets, allegedly used supermarkets as a front to defraud the EB-5 visa program. Hindenburg's investigation further revealed that the Company may be "being pumped by WhatsApp chat rooms" with screenshots of chatrooms showing "trading plans."

5.     On this news, Maison's stock price fell $12.71 per share, or 83.6%, to close at $2.50 per share on Friday, December 15, 2023, on unusually heavy trading volume.

6.     By the commencement of this action, Maison stock has traded as low as $1.50 per share, a more than 62% decline from the $4 per share IPO price.

7.     In the Registration Statement and throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that the Company's vendor XHJC Holdings Inc., is a related party; (2) that the Company's CEO and related entities were alleged to have used supermarkets as a front to defraud the EB-5 visa program; and (3) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

8.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiffs and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9.     The claims asserted herein arise under and pursuant to Sections 11 and 15 of the Securities Act (15 U.S.C. §§ 77k and 77o), Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

10.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, Section 22 of the Securities Act (15 U.S.C. § 77v) and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

11.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District. In addition, the Company's principal executive offices are in this District.

12.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

13.     Plaintiff Rick Green, as set forth in the accompanying certification, incorporated by reference herein, purchased or otherwise acquired Maison Class A common stock pursuant and/or traceable to the Registration Statement issued in connection with the Company's IPO and/or Maison securities during the Class

Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

14. Plaintiff Evgenia Nikitina, as set forth in the accompanying certification, incorporated by reference herein, purchased or otherwise acquired Maison Class A common stock pursuant and/or traceable to the Registration Statement issued in connection with the Company's IPO and/or Maison securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

15. Defendant Maison is incorporated under the laws of Delaware with its principal executive offices located in Monterey Park, California. Maison's Class A common stock trades on the NASDAQ exchange under the symbol "MSS."

16. Defendant John Xu ("Xu") was, at all relevant times, the Chief Executive Officer ("CEO"), Chairman of the Board of Directors, and President, and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

17. Defendant Alexandria M. Lopez ("Lopez") was the Chief Financial Officer ("CFO") of the Company at all relevant times, and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

18. Defendants Xu and Lopez (collectively, the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew

that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein.

19.   Defendant Tao Han ("Han") was, at all relevant times, the Chief Operating Officer of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

20.   Defendant Bin Wang ("Wang") signed or authorized the signing of the Company's Registration Statement filed with the SEC as a "director nominee."

21.   Defendant Mark Willis ("Willis") signed or authorized the signing of the Company's Registration Statement filed with the SEC as a "director nominee."

22.   Defendant Xiaoxia Zhang ("Zhang") signed or authorized the signing of the Company's Registration Statement filed with the SEC as a "director nominee."

23.   Defendants Xu, Lopez, Han, Wang, Willis, and Zhang are also collectively referred to hereinafter as the "Securities Act Individual Defendants."

24.   Defendant Joseph Stone Capital, LLC ("Joseph Stone") served as an underwriter for the Company's IPO. In the IPO, Joseph Stone agreed to purchase 2,000,000 shares of the Company's common stock, exclusive of the over-allotment option.

25.   Defendant AC Sunshine Securities LLC ("AC Sunshine") served as an underwriter for the Company's IPO. In the IPO, AC Sunshine agreed to purchase 500,000 shares of the Company's common stock, exclusive of the over-allotment option.

26.   Defendants Joseph Stone and AC Sunshine are collectively referred to hereinafter as the "Underwriter Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

27.     Maison is a specialty grocery retailer offering Asian food and merchandise to U.S. consumers. Soon after its founding in 2019, the Company acquired three retail Asian supermarkets in Los Angeles, California and subsequently rebranded them as "HK Good Fortune Supermarkets" or "Hong Kong Supermarkets." The Company has since acquired a fourth supermarket as well as a wholesale supplier. Three of the Company's acquisitions, GF Supermarket of MP, Inc., HKGF Market of Alhambra, Inc, and Dai Cheong Trading Inc., were acquired in whole or in part as related party transactions between the Company's CEO, Defendant John Xu and/or his wife, Grace Xu.

### The Company's False and/or Misleading
### Registration Statement and Prospectus

28.     On June 14, 2023, the Company filed its final amendment to the Registration Statement with the SEC on Form S-1/A, which forms part of the Registration Statement.

29.     On September 13, 2023, the Company filed a post-effective amendment for the registration statement with the SEC on Form POS AM, which forms part of the Registration Statement. The Registration Statement was declared effective September 29, 2023.

30.     On October 5, 2023, the Company filed its prospectus on Form 424B4 with the SEC, which forms part of the Registration Statement. In the IPO, the Company sold 2,500,000 shares of Class A common stock at a price of $4.00 per share. The Company received net proceeds of approximately $10 million from the Offering. The proceeds from the IPO were purportedly to be used for new store acquisitions and expansion, including opening new stores and the acquisition of businesses and supermarkets that complement the business. Specifically, the net proceeds of the IPO would be used to complete the acquisition and expansion of the

"90% equity interests in (a) the Alhambra Store from Ms. Grace Xu, spouse of John Xu, our chief executive officer, and (b) Dai Cheong from Mr. Xu, by paying off the SBA loans held by each entity of approximately $2.0 million and $2.4 million, respectively, as partial consideration for such acquisitions[.]"

31.    The Registration Statement was negligently prepared and, as a result, contained untrue statements of material facts or omitted to state other facts necessary to make the statements made not misleading, and was not prepared in accordance with the rules and regulations governing its preparation.

32.    Under applicable SEC rules and regulations, the Registration Statement was required to disclose all transactions with related parties, all relevant on-going litigation and all known trends, events or uncertainties that were having, and were reasonably likely to have, an impact on the Company's continuing operations.

33.    The Registration Statement stated that the Company's affiliation with XHJC Holding Inc. ("XHJC") was limited to a vendor and supplier relationship, stating in relevant part:

> ***Maison believes that a centralized and efficient vendor and supply management system is the key to profitability***. ***Maison has major vendors***, including Drop in The Ocean, Inc., ONCO Food Corp., GF Distribution, Inc. and ***XHJC Holding Inc.*** For the year ended April 30, 2023, three suppliers accounted for 20%, 18% and 14% of the Company's total purchases, respectively. For the year ended April 30, 2022, three suppliers accounted for 23%, 21% and 14% of the Company's total purchases, respectively. For the three months ended July 31, 2023, two suppliers accounted for 34% and 19% of the Company's total purchases, respectively. For the three months ended July 31, 2022, three suppliers accounted for 21%, 20%, and 19% of the Company's total purchases, respectively.
>
> *          *          *
>
> The Company entered a promissory note with its vendor XHJC Holding Inc. on January 1, 2022, with a total loan amount of up to $1,000,000 with 4% interest. On November 4, 2022, XHJC Holding Inc. repaid the remaining $433,136 in full to the Company.
>
> *          *          *
>
> As of April 30, 2023, the prepayment mainly consists of $1,527,243 paid to XHJC Holding Inc which is the Company's new centralized

vendor and $20,000 paid to GF distribution, the Company's major vendor.

As of April 30, 2022, the $656,917 prepayment is the amount the company paid to XHJC Holding Inc. This vendor requires approximately one month prepayment for purchases. The prepayment balance, as of April 30, 2022, was used for the Company's May 2022 purchase. The $70,737 prepaid expense is the amount the Company paid to its insurance company to purchase next term general liability insurance.

34. The Company disclosed only the following names associated with Related Party transactions: The United Food LLC, GF Supermarket of MP, Inc., Hong Kong Supermarket of Monterey Park, Ltd, HKGF Market of Alhambra, Inc., Dai Cheong Trading Co Inc., J&C International Group LLC, Good Fortune CA3, LP, Ideal Investment, and Ideal City Capital. The Company did disclose a due on demand, non-interest bearing payable loan of $108,361 from J&C International Group LLC, a related party transaction with Defendant Xu, who holds majority ownership of this entity.

35. The Company claimed that "*there is no pending litigation or proceeding involving any of our directors, officers or employees for which indemnification is sought, and we are not aware of any threatened litigation that may result in claims for indemnification*." Moreover, the Company purported to disclose ongoing legal proceedings, stating in relevant part:

The Company is otherwise periodically involved in various legal proceedings that are incidental to the conduct of its business, including, but not limited to, employment discrimination claims, customer injury claims, and investigations.

\*        \*        \*

In May 2020, Maison El Monte was named as a co-defendant in a complaint filed by a consumer advocacy group alleging violations of a California health and safety regulation. The case is pending in the Superior Court of the State of California, and as such, the Company has not made any accruals of possible loss for the year ended April 30, 2023 related to this case.

\*        \*        \*

In June 2022, Maison San Gabriel entered into a confidential settlement agreement with the plaintiff in connection with a California

employment law case whereby Maison San Gabriel agreed to pay $98,500 to plaintiff in full settlement of all claims in the case. As a result of the settlement agreement, the Company accrued $98,500 as a loss relating to the case for the fiscal year ended April 30, 2022. During the year ended April 30, 2023, the Company accrued additional $40,000 litigation loss. This settlement amount is subject to reduction by a court proceeding scheduled in 2023.

36.     The Registration Statement was materially false and misleading and omitted to state: (1) that the Company's vendor, XHJC, is a related party; (2) that the Company's CEO and related entities were alleged to have used supermarkets as a front to defraud the EB-5 visa program; and (3) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis..

**Materially False and Misleading**

**Statements Issued During the Class Period**

37.     The Class Period begins on October 5, 2023. On that day, Maison's common stock began publicly trading pursuant to the Registration Statement, including the statements identified in ¶¶33-35.

38.     On November 29, 2023, the Company filed a registration statement on Form S-1 for the sale of up to 1,190,476 shares of Class A common stock by certain selling shareholders from time to time. Therein, Maison stated that it "has major vendors, including . . . XHJC Holding Inc.," but the list of related party transactions did not identify XHJC. Moreover, the Company stated: "At present, there is no pending litigation or proceeding involving any of our directors, officers or employees for which indemnification is sought, and we are not aware of any threatened litigation that may result in claims for indemnification."

39.     On December 11, 2023, the Company filed its prospectus related to the stock offered for sale by certain shareholders, which made substantially the same statements identified in the November 29, 2023 registration statement.

40.     The above statements identified in ¶¶ 37-39 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's

business, operations, and prospects.  Specifically, Defendants failed to disclose to investors: (1) that the Company's vendor, XHJC, is a related party; (2) the Company's CEO and related entities were alleged to have used supermarkets as a front to defraud the EB-5 visa program; and (3) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

### The Subsequent Disclosures

41.    On December 15, 2023, at approximately 2:30 p.m. Eastern Standard Time, Hindenburg Research published a report (the "Hindenburg Report") alleging that Maison exhibited "multiple red flags" and concluding that there is a high probability that Maison "has become bloated in size due to illegal and nefarious pumping/manipulation."

42.    The Hindenburg Report alleged that Maison's vendor, XHJC, "is an undisclosed related party." The Hindenburg report shows the principal address for XHJC Holdings Inc is a business associated with Defendant Xu, the Company's CEO, showing the address of XHJC Holding Inc is 2026 Huntington Drive, San Marino, CA 91108, and that located at that address is a restaurant named "Masamitu Japanese Cuisine." The Hindenburg Report showed that Masamitu Japanese Cuisine lists Defendant Xu as part of the registration statement:

[image on following page]

FICTITIOUS BUSINESS NAME STATE-
MENT FILE NO. 2022054029 FIRST FIL-
ING.
The following person(s) is (are) doing
business as MASAMITSU JAPANESE
CUISINE, 2026 Huntington Drive , San
Marino, CA 91108. Mailing Address, 127
N Garfield Ave, Monterey Park, Ca 91754.
This business is conducted by a corpora-
tion. Registrant commenced to transact
business under the fictitious business
name or names listed herein on Febru-
ary 2022. Signed: LVL Management Inc
(CA- 4170030), 2026 Huntington Drive
, San Marino, CA 91108; John Jun Xu,
Secretary. The statement was filed with
the County Clerk of Los Angeles on March
9, 2022. NOTICE: This fictitious business
name statement expires five years from
the date it was filed in the office of the
County Clerk. A new fictitious business
name statement must be filed prior to that
date. The filing of this statement does not
of itself authorize the use in this state of a
fictitious business name in violation of the
rights of another under federal, state or
common law (See Section 14400 et seq.,
Business and Professional Code).
Pub. Monrovia Weekly March 17, 2022,
March 24, 2022, March 31, 2022, April 7,
2022

43.    The Hindenburg Report also alleged that Maison is embroiled in a previously undisclosed, ongoing litigation set for trial related to Defendant Xu's alleged use of supermarkets as a front to defraud the EB-5 visa program:

> In $MSS IPO prospectus, Chairman, CEO and key holder John Xu is also listed as President of J&C International Group, LLC, "a cross-border investment firm" since 2013. J&C's website says it "support[s] immigration services for high-net-worth Chinese investors and institutions".

> *              *              *

> J&C International, $MSS CEO John Xu and related entity Hong Kong Supermarkets were named as defendants in 2020 litigation alleging they used supermarkets as a front to defraud the EB-5 visa program.

structure. Defendants made no mention of Plaintiff's salary or payroll. Plaintiff was told to simply to sit in the executive office during his work hours. Plaintiff was given no tasks to perform. Defendants did not provide Plaintiff with a written employment agreement between Plaintiff and ZHL or Hong Kong Supermarket, nor any other writing establishing Plaintiff as a

9

COMPLAINT

bona fide employee, manager or executive of either entity.

39.     The next day, Emily told plaintiff that there are other "executives" do not come in to work at all, and plaintiff could do the same. Plaintiff is informed and believes and thereon alleges that Emily's statement about other "executives" at the same location who perform no work whatsoever evidences Defendants' use of Hong Kong Supermarket as a front for a scheme of immigration fraud, and as the spurious work location of other purported "managers" and "executives" on whose behalf Defendants are preparing and submitting documents to defraud USCIS.

*          *          *

The plaintiff alleged that *J&C International took a $500k investment in Hong Kong Supermarket from him to help him get his Visa*.

*He alleged that $MSS CEO John Xu and J&C forged his Visa application, and listed him as a fake employee of a supermarket location now owned by $MSS*.

62.     Plaintiff is informed and believes and thereon alleges that at all times herein mentioned J&C International is in the "investment for green card business" targeting Chinese immigrant investors including Plaintiff; and the many businesses associated with John Xu are fake companies and sham corporations for the purpose of obtaining work visa and green card for J&C International's victims.

*          *          *

The plaintiff alleged that when he asked for copies of his visa application, he was threatened with retaliation by J&C and John Xu.

*The court found in favor of the plaintiff, and defendants lost an appeal.*

1    ***The case is currently being scheduled for trial.***

2                    *              *              *

3    ***In a separate lawsuit from 2018, a plaintiff alleged that J&C and***
4    ***$MSS CEO John Xu engaged in a scheme to loot his company and***
     ***turn it into an illegal visa mill***.

5        44.    Significantly, the Hindenburg Report alleged the Company's stock

6    price was being manipulated:

7        Our investigation also revealed that $MSS is being ***pumped by***
         ***WhatsApp chat rooms***, in similar fashion to what we saw with a
8        similar China-based pump and dump, $GDHG, which crashed ~90% in
         one day of trading last week. The chatroom dialogues were nearly

9

10   November 28th Trading Plan

11   Code : MSS (NASDAQ)

12   Limit Order Buy : 12.██ / Market Price

13
     Quantity : Buy █████ Shares
14

15   Expected profit this time around 15%.
     Anticipated holding period to conclude
16   within 4 business days. After the trade,
     please send me detailed screenshots
17   of your buying process. This will help
     me monitor and track your real-time
18   situation.                         9:54 AM

19       identical.

20

21   ***On Nov. 22 2023 Maison closed a private placement of 1,190,476***
     ***shares of its common stock at $4.20 per share to 2 foreign***
22   ***individuals. One purchase was for 892,857 shares, representing***
     ***5.12% of the total outstanding shares and the largest holding outside***
23   ***of the CEO.***

24   ***The closing price on the day was $10.87, giving these unnamed***
     ***buyers an instant 61% discount on shares they turned around and***
25   ***registered for re-sale one week later. The Prospectus filing for sale of***
     ***these shares was filed on December 11th.***

26

27

28

CLASS ACTION COMPLAINT

45.     On this news, Maison's stock price fell $12.71 per share, or 83.6%, to close at $2.50 per share on Friday, December 15, 2023, on unusually heavy trading volume.

46.     By the commencement of this action, Maison stock has traded as low as $1.50 per share, a more than 62% decline from the $4 per share IPO price.

**CLASS ACTION ALLEGATIONS**

47.     Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Maison: (a) Class A common stock pursuant and/or traceable to the Company's false and/or misleading Registration Statement issued in connection with the Company's IPO; and/or (b) securities between October 5, 2023 and December 15, 2023, inclusive, and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

48.     The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, Plaintiffs believe that there are at least hundreds or thousands of members in the proposed Class.  The Company sold 2,500,000 shares of Class A common stock in the IPO. Moreover, record owners and other members of the Class may be identified from records maintained by Maison or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

49.     Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

50.     Plaintiffs will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

51.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws was violated by Defendants' acts as alleged herein;

(b)     whether the Registration Statement, statements made by Defendants to the investing public in connection with the Company's IPO, and statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Maison; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

52.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

53.     The market for Maison's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Maison's securities traded at artificially inflated prices during the Class Period.  Plaintiffs and other members of the Class purchased or otherwise acquired Maison's securities relying upon the integrity of

the market price of the Company's securities and market information relating to Maison, and have been damaged thereby.

54.    During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Maison's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading. The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Maison's business, operations, and prospects as alleged herein.

55.    At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiffs and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Maison's financial well-being and prospects. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiffs and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

56.    Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiffs and the Class.

57.    During the Class Period, Plaintiffs and the Class purchased Maison's securities at artificially inflated prices and were damaged thereby. The price of the Company's securities significantly declined when the misrepresentations made to

1  the market, and/or the information alleged herein to have been concealed from the
2  market, and/or the effects thereof, were revealed, causing investors' losses.

3  **SCIENTER ALLEGATIONS**

4      58.   As alleged herein, Defendants acted with scienter since Defendants
5  knew that the public documents and statements issued or disseminated in the name
6  of the Company were materially false and/or misleading; knew that such statements
7  or documents would be issued or disseminated to the investing public; and
8  knowingly and substantially participated or acquiesced in the issuance or
9  dissemination of such statements or documents as primary violations of the federal
10 securities laws.  As set forth elsewhere herein in detail, the Individual Defendants,
11 by virtue of their receipt of information reflecting the true facts regarding Maison,
12 their control over, and/or receipt and/or modification of Maison's allegedly
13 materially misleading misstatements and/or their associations with the Company
14 which made them privy to confidential proprietary information concerning Maison,
15 participated in the fraudulent scheme alleged herein.

16 **APPLICABILITY OF PRESUMPTION OF RELIANCE**
17 **(FRAUD-ON-THE-MARKET DOCTRINE)**

18     59.   The market for Maison's securities was open, well-developed and
19 efficient at all relevant times.  As a result of the materially false and/or misleading
20 statements and/or failures to disclose, Maison's securities traded at artificially
21 inflated prices during the Class Period.  On December 14, 2023, the Company's
22 share price closed at a Class Period high of $15.21 per share. Plaintiffs and other
23 members of the Class purchased or otherwise acquired the Company's securities
24 relying upon the integrity of the market price of Maison's securities and market
25 information relating to Maison, and have been damaged thereby.

26     60.   During the Class Period, the artificial inflation of Maison's shares was
27 caused by the material misrepresentations and/or omissions particularized in this
28 Complaint causing the damages sustained by Plaintiffs and other members of the

Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Maison's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of Maison and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiffs and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

61.    At all relevant times, the market for Maison's securities was an efficient market for the following reasons, among others:

(a)    Maison shares met the requirements for listing, and was listed and actively traded on the Nasdaq, a highly efficient and automated market;

(b)    As a regulated issuer, Maison filed periodic public reports with the SEC and/or the Nasdaq;

(c)    Maison regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)    Maison was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

62.    As a result of the foregoing, the market for Maison's securities promptly digested current information regarding Maison from all publicly available

sources and reflected such information in Maison's share price. Under these circumstances, all purchasers of Maison's securities during the Class Period suffered similar injury through their purchase of Maison's securities at artificially inflated prices and a presumption of reliance applies.

63. A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

64. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that

the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Maison who knew that the statement was false when made.

## FIRST CLAIM

### Violation of Section 11 of the Securities Act

### (Against All Defendants)

65.     Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

66.     This claim is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of the Class, against the Defendants.

67.     The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

68.     Maison is the registrant for the IPO.  Defendants named herein were responsible for the contents and dissemination of the Registration Statement.

69.     As issuer of the shares, Maison is strictly liable to Plaintiffs and the Class for the misstatements and omissions.

70.     None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement was true and without omissions of any material facts and were not misleading.

71.     By reasons of the conduct herein alleged, each Defendant violated, and/or controlled a person who violated Section 11 of the Securities Act.

72.     Plaintiffs acquired Maison shares pursuant and/or traceable to the Registration Statement for the IPO.

73.     Plaintiffs and the Class have sustained damages.  The value of Maison Class A common stock has declined substantially subsequent to and due to the Defendants' violations.

## SECOND CLAIM

### Violation of Section 15 of the Securities Act

### (Against the Securities Act Individual Defendants)

74.     Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

75.     This claim is asserted against the Securities Act Individual Defendants and is based upon Section 15 of the Securities Act.

76.     The Securities Act Individual Defendants, by virtue of their offices, directorship, and specific acts were, at the time of the wrongs alleged herein and as set forth herein, controlling persons of Maison within the meaning of Section 15 of the Securities Act.  The Securities Act Individual Defendants had the power and influence and exercised the same to cause Maison to engage in the acts described herein.

77.     The Securities Act Individual Defendants' positions made them privy to and provided them with actual knowledge of the material facts concealed from Plaintiffs and the Class.

78.     By virtue of the conduct alleged herein, the Securities Act Individual Defendants are liable for the aforesaid wrongful conduct and are liable to Plaintiffs and the Class for damages suffered.

## THIRD CLAIM

### Violation of Section 10(b) of The Exchange Act and

### Rule 10b-5 Promulgated Thereunder

### Against Maison and the Individual Defendants

79.     Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

80.   During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiffs and other Class members, as alleged herein; and (ii) cause Plaintiffs and other members of the Class to purchase Maison's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

81.   Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Maison's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

82.   Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Maison's financial well-being and prospects, as specified herein.

83.   Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Maison's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Maison's and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of

business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

84.     Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

85.     Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Maison's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately

refraining from taking those steps necessary to discover whether those statements were false or misleading.

86.  As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Maison's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiffs and the other members of the Class acquired Maison's securities during the Class Period at artificially high prices and were damaged thereby.

87.  At the time of said misrepresentations and/or omissions, Plaintiffs and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiffs and the other members of the Class and the marketplace known the truth regarding the problems that Maison was experiencing, which were not disclosed by Defendants, Plaintiffs and other members of the Class would not have purchased or otherwise acquired their Maison securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

88.  By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

89.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## <u>FOURTH CLAIM</u>

### <u>Violation of Section 20(a) of The Exchange Act</u>
### <u>Against the Individual Defendants</u>

90.     Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

91.     The Individual Defendants acted as controlling persons of Maison within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiffs contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiffs to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

92.     In particular, the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

93.     As set forth above, Maison and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

94.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiffs and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiffs and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiffs hereby demand a trial by jury.

1   DATED:  January 4, 2024

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**GLANCY PRONGAY & MURRAY LLP**

By: */s/ Pavithra Rajesh*
Robert V. Prongay
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email:  prajesh@glancylaw.com

**THE LAW OFFICES OF FRANK R. CRUZ**
Frank R. Cruz
2121 Avenue of the Stars, Suite 800
Century City, CA 90067
Telephone: (310) 914-5007

*Counsel for Plaintiffs Rick Green and Evgenia Nikitina*

**SWORN CERTIFICATION OF PLAINTIFF**

**MAISON SOLUTIONS INC. SECURITIES LITIGATION**

I, Rick Green, certify that:

1. I have reviewed the Complaint, adopt its allegations, and authorize the filing of a Lead Plaintiff motion on my behalf.

2. I did not purchase the Maison Solutions Inc. securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3. I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4. My transactions in Maison Solutions Inc. securities during the Class Period set forth in the Complaint are as follows:

   (See attached transactions)

5. I have not sought to serve, nor served, as a representative party on behalf of a class under this title during the last three years, except for the following:

6. I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

12/21/2023
_____
Date

_____
Rick Green

**Rick Green's Transactions in Maison Solutions Inc. (MSS)**

| Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 12/7/2023 | Bought | 775 | $13.5000 |
| 12/11/2023 | Bought | 5,458 | $14.0000 |
| 12/12/2023 | Bought | 50 | $14.5000 |
| 12/15/2023 | Sold | -6,283 | $2.1942 |

**SWORN CERTIFICATION OF PLAINTIFF**

**MAISON SOLUTIONS INC. SECURITIES LITIGATION**

I, Evgenia Nikitina, certify that:

1. I have reviewed the Complaint, adopt its allegations, and authorize the filing of a Lead Plaintiff motion on my behalf.

2. I did not purchase the Maison Solutions Inc. securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3. I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4. My transactions in Maison Solutions Inc. securities during the Class Period set forth in the Complaint are as follows:

    (See attached transactions)

5. I have not sought to serve, nor served, as a representative party on behalf of a class under this title during the last three years, except for the following:

6. I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

12/21/2023
_____
Date

*Evgenia Nikitina*
_____
Evgenia Nikitina

**Evgenia Nikitina's Transactions in Maison Solutions Inc. (MSS)**

| Date | Transaction Type | Quantity | Unit Price |
|------|------------------|----------|------------|
| 12/7/2023 | Bought | 1,440 | $13.5000 |
| 12/12/2023 | Sold | -1,440 | $15.6900 |
| 12/13/2023 | Bought | 68 | $14.7000 |
| 12/13/2023 | Bought | 1,350 | $14.7000 |
| 12/15/2023 | Sold | -1,418 | $2.4420 |