Robert V. Prongay (SBN 270796)
   *rprongay@glancylaw.com*
Leanne H. Solish (SBN 280297)
   *lsolish@glancylaw.com*
GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Counsel for Lead Plaintiffs and Lead Counsel*

[Additional Counsel on Signature Page]

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RICK GREEN AND EVGENIA NIKITINA, Individually And On Behalf Of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>MAISON SOLUTIONS INC., JOHN XU, ALEXANDRIA M. LOPEZ, TAO HAN, BIN WANG, MARK WILLIS, XIAOXIA ZHANG, JOSEPH STONE CAPITAL, LLC, and AC SUNSHINE SECURITIES LLC,<br><br>Defendants. | Case No. 2:24-cv-00063-SPG(KS)<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**<br><br>Judge:    Hon. Sherilyn Peace Garnett<br>Date:     October 23, 2024<br>Time:     1:30 p.m.<br>Courtroom: 5C |

# TABLE OF CONTENTS

I.    Preliminary Statement ...................................................................................... 1

II.   Factual Background ........................................................................................... 2

    A.    Maison Goes Public ................................................................................. 2

    B.    Two Months After The IPO, The Truth Emerges .................................... 3

III.  Applicable Legal Standards Disfavor Defendants' Motion ............................. 4

IV.   Plaintiffs Allege Claims Under Section 11 of the Securities Act .................... 5

    A.    Plaintiffs Face A Minimal Pleading Burden ........................................... 5

    B.    The IPO Registration Statement Contained Misleading Statements And Omissions ................................................................................................. 7

        1.    The IPO Registration Statement Failed To Disclose The Pendency Of The Zang Action .................................................................... 8

        2.    The IPO Registration Statement Failed To Disclose Multiple Related Parties .......................................................................... 12

V.    Plaintiffs Allege Claims Under Section 10(b) Of The Exchange Act ............ 16

    A.    Plaintiffs Allege Material Misrepresentations And Omissions During The Class Period ......................................................................................... 16

    B.    Plaintiffs Allege A Strong Inference Of Scienter ................................. 17

        1.    Plaintiffs Allege Strong Circumstantial Evidence Of Scienter .. 18

        2.    Scienter Can be Inferred When Defendants Knew Of Their Disclosure Obligations .............................................................. 21

        3.    Plaintiffs Have Alleged Maison's Scienter .............................. 22

        4.    Defendants Fail To Raise A *More* Cogent And Compelling Inference Of Non-Culpability ................................................... 22

    C.    Plaintiffs Plead Loss Causation ........................................................ 23

OPPOSITION TO MOTION TO DISMISS

VI.     The Bespeaks Caution Doctrine And The PSLRA Safe Harbor Do Not Apply ........................................................................................................24

VII.    Plaintiffs Allege Control Person Liability.......................................................26

VIII.   Conclusion.......................................................................................................27

OPPOSITION TO MOTION TO DISMISS

# **TABLE OF AUTHORITIES**

CASES

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)............................................................................................4

*Berson v. Applied Signal Tech., Inc.*,
   527 F.3d 982 (9th Cir. 2008) .............................................................................8

*Bos. Ret. Sys. v. Uber Techs., Inc.*,
   2020 WL 4569846 (N.D. Cal. Aug. 7, 2020) .....................................................6

*Brown v. China Integrated Energy, Inc.*,
   875 F. Supp. 2d 1096 (C.D. Cal. 2012).......................................................15, 21

*Brown v. China Integrated Energy, Inc.*,
   2013 WL 12124124 (C.D. Cal. Apr. 22, 2013)...................................................7

*Cheung v. Keyuan Petrochemicals, Inc.*,
   2012 WL 5834894 (C.D. Cal. Nov. 1, 2012) ....................................................21

*Cho v. UCBH Holdings, Inc.*,
   890 F. Supp. 2d 1190 (N.D. Cal. 2012)..................................................22, 26, 27

*City of Roseville Emps.' Ret. Sys. v. EnergySolutions, Inc.*,
   814 F. Supp. 2d 395 (S.D.N.Y. 2011) ................................................................9

*Crews v. Rivian Auto., Inc.*,
   2023 WL 4361098 (C.D. Cal. July 3, 2023) .....................................................26

*Cullen v. RYVYL Inc.*,
   2024 WL 898206 (S.D. Cal. Mar. 1, 2024)..........................................................7

*Dresner v. Silverback Therapeutics, Inc.*,
   2023 WL 2913755 (W.D. Wash. Apr. 12, 2023) .................................................7

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
   751 F.3d 990 (9th Cir. 2014) ............................................................................18

*Eminence Capital, LLC v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003) ...................................................................27

*Fecht v. The Price Co.*,
70 F.3d 1078 (9th Cir. 1995) .......................................................................8

*Feyko v. Yuhe Int'l, Inc.*,
2013 WL 816409 (C.D. Cal. Mar. 5, 2013) .............................................15

*Flynn v. Sientra, Inc.*,
2016 WL 3360676 (C.D. Cal. June 9, 2016)...............................................7

*Garcia v. J2 Glob., Inc.*,
2021 WL 1558331 (C.D. Cal. Mar. 5, 2021) ...........................................24

*Henning v. Orient Paper, Inc.*,
2011 WL 2909322 (C.D. Cal. July 20, 2011) ..........................................22

*Herman & MacLean v. Huddleston*,
459 U.S. 375 (1983)......................................................................................5

*Hildes v. Arthur Andersen LLP*,
734 F.3d 854 (9th Cir. 2013) .......................................................................5

*Hollinger v. Titan Cap. Corp.*,
914 F.2d 1564 (9th Cir. 1990) ..................................................................22

*Howard v. Everex Sys., Inc.*,
228 F.3d 1057 (9th Cir. 2000) .............................................................18, 26

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
2012 WL 3758085 (S.D.N.Y. Aug. 29, 2012) ........................................14

*In re Alphabet, Inc. Sec. Litig.*,
1 F.4th 687 (9th Cir. 2021) ..................................................................10, 22

*In re Amgen Inc. Sec. Litig.*,
544 F. Supp. 2d 1009 (C.D. Cal. 2008).................................................11, 27

*In re A-Power Energy Generation Sys. Ltd. Sec. Litig.*,
2012 WL 1983341 (C.D. Cal. May 31, 2012)........................................13, 21

*In re Atossa Genetics Inc. Sec. Litig.*,
    868 F.3d 784 (9th Cir. 2017) ..............................................................................17, 25

*In re Banc of California Sec. Litig.*,
    2017 WL 3972456 (C.D. Cal. Sept. 6, 2017) ....................................................11, 15

*In re BofI Holding, Inc. Sec. Litig.*,
    977 F.3d 781 (9th Cir. 2020) .............................................................................23, 24

*In re Celera Corp. Sec. Litig.*,
    2013 WL 4726097 (N.D. Cal. Sept. 3, 2013)...........................................................25

*In re Charles Schwab Corp. Sec. Litig.*,
    257 F.R.D. 534 (N.D. Cal. 2009) .............................................................................26

*In re China Educ. All., Inc. Sec. Litig.*,
    2011 WL 4978483 (C.D. Cal. Oct. 11, 2011) ..........................................................15

*In re China Mobile Games & Entertainment Group, Ltd Securities Litigation*,
    2016 WL 922711 (S.D.N.Y. Mar. 7, 2016)..............................................................14

*In re Countrywide Fin. Corp. Sec. Litig.*,
    588 F. Supp. 2d 1132 (C.D. Cal. 2008).............................................................11, 26

*In re CytRx Corp. Sec. Litig.*,
    2015 WL 5031232 (C.D. Cal. July 13, 2015) ....................................................26, 27

*In re Facebook, Inc. Sec. Litig.*,
    87 F.4th 934 (9th Cir. 2023) ....................................................................................16

*In re Galena Biopharma, Inc. Sec. Litig.*,
    117 F. Supp. 3d 1145 (D. Or. 2015).........................................................................16

*In re Genius Brands Int'l, Inc. Sec. Litig.*,
    97 F.4th 1171 (9th Cir. 2024) ..........................................................11, 16, 23, 24

*In re Gilead Scis. Sec. Litig.*,
    536 F.3d 1049 (9th Cir. 2008) .....................................................................4, 23, 24

*In re Gupta Corp. Sec. Litig.*,
    900 F. Supp 1217 (N.D. Cal 1994).........................................................................14

v
OPPOSITION TO MOTION TO DISMISS

*In re Immune Response Sec. Litig.*,
375 F. Supp. 2d 983 (S.D. Cal. 2005) ..................................................................7, 8

*In re LDK Solar Sec. Litig.*,
584 F. Supp. 2d 1230 (N.D. Cal. 2008)....................................................................23

*In re Merck & Co., Inc. Sec. Litig.*,
432 F.3d 261 (3d Cir. 2005) ....................................................................................26

*In re Montage Tech. Grp. Ltd. Sec. Litig.*,
78 F. Supp. 3d 1215 (N.D. Cal. 2015).................................................................13, 21

*In re Musicmaker.com Sec. Litig.*,
2001 WL 34062431 (C.D. Cal. June 4, 2001).........................................................26

*In re Oracle Corp. Sec. Litig.*,
627 F.3d 376 (9th Cir. 2010) ...................................................................................18

*In re PetSmart, Inc. Securities Litigation*,
61 F. Supp. 2d 982 (D. Ariz. 1999) .........................................................................14

*In re QuantumScape Sec. Class Action Litig.*,
580 F. Supp. 3d 714 (N.D. Cal. 2022).....................................................................15

*In re Questcor Sec. Litig.*,
2013 WL 5486762 (C.D. Cal. Oct. 1, 2013) ..............................................................5

*In re Rigel Pharms., Inc. Sec. Litig.*,
697 F.3d 869 (9th Cir. 2012) ...................................................................................22

*In re Snap Inc. Sec. Litig.*,
2018 WL 2972528 (C.D. Cal. June 7, 2018).............................................................9

*In re Stac Elecs. Sec. Litig.*,
89 F.3d 1399 (9th Cir. 1996) .....................................................................................7

*In re STEC Inc. Sec. Litig.*,
2011 WL 2669217 (C.D. Cal. June 17, 2011).........................................................24

*In re VeriFone Holdings, Inc. Sec. Litig.*,
704 F.3d 694 (9th Cir. 2012) ..............................................................................17, 18

*In re Washington Mut., Inc. Sec., Deriv. & ERISA Litig.*,
   259 F.R.D. 490 (W.D. Wash. 2009) ......................................................................7, 26

*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018) ...............................................................4, 5, 10, 17

*Knollenberg v. Harmonic, Inc.*,
   152 F. App'x 674 (9th Cir. 2005)..........................................................................5, 6

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*,
   416 F.3d 940 (9th Cir. 2005) ...................................................................................25

*Lorenzo v. Sec. & Exch. Comm'n*,
   587 U.S. 71 (2019)......................................................................................................16

*Macquarie Infrastructure Corp. v. Moab Partners, L.P.*,
   601 U.S. 257 (2024)......................................................................................................9

*Makor Issues & Rights, Ltd. v. Tellabs, Inc.*,
   513 F.3d 702 (7th Cir. 2008) ...................................................................................20

*Mallen v. Alphatec Holdings, Inc.*,
   861 F. Supp. 2d 1111 (S.D. Cal. 2012) ................................................................25

*Matrixx Initiatives, Inc. v. Siracusano*,
   563 U.S. 27 (2011).........................................................................................8, 16, 18

*Miller v. Thane Int'l, Inc.*,
   519 F.3d 879 (9th Cir. 2008) ...................................................................................17

*N.M. State Inv. Council v. Ernst & Young LLP*,
   641 F.3d 1089 (9th Cir. 2011) ................................................................................18

*Ng v. Berkeley Lights, Inc.*,
   2024 WL 695699 (N.D. Cal. Feb. 20, 2024).......................................................15

*Nguyen v. Radient Pharm. Corp.*,
   2011 WL 5041959 (C.D. Cal. 2011) ...............................................................11, 12

vii
OPPOSITION TO MOTION TO DISMISS

*No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp.*,
320 F.3d 920 (9th Cir. 2003) ........................................................................ 12, 27

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
575 U.S. 175 (2015) ...................................................................................... 5, 8, 9

*Reese v. BP Expl. (Alaska) Inc.*,
643 F.3d 681 (9th Cir. 2011) ............................................................................. 17

*Rubke v. Capitol Bancorp Ltd.*,
551 F.3d 1156 (9th Cir. 2009) ............................................................................. 7

*S. Ferry LP #2 v. Killinger*,
687 F. Supp. 2d 1248 (W.D. Wash. 2009) ......................................................... 20

*SEB Inv. Mgmt. AB v. Wells Fargo & Co.*,
2024 WL 3579322 (N.D. Cal. July 29, 2024) .................................................... 19

*Snellink v. Gulf Res., Inc.*,
870 F. Supp. 2d 930 (C.D. Cal. 2012) ............................................... 13, 14, 15, 21

*Steckman v. Hart Brewing, Inc.*,
143 F.3d 1293 (9th Cir. 1998) ......................................................................... 9, 11

*Tabor v. Bodisen Biotech, Inc.*,
579 F. Supp. 2d 438 (S.D.N.Y. 2008) ................................................................ 14

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) ..................................................................................... *passim*

*Tsirekidze v. Syntax-Brillian Corp.*,
2009 WL 275405 (D. Ariz. Jan. 30, 2009) ........................................................... 6

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) ............................................................................. 5

*Webb v. Solarcity Corp.*,
884 F.3d 844 (9th Cir. 2018) ............................................................................. 22

STATUTES

15 U.S.C. §77k...............................................................................................................5

15 U.S.C. §77k(a) ...................................................................................................5, 6, 8

15 U.S.C. §77o(a) .........................................................................................................26

15 U.S.C. §77z-2.....................................................................................................24, 25

15 U.S.C. §77z-2 (b)(2)(D).............................................................................................26

15 U.S.C. §78j(b)...........................................................................................................16

15 U.S.C. §78t(a) ..........................................................................................................26

15 U.S.C. §78u-4(b).........................................................................................................7

15 U.S.C. §78u-4(b)(2) ..................................................................................................17

15 U.S.C. §78u-5.....................................................................................................24, 25

15 U.S.C. §78u-5(b)(2)(D) .............................................................................................26

RULES

Fed. R. Civ. P. 8........................................................................................................5, 6

Fed. R. Civ. P. 8(a) .......................................................................................................26

Fed. R. Civ. P. 9(b) .................................................................................................5, 6, 7

Fed. R. Civ. P. 12(b)(6) ...................................................................................................4

REGULATIONS

17 C.F.R. §229.103..........................................................................................................9

17 C.F.R. §240.10b-5 .....................................................................................................16

Lead Plaintiffs Migwang Jeong, Yun Jung Kim, Yousub Jun, Lee Sun-Bok, and Hyeonnam Gang ("Plaintiffs") respond to Defendants'[1] Motion to Dismiss (ECF No. 40, the "Motion")[2] the Amended Class Action Complaint (ECF No. 33, the "AC").

## I.    Preliminary Statement

Maison is a grocery retailer offering Asian foods and merchandise. The Company is largely owned and controlled by CEO, President, and Chairman, Xu. As a businessman with many ventures, Xu entwined his businesses with Maison. The Company has borrowed and lent money to Xu and his wife, and a significant portion of Maison's assets were acquired from Xu, his wife, or with companies owned by them. Maison also intends to use a significant portion of the proceeds from its October 2023 initial public offering ("IPO") to acquire additional entities owned by Xu and his wife.

However, Maison's IPO offering materials failed to disclose other significant related party transactions with three entities that were either under Xu's common control or in which Xu had the ability to significantly influence that entity. The IPO offering materials also failed to disclose pending litigation against Xu, another of his businesses, and one of Maison' supermarkets. Maison and the Individual Defendants continued these omissions throughout the Class Period (October 5, 2023 – December 15, 2023).

On December 15, 2023, Hindenburg Research posted the results of their investigation into Maison. The investigation uncovered the pending litigation and that Maison's new centralized vendor appeared to be an undisclosed related party. Maison's shares fell *83.6%* on this news.

---

[1] Defendants are Maison Solutions, Inc. ("Maison" or the Company"), John Xu ("Xu"), Alexandria M. Lopez ("Lopez"), Tao Han ("Han"), Bin Wang ("Wang"), Mark Willis ("Willis"), Xiaoxi Zhang ("Zhang"), Joseph Stone Capital, LLC and AC Sunshine Securities LLC. The Individual Defendants are Xu, Lopez, Han, Wang, Willis, and Zhang. Underwriter Defendants are Joseph Stone Capital and AC Sunshine Securities.

[2] Defendants' accompanying memorandum of law is cited as "Mot. __," citations to the AC are "¶__," and citations to the exhibits attached to the AC are "Ex. __." Unless otherwise noted, alterations, citations, and quotations are omitted and emphasis is added.

This securities class action concerns these material omissions. The AC sufficiently alleges that Defendants materially misled investors, violating the Securities Act of 1933 (the "Securities Act"). Defendants were both required to disclose these facts under Securities and Exchange Commission ("SEC") regulations and in order to make other statements in the IPO offering documents not misleading. The AC also sufficiently alleges violations of the Securities Exchange Act of 1934 (the "Exchange Act") by raising a cogent and compelling inference of scienter in connection with the materially misleading statements and omissions throughout the Class Period, and sufficiently alleges loss causation.

Defendants' motion should be denied and this case should proceed to discovery.

## II.    Factual Background

Maison is a specialty grocery retailer offering Asian food and merchandise. ¶40. Formed in 2019, Maison has acquired majority interests in four Good Fortune or Hong Kong Supermarkets around Los Angeles County, rebranding them as "HK Good Fortune Supermarkets" or "Hong Kong Supermarkets." Maison has minority interests in two additional supermarkets and Dai Cheong, a wholesale supplier of food and groceries imported from Asia. ¶¶40-42. Maison is largely run and controlled by Xu. ¶¶26, 51-55.

### A.    Maison Goes Public

In October 2023, Maison went public. The Company first filed its registration statement with the SEC on Form S-1 on May 22, 2023, and thereafter filed a number of amendments. ¶44. On September 29, 2023 the SEC declared Maison's registration statement effective. *Id.*

On October 4, 2023, Maison announced its pricing of the IPO at $4 per share of Class A common stock. ¶45. The following day, Maison filed its final prospectus with the SEC for its IPO (the "IPO Prospectus"), which forms part of the registration statement (the IPO Prospectus and Form S-1 are collectively referred to as the "IPO Registration Statement"). *Id.* That day, Maison's Class A common stock began trading on NASDAQ, with the ticker symbol MSS. *Id.*

On October 10, 2023, Maison closed its IPO of 2,500,000 shares of its Class A common stock at a price of $4 per share. ¶46. Maison received $10 million in gross proceeds, and net proceeds of approximately $8.72 million from its IPO. *Id.* Defendants Joseph Stone and AC Sunshine served as underwriters for the IPO. ¶¶34-35. In addition, as part of the IPO, Maison's executive officers and directors – *i.e.*, the Individual Defendants – were subject to a lock up provision, pursuant to which they could not trade their shares of Maison Class A common stock. ¶46, n.1.

On November 22, 2023, Maison announced the closing of a private placement to two non-U.S. persons. In connection with the private placement offering, Maison agreed to provide for the resale of these shares. ¶48. In accordance with this agreement, Maison filed a registration statement on Form S-1 on November 29, 2023, which was declared effective by the SEC on December 6, 2023. On December 11, 2023, Maison filed a prospectus with the SEC (the "Selling Shareholders Prospectus"), which forms part of the registration statement (the Selling Shareholders and Form S-1 together are referred to as the "Selling Shareholders Registration Statement"). ¶49.

**B.      Two Months After The IPO, The Truth Emerges**

The Company's stock quickly soared following the IPO, closing at $15.21 per share of Class A common stock on December 14, 2023. ¶56. The next day, December 15, 2023, Hindenburg Research ("Hindenburg") made several posts on the social media platform X, formerly known as Twitter, detailing the results of its investigation into Maison, noting that it found "multiple red flags." ¶¶5, 57.

In its posts, Hindenburg, through its analysis of Los Angeles Superior Court filings, uncovered a previously undisclosed 2020 lawsuit alleging that Xu and another of his businesses, J&C,[3] used the Hong Kong Supermarkets "as a front to defraud the EB-5

---

[3] J&C International Group ("J&C") describes itself as a cross-border investment firm that "supports immigration services for high-net-worth Chinese investors and institutions." ¶¶5, 26, 58 (cleaned up). Xu has served as J&C's Director and President since 2013, and Lopez served as its CFO from 2014 to 2023. ¶¶26, 27.

visa program." ¶¶5, 58.  Captioned *Zang v. Xu, et al.*, Case No. 20GDC00485 (Cal. Super. Ct.) (the "Zang Action"), the litigation centers around the plaintiff being "steered" into investing in, and working at, a now Maison-owned supermarket, and specifically brings two causes of action against the supermarket.  ¶¶58, 63-68.

Hindenburg also revealed that Maison may not be reporting all its related party transactions.  Specifically, Hindenburg pointed out that the principal address for Maison's new centralized vendor, XHJC Holdings, Inc. ("XHJC"), was the same address of a restaurant, Masamitsu Japanese Cuisine, that was also associated with Xu based on a fictitious business name filing, and also that XHJC's mailing address was the same as J&C's current website, and thus appeared to be an undisclosed related party.  ¶¶5, 59-60.

On this news, Maison's Class A common stock fell $12.71 per share—over ***83%***—to close at just $2.50 per share, on unusually heavy trading volume.  ¶¶6, 61.  Maison's stock price has not recovered and closed at just $1.35 per share on June 14, 2024 (the last trading day prior to the filing of the AC), well below the $4 per share IPO price, and a more than 91% decline from Maison's all-time high share price.  ¶7.

## III.    Applicable Legal Standards Disfavor Defendants' Motion

In ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court "must … accept all factual allegations … as true," and construe them in the light most favorable to the plaintiff.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see also Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1014 (9th Cir. 2018) ("courts must interpret the allegations and factual disputes in favor of the plaintiff at the pleading stage").  A complaint must "contain sufficient factual matter … to state a claim that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "[A] district court ruling on a motion to dismiss is not sitting as a trier of fact," and "so long as the plaintiff alleges facts to support a theory that is not facially implausible, the court's skepticism is best reserved for later stages of the proceedings." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1057 (9th Cir. 2008).  As such, "[a] complaint should not be dismissed unless it appears beyond a doubt that the plaintiff cannot prove any set of facts

in support of the claim that would entitle him or her to relief." *In re Questcor Sec. Litig.*, 2013 WL 5486762, at *8 (C.D. Cal. Oct. 1, 2013); *see also Khoja*, 899 F.3d at 1008 ("Dismissal is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory").

## IV.    Plaintiffs Allege Claims Under Section 11 of the Securities Act

Plaintiffs bring claims under Section 11 of the Securities Act, 15 U.S.C. §77k ("Section 11"), against all Defendants.  Section 11 creates a private remedy for any purchaser of a security if "any part of the registration statement ... contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading[.]"  15 U.S.C. § 77k(a).

"Section 11 places a relatively minimal burden on a plaintiff." *Hildes v. Arthur Andersen LLP*, 734 F.3d 854, 859 (9th Cir. 2013); *Herman & MacLean v. Huddleston*, 459 U.S. 375, 382 (1983).  "The section was designed to assure compliance with the disclosure provisions of the Act by imposing a stringent standard of liability on the parties who play a direct role in a registered offering." *Hildes*, 734 F.3d at 859.  Thus, plaintiffs bringing Section 11 claims are not required to plead or prove scienter, reliance, or loss causation.  15 U.S.C. § 77k(a); *Hildes*, 734 F.3d at 860; *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 179 (2015).  "Liability against the issuer of a security is virtually absolute, even for innocent misstatements." *Hildes*, 734 F.3d at 859.  "As long as a plaintiff purchased a security issued pursuant to a registration statement, he need only show a material misstatement or omission to establish his *prima facie* case." *Id.*; 15 U.S.C. §77k(a).

### A.    Plaintiffs Face A Minimal Pleading Burden

Fed. R. Civ. P. 8's "notice-pleading" standard applies to the Securities Act claims, as they do not "sound in fraud." *Knollenberg v. Harmonic, Inc.*, 152 F. App'x 674, 683 (9th Cir. 2005).  Defendants incorrectly assert otherwise.  Mot. 8-9.  A claim is subject to the heightened pleading requirement of Fed. R. Civ. P. 9(b) only if it "sound[s] in fraud." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-05 (9th Cir. 2003).

Plaintiffs' Securities Act claims sound in strict liability and negligence, and are thus subject to the notice pleading standard of Fed. R. Civ. P. 8.

The factors that courts consider demonstrate that the AC does not sound in fraud. First, Plaintiffs separate their fraud-based claims from those that are not, laying out the AC in a structure to keep these claims separate. Plaintiffs first allege facts applicable to all claims, devoid of allegations of fraud (¶¶1-92), next allege the basis for Plaintiffs' Securities Act claims (¶¶93-110), and then allege the basis for, and additional facts supporting, Plaintiffs' Exchange Act claims (¶¶111-167). This clear delineation supports a determination that the Section 11 claim does not sound in fraud. *See, e.g.*, *Knollenberg*, 152 F. App'x at 684 (where "plaintiffs have made an effort to plead a non-fraudulent basis for Section 11 liability," claims under the Securities Act violations were not "grounded in fraud"); *Tsirekidze v. Syntax-Brillian Corp.*, 2009 WL 275405, at *7 (D. Ariz. Jan. 30, 2009) (similar).

Second, Plaintiffs' Section 11 claim is carefully couched in the language of strict liability and negligence, not fraud. *See, e.g.*, ¶¶93-95, 171-182; *see also, e.g.*, *Bos. Ret. Sys. v. Uber Techs., Inc.*, 2020 WL 4569846, at *4 (N.D. Cal. Aug. 7, 2020) (Fed. R. Civ. P. 8 applied where the complaint stated the claims are based on strict liability and negligence theories). And lastly, Plaintiffs have disclaimed all allegations of fraud (*see* ¶¶93, 172, 184),[4] and have not incorporated the fraud allegations in the Exchange Act claims into the Securities Act claims (¶¶171, 183). *Uber Techs.*, 2020 WL 4569846, at *4 ("While … a disclaimer alone is insufficient … here [plaintiffs] made an effort to plead a non-fraudulent basis for Section 11 liability" and thus "the heightened Rule 9(b) standard thus will not apply").

---

[4]Alleging that "Defendants 'made a series of materially misleading statements or omissions of material fact in offering materials in connection [with] Maison's IPO'" does not elevate Plaintiffs' allegations to an "express[] plead[ing of] fraudulent conduct[.]" *Contra* Mot. 9. Rather, the pleading of materially misleading statements and/or omissions is *the* essential element of pleading a Section 11 claim. 15 U.S.C. § 77k(a).

Moreover, a Securities Act claim does not "sound in fraud" for those defendants who are not named or mentioned in the Exchange Act claims and are not alleged to have engaged in fraud of any kind—like the Underwriter Defendants here. *See, e.g.*, *Cullen v. RYVYL Inc.*, 2024 WL 898206, at *6 (S.D. Cal. Mar. 1, 2024) ("Plaintiffs need not meet the heightened pleading standard of Rule 9(b) for the Underwriter Defendants" when these defendants were not alleged to have violated the Exchange Act and the complaint does not "suggest" that they engaged in fraud); *Flynn v. Sientra, Inc.*, 2016 WL 3360676, at *17 (C.D. Cal. June 9, 2016) (similar); *In re Washington Mut., Inc. Sec., Deriv. & ERISA Litig.*, 259 F.R.D. 490, 504 (W.D. Wash. 2009) ("Rule 9(b) applies only to those defendants also accused in the underlying fraud.").

In addition, "the scienter requirement of Rule 9(b) does not apply to Section 11 claims, even when a section 11 claim sounds in fraud." *Brown v. China Integrated Energy, Inc.*, 2013 WL 12124124, at *12 (C.D. Cal. Apr. 22, 2013); *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 n.3 (9th Cir. 1996) ("Of course, the scienter requirement of Rule 9(b) does not apply to Section 11 claims, as such claims may be based on negligent or innocent misstatements or omissions."). Nor do the heightened pleading requirements of the Private Securities Litigation Reform Act of 1995 (15 U.S.C. §78u-4(b), "PSLRA"). *Rubke v. Capitol Bancorp Ltd.*, 551 F.3d 1156, 1161 (9th Cir. 2009).

Even if it were deemed that the Section 11 claim sounded in fraud, Plaintiffs have alleged it with particularity. *In re Immune Response Sec. Litig.*, 375 F. Supp. 2d 983, 1038 (S.D. Cal. 2005) (because the complaint "gives details about the contents of the [registration] statement and contains information on why it was false" it "meets the requirements of Rule 9(b)"); *Dresner v. Silverback Therapeutics, Inc.*, 2023 WL 2913755, at *6 (W.D. Wash. Apr. 12, 2023) (Fed. R. Civ. P 9(b) satisfied if complaint "set[s] forth what is false or misleading about a statement, and why it is false.").

**B.      The IPO Registration Statement Contained Misleading Statements And Omissions**

Section 11 imposes strict liability on every person who issues, underwrites, or

signs offering materials for securities that contain an untrue or misleading statement or omission.  15 U.S.C. §77k(a).  "Section 11 thus creates two ways to hold issuers liable for the contents of a registration statement—one focusing on what the statement says and the other on what it leaves out."  *Omnicare*, 575 U.S. at 179.  A statement or omission is misleading "if it would give a reasonable investor the 'impression of a state of affairs that differs in a material way from the one that actually exists.'"  *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 985 (9th Cir. 2008).

A misrepresentation or omission is material if there is "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available."  *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 38 (2011).  The "materiality" of a misrepresentation or omission is a fact-specific inquiry reserved for a jury.  *Fecht v. The Price Co.*, 70 F.3d 1078, 1080-81 (9th Cir. 1995).  "Only if 'reasonable minds' could not disagree that the challenged statements were not misleading should the district court dismiss under 12(b)(6)."  *Immune Response*, 375 F. Supp. 2d at 1021-22.

Plaintiffs bring Section 11 claims based on two categories of misleading statements and omissions in the IPO Registration Statement,[5] and specifically identify the omitted fact necessary to make the statements therein not misleading: (1) the pendency of the Zang Action and the substance thereof; and (2) the existence of a number of related party transactions and balances.  ¶¶97-110.

### 1.  The IPO Registration Statement Failed To Disclose The Pendency Of The Zang Action

The IPO Registration Statement represented that there was no pending legal proceedings that would have a material adverse effect on the Company's financials or for which indemnification would be sought.  ¶¶97-98.  These representations were rendered misleading by Defendants' failure to disclose the pendency of the Zang Action, in which

---

[5] Each of the Individual Defendants signed or authorized the signing of the IPO Registration Statement.  ¶¶26-31, 95.

various causes of action were brought against Xu and the Maison-owned Hong Kong Supermarket in Monterey Park, CA.  The Zang Action concerns, *inter alia*, the plaintiff's alleged investment in and unpaid work at the Monterey Park supermarket.  ¶¶42, 63-68, 97-99.  *See, e.g.*, *In re Snap Inc. Sec. Litig.*, 2018 WL 2972528, at *8 (C.D. Cal. June 7, 2018) (Section 11 claim sufficiently pled based on failure to disclose litigation in the company's registration statement).

Defendants also had an affirmative duty to disclose the Zang Action under Item 103 of Regulation S-K (17 C.F.R. §229.103, "Item 103").  ¶¶100-01.  Item 103 mandates a brief description of any "material pending legal proceedings, other than ordinary routine litigation incidental to the business, to which the registrant or any of its subsidiaries is a party or of which any of their property is the subject."  17 C.F.R. §229.103; ¶100.  Any omission of facts required to be stated under Regulation S-K "produce[s] liability under Section 11."  *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1296 (9th Cir. 1998); *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257, 263 (2024) (Section 11 "creates liability for failure to speak on a subject at all."); *Omnicare*, 575 U.S. at 186, n. 3 ("Section 11's omissions clause also applies when an issuer fails to make mandated disclosures—those 'required to be stated'—in a registration statement"); *City of Roseville Emps.' Ret. Sys. v. EnergySolutions, Inc.*, 814 F. Supp. 2d 395, 427 (S.D.N.Y. 2011) (plaintiffs adequately alleged a Section 11 claim based on failure to make disclosures required under Item 103 of Regulation S-K).

Defendants respond that they had no affirmative duty to disclose the Zang Action and pertinent information regarding it because the AC "has not provided any factual basis or allegation to infer that the entity at issue … is anyway related to Maison[.]" Mot. 10. No so.  Defendants ignore the allegations in the AC that they claim are lacking, including that Hong Kong Supermarket is a defendant in the Zang Action, that the Hong Kong Supermarket in Monterey Park is a key subject of the Zang Action, and that the Hong Kong Supermarket in Monterey Park was purchased by Maison, and thus is the Company's "property."  ¶¶42, 58, 63-68; *see generally*, Ex. 1.  Defendants further argue

that the Zang Action is "in no way related to Maison." Mot. 10.  Not only is this argument improper at the pleading stage, *Tellabs*, 551 U.S. at 314, but Defendants provide no support for their contention.  Mot. 10 (directing the Court generally to the Prospectus).

Defendants next argue – again with no support – that the omission of the Zang Action was immaterial.  This argument should be rejected.  Materiality is a question of fact rarely suitable for disposition on the pleadings.  *Khoja*, 899 F.3d at 1013 ("Ultimately, a jury should assess materiality as a question of fact.").  And the AC alleges materiality: the Zang plaintiff sought damages of $620,000 and $500,000 for the two causes of actions brought against Maison's Monterey Park supermarket.  ¶67.  The materiality of this contingency is apparent when compared to the other actions Defendants disclosed in the IPO Registration Statement.  *See* ¶98.  Along with a 2022 settlement of just $98,500, Defendants listed another pending litigation matter in which a single Maison supermarket was named as a co-defendant, and noted that because the case was still pending, Maison had not yet made any accruals of possible loss.  *Id.*[6]  The market's reaction to Hindenburg's revelation of the Zang Action also supports a determination of materiality.  On December 15, 2023, the day Hindenburg posted the results of its investigation into Maison, the Company's share price dropped by over 83% (¶¶6, 61), suggesting the market felt this news was material.  *E.g.*, *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 703 (9th Cir. 2021) (market reaction after disclosure supports materiality of misleading omission).

Finally, Defendants assert a truth-on-the-market defense.  Mot. 10.  Defendants bear a "heavy burden."  *Provenz v. Miller*, 102 F.3d 14778, 1493 (9th Cir. 1996).  "[B]efore the 'truth-on-the-market' doctrine can be applied, the defendants must prove that the information that was withheld or misrepresented was transmitted to the public

---

[6] Defendants also argue that there was no need to disclose the Zang Action because it was "unadjudicated." Mot. 10.  Whether a matter is resolved or not has no bearing on Defendants' disclosure obligations.  Nor does this argument make sense when Defendants had disclosed this other "unadjudicated" action. ¶98.

with a degree of intensity and credibility sufficient to effectively counterbalance any misleading impression created by [the] insider' one-sided representations." *Id.* at 1492-93. "As a general rule, the truth-on-the-market defense is intensely fact-specific, so courts rarely dismiss a complaint on this basis." *In re Amgen Inc. Sec. Litig.*, 544 F. Supp. 2d 1009, 1026 (C.D. Cal. 2008).

Defendants fail to meet this burden in arguing that the Zang Action was in the "public domain" simply because the action was filed publicly and was theoretically accessible to all. Mot. 10. But even though the action *may* be accessible, the public did not know it existed—Hindenburg unearthed the matter and made the public aware of its existence. It is unreasonable to task investors with unearthing any and every lawsuit filed against a company or in which the company's property may be a subject. Courts agree. *See Amgen*, 544 F. Supp. 2d at 1025 ("The mere fact that [a meeting agenda] was available to the public, or that the meeting itself was public, is not enough to shield Defendants from liability."); *Nguyen v. Radient Pharm. Corp.*, 2011 WL 5041959, at *2, 6-7 (C.D. Cal. 2011) (similar); *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1160 (C.D. Cal. 2008) (rejecting truth-on-the-market defense because the publicly available information was not issued by the defendant company).[7] As the Ninth Circuit recently explained in examining the truth-on-the-market defense in the context of loss causation, "securities issuers should not escape liability for misrepresentations merely because they can show that corrective information was publicly available on some webpage tucked in a deep corner of the internet." *In re Genius Brands Int'l, Inc. Sec. Litig.*, 97 F.4th 1171, 1186 (9th Cir. 2024).

In addition, the market's reaction to the disclosure of the Zang Action (¶¶6, 61) provides "strong evidence of how reasonable investors view the significance of the

---

[7] *Cf. In re Banc of California Sec. Litig.*, 2017 WL 3972456, at *5 (C.D. Cal. Sept. 6, 2017) ("It isn't appropriate to find the information allegedly revealed in the SEEKINGALPHA blog immaterial as a matter of law at the pleading stage, just because the information was based on public documents.").

information," and that the omitted information was not previously known to investors. *No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 948 (9th Cir. 2003); *Nguyen*, 2011 WL 5041959, at *2, 6-7 (stock drop following a corrective disclosure weighed against truth-on-the-market).

### 2. The IPO Registration Statement Failed To Disclose Multiple Related Parties

Maison's IPO Registration Statement also failed to disclose that not only was Maison's new centralized vendor, XHJC, a related party, but that two other entities, Good Fortune Supermarket of San Gabriel, LP ("Good Fortune San Gabriel") and Good Fortune Supermarket of Monrovia, LP ("Good Fortune Monrovia"), were related parties at the time when Maison acquired majority interests in these entities.[8]  ¶¶102-110.

SEC regulations and guidance, U.S. Generally Accepted Accounting Principles ("GAAP"), and Maison's own accounting policies define multiple types of relationships that would constitute a related party.  These include: (1) a relationship in which the other party was under common control with Maison; and (2) a relationship in which one party "can significantly influence the management or operating policies" of the other.  ¶¶80-92.  The AC alleges that XHJC, Good Fortune San Gabriel, and Good Fortune Monrovia were related parties to Maison and that Xu had the ability to control or significantly influence these entities.  ¶¶69-79; *see also* Ex. 2 at 1-17.

Specifically, the AC details close ties between Xu and XHJC, which would suggest that Xu had the *ability* to control or significantly influence XHJC, including that (1) in multiple public filings, XHJC listed its address as J&C's address – of which Xu was the Director and President; and (2) Xu was business partners with the principal of XHJC in

---

[8] These transactions were material. *Contra* Mot. 11.  Maison's transactions with Good Fortune San Gabriel and Good Fortune Monrovia concerned the acquisition of two of the Company's first three stores.  ¶¶41, 74, 77.  Moreover, Defendants display the materiality of store acquisitions by disclosing the related party nature of smaller equity acquisitions. *See, e.g.*, ¶102.  As for transactions and balances with XHJC, this was the Company's centralized vendor – certainly a material relationship.  ¶70.

another business venture, Masamitsu Japanese Cuisine.  Xu further entwined this relationship by listing Masamitsu's address in public filings as both J&C's address and Maison's principal executive offices.  ¶¶25, 70-73.

The AC also provides particular allegations with respect to Good Fortune San Gabriel and Good Fortune Monrovia.  Xu was the chief operating officer of the general partners of Good Fortune San Gabriel and Good Fortune Monrovia when Maison acquired them.  Previously, Xu managed Good Fortune San Gabriel and Good Fortune Monrovia through his dual roles as agent and manager of the general partners.  ¶¶74-79.  These allegations are particular and sufficient to show that these entities and Maison[9] were either under the common control of Xu and/or that Xu had the *ability* to significantly influence all entities, and thus were related parties that should have been disclosed.

Defendants contend that these allegations are not enough, advancing an unduly narrow reading of the related party regulations, guidance, and Maison's own accounting policies.  Mot. 11-13.  But "[t]he question of whether [XHJC, Good Fortune San Gabriel, and Good Fortune Monrovia] w[ere] [] related part[ies] … is a question of fact, and is inappropriate to resolve at this stage of the litigation." *Snellink v. Gulf Res., Inc.*, 870 F. Supp. 2d 930, 939 (C.D. Cal. 2012).

In making this argument, Defendants also solely focus on just one of the allegations concerning XHJC, completely ignoring the well-pled allegations as to Good Fortune San Gabriel and Good Fortune Monrovia.  And the AC pleads far more than a shared address in alleging Xu's ability to control or significantly influence these entities.  Courts have found similar allegations to be sufficient. *See, e.g.*, *In re A-Power Energy Generation Sys. Ltd. Sec. Litig.*, 2012 WL 1983341, at *3, *8 (C.D. Cal. May 31, 2012) (defendant company entering into transactions with companies operated by CEO of defendant company were satisfactory to allege material omission of relationship); *In re Montage Tech. Grp. Ltd. Sec. Litig.*, 78 F. Supp. 3d 1215, 1225 (N.D. Cal. 2015)

---

[9] Maison admitted that it was controlled by Xu.  ¶¶51-53.

OPPOSITION TO MOTION TO DISMISS

(allegations that entity was owned by a Montage officer or by an employee of a Montage officer's family member and entities shared phone numbers sufficient to support inference of "the power to direct or cause direction of the management …" of other party); *Snellink*, 870 F. Supp. 2d at 939, 940 (allegations that companies shared address and were under common ownership and control by defendant company's Chairman supported material omission of related party relationship); *In re Advanced Battery Techs., Inc. Sec. Litig.*, 2012 WL 3758085, at *3-4, *10 (S.D.N.Y. Aug. 29, 2012) (allegations that CEO purchased entity prior to transaction, and supported by documents filed in another lawsuit, along with public filing that CEO was entity's "legal representative" supported a "compelling" inference of material omission of related party).

Defendants' cited authority hold no different. The court in *In re PetSmart, Inc. Securities Litigation* found the allegations lacking due to the failure to indicate which transactions between the alleged related parties should have been disclosed. 61 F. Supp. 2d 982, 996 (D. Ariz. 1999). The AC does just so. ¶¶104, 106 (failure to disclose that certain transactions discussed in the IPO Registration Statement were a related party transaction); ¶¶109 (listing specific transaction that should have been included in list of related party transactions and balances). The court in *In re China Mobile Games & Entertainment Group, Ltd Securities Litigation* noted that there was no support for the allegation that the president of defendant company "secretly" controlled the alleged related party, including that there were "no documents and no references to facts that would support control." 2016 WL 922711, at *5-6 (S.D.N.Y. Mar. 7, 2016). Here, Plaintiffs support their allegations with documents and factual support. Ex. 2 at 1-17.[10]

Finally, Defendants attack Hindenburg's credibility. Mot. 13-14. But courts in

---

[10] *Tabor v. Bodisen Biotech, Inc.*, 579 F. Supp. 2d 438 (S.D.N.Y. 2008) is likewise unavailing. In *Tabor,* plaintiffs alleged that the relationship with a stock promoter should have been disclosed, and did not allege the existence of a related party relationship. 579 F. Supp. 2d at 450-51. *In re Gupta Corp. Sec. Litig.*, 900 F. Supp 1217, 1243 (N.D. Cal 1994) discusses whether plaintiffs alleged control person allegations under Section 20(a) of the Exchange Act, and is thus inapt.

14
OPPOSITION TO MOTION TO DISMISS

this district have repeatedly upheld allegations based from short sellers, explaining that such attacks on the credibility or motive of the author is "a factual dispute not appropriate for resolution at this stage." *Feyko v. Yuhe Int'l, Inc.*, 2013 WL 816409, at *11 (C.D. Cal. Mar. 5, 2013) (quoting *In re China Educ. All., Inc. Sec. Litig.*, 2011 WL 4978483, at *4 (C.D. Cal. Oct. 11, 2011)); *Snellink*, 870 F. Supp. 2d at 939 ("It is permissible for Plaintiffs to rely on a short seller report … to allege falsity at the pleading stage."); *Brown v. China Integrated Energy, Inc.*, 875 F. Supp. 2d 1096, 1119-20 (C.D. Cal. 2012) (rejecting attack on credibility of short seller); *see also In re QuantumScape Sec. Class Action Litig.*, 580 F. Supp. 3d 714, 731 (N.D. Cal. 2022) (cited at Mot. 12) (rejecting argument that a short seller's conclusions are "inherently unreliable").

Defendants reliance on *Ng v. Berkeley Lights, Inc.*, 2024 WL 695699 (N.D. Cal. Feb. 20, 2024) is misplaced. In *Ng*, the short seller relied on interviews of former employees, customers, and industry scientists to conclude that the defendant company's product suffered from design and manufacturing defects, which thereby hindered the products functionality and marketability. 2024 WL 695699, at *9. The *Ng* court explained that the short seller failed to provide any details as to these witnesses' titles, roles, period of employment, or that the witnesses had firsthand knowledge of the relevant facts, and concluded that because the plaintiffs relied entirely on the "short-seller's own assertions that the characterizations passed on by the witnesses were credible," there was no basis to conclude that the short seller's witnesses were reliable under Ninth Circuit precedent. *Id.* This is not the case here. First, Hindenburg relied on publicly filed documents and websites, which do not "raise the same concerns about unreliability as a confidential informant." *Banc of California*, 2017 WL 3972456, at *7; *QuantumScape*, 580 F. Supp. 3d at 731, 732 (finding article and short seller report that relied on factual assertions and public information, in addition to unidentified employees, sufficiently reliable to support falsity allegations). Second, Plaintiffs do not solely rely on Hindenburg. Plaintiffs' independent investigation verified the facts concerning XHJC and uncovered additional facts supporting the conclusion that Xu had the ability to

significantly influence XHJC. ¶¶70-73; Ex. 2 at 1-10. The allegations concerning Maison's related party acquisitions of Good Fortune San Gabriel and Good Fortune Monrovia are solely derived from Plaintiffs' independent investigation and supported by factual documents. ¶¶74-79; Ex. 2 at 11-17.

## V. Plaintiffs Allege Claims Under Section 10(b) Of The Exchange Act

Plaintiffs bring claims under Section 10(b) of the Exchange Act (15 U.S.C. §78j(b), "Section 10(b)") and Rule10b-5 (17 C.F.R. §240.10b-5, "Rule 10b-5") against Maison and the Individual Defendants. Section 10(b) "proscribes 'manipulative or deceptive' practices in connection with the purchase or sale of registered securities on a national securities exchange." *Genius*, 97 F.4th at 1180. "Rule 10b-5 of the Exchange Act's implementing regulations is coextensive with Section 10(b)[,]" and "prohibits making 'any untrue statement of a material fact' or omitting material facts 'necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.'" *In re Facebook, Inc. Sec. Litig.*, 87 F.4th 934, 947 (9th Cir. 2023). To state a claims under Section 10(b) and Rule 10b-5(b),[11] a plaintiff must allege: (1) a material misrepresentation or omission (*i.e.*, "falsity"); (2) scienter; (3) the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation. *Matrixx*, 563 U.S. at 37-38. Defendants challenge falsity, scienter, and loss causation. As to these and all required elements, the AC is sufficient.

### A. Plaintiffs Allege Material Misrepresentations And Omissions During The Class Period

A complaint adequately alleges falsity when it "specifies each statement alleged

---

[11] Defendants also challenge supposed scheme liability claims. Mot. 22. "Claims under Rule 10b5–(a) and (c) are generally referred to as claims for 'scheme liability.'" *In re Galena Biopharma, Inc. Sec. Litig.*, 117 F. Supp. 3d 1145, 1192 (D. Or. 2015). While there is "considerable overlap among the subsections" of Rule 10b-5, *Lorenzo v. Sec. & Exch. Comm'n*, 587 U.S. 71, 80 (2019), "[s]cheme liability claims are distinct from claims under Rule 10b–5(b). *Galena*, *supra id.* Plaintiffs do not advance scheme liability claims in this Opposition.

to have been misleading, and the reason or reasons why the statement is misleading." *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 701 (9th Cir. 2012). A plaintiff need only allege facts giving rise to a "reasonable inference" that the statement was false or misleading. *In re Atossa Genetics Inc. Sec. Litig.*, 868 F.3d 784, 797 (9th Cir. 2017). A statement is misleading if it would give a reasonable investor the "impression of a state of affairs that differs in a material way from the one that actually exists." *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 691 (9th Cir. 2011). Even "literally true" statements may be misleading due to "their context and manner of presentation." *Miller v. Thane Int'l, Inc.*, 519 F.3d 879, 886 (9th Cir. 2008); *Khoja*, 899 F.3d at 1008-09 ("Even if a statement is not false, it may be misleading if it omits material information."). While not required to disclose every single adverse event about their business to investors, once a defendant chooses to speak on a topic, they are "bound to do so in a manner that [won't] mislead investors, including disclosing adverse information that cuts against the positive information." *Khoja*, 899 F.3d at 1009.

Plaintiffs allege two categories of misleading statements and omissions during the Class Period, and identifies what facts were omitted to make the statements therein not misleading: (1) the pendency of the Zang Action; and (2) the existence of a number of related party transactions and balances. ¶¶114-139. Defendants do not advance any unique arguments as to falsity for Plaintiffs' Section 10(b) claim, and refer the Court to their earlier arguments. Mot. 16-17. For the reasons discussed in Section IV.B, *supra*, these statements are also materially misleading under Section 10(b) and Rule 10b-5(b).

**B.      Plaintiffs Allege A Strong Inference Of Scienter**

The PSLRA requires plaintiffs to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. §78u-4(b)(2); *Tellabs*, 551 U.S. at 314. "Scienter can be established by intent, knowledge, or certain levels of recklessness[,]" *i.e.*, "either 'deliberate recklessness' or 'conscious recklessness'—a 'form of intent rather than a greater degree of negligence.'" *VeriFone*, 704 F.3d at 702. Importantly, "courts must consider the complaint in its

entirety …. The inquiry is whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Tellabs*, 551 U.S. at 322 (emphasis in original). "In making this determination, the court must review all the allegations holistically." *Matrixx*, 563 U.S. at 48. In assessing scienter allegations, often "the sum is greater than the parts." *VeriFone*, 704 F.3d at 698.

A strong inference of scienter arises if a "reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs*, 551 U.S. at 324-26. "The inference that the defendant acted with scienter need not be irrefutable, *i.e.*, of the smoking-gun genre, or even the most plausible of competing inferences" – the inference need only be equally plausible to any non-culpable inference. *Id.* at 324. A "tie goes to the plaintiffs when there are multiple plausible theories at the pleadings stage of litigation." *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 999 n.8 (9th Cir. 2014). The AC sets forth specific and compelling facts that raise a strong inference of scienter.

### 1.    Plaintiffs Allege Strong Circumstantial Evidence Of Scienter

A defendant is deliberately reckless if "he had reasonable grounds to believe material facts existed that were misstated or omitted, but nonetheless failed to obtain and disclose such facts although [he] could have done so without extraordinary effort." *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1064 (9th Cir. 2000); *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 390 (9th Cir. 2010) (quoting *Howard*). In fact, a plaintiff may establish scienter by alleging facts indicating that the defendants "knew, or should have known" of the falsity of their statements. *See N.M. State Inv. Council v. Ernst & Young LLP*, 641 F.3d 1089, 1098 (9th Cir. 2011).

Plaintiffs allege facts sufficient to show that Maison and the Individual Defendants knew, or were deliberately reckless in not knowing of the pendency of the Zang Action. Maison's Hong Kong Supermarket in Monterey Park was a defendant and key subject of the action. ¶¶63-66; Ex. 1. Xu and J&C were also named as defendants. ¶63. At the

time, Lopez served concurrently as CFOs for Maison and J&C (¶27) and Xu was J&C's Director and President, in addition to being Maison's Chairman, President, and CEO. ¶26. Xu also submitted at least one declaration in the Zang Action, displaying his involvement in and awareness of the lawsuit. ¶¶63, 68. For the two causes of action brought against Maison's supermarket, the plaintiff sought substantial damages: $620,000 and $500,000. ¶67; Ex. 1 at ¶¶108-116.

Plaintiffs also allege numerous facts to show that Maison and the Individual Defendants knew, or were deliberately reckless in not knowing that Good Fortune San Gabriel, Good Fortune Monrovia, and XHJC were related parties. <u>One</u>, Maison is a controlled by Xu. He holds 93.12% of the Company's voting rights (¶¶51-52) and holds many roles at Maison (¶26). Maison admits that Xu has the ability to control the "overall management and direction of our company." ¶52. <u>Two</u>, Maison regularly entered into other large transactions with Xu, his wife, and entities owned by these two. ¶¶53-55.

<u>Three</u>, Xu frequently entwined his various business ventures. For example, Xu: used the addresses of J&C and Maison stores in registration documents for his other ventures; displayed his control of these entities, even when that entity was, in name, controlled and run by others; and, at least once, Maison stated Xu was the owner of an entity when other individuals were listed in the registration documents for that entity. ¶¶150-59. While it may be true that "individuals routinely create corporate entities to serve an array of business interests" (Mot. 18), here, what remains constant in each of the entities discussed in the AC is the apparent display of Xu's control and/or significant influence over the entities.[12]

---

[12] Defendants also complain that Plaintiffs may not consider allegations from a complaint. Mot 18. This is incorrect. "[A] party can rely on allegations made in a separate complaint when they perform an adequate independent investigation." *SEB Inv. Mgmt. AB v. Wells Fargo & Co.*, 2024 WL 3579322, at *12 (N.D. Cal. July 29, 2024). "The party need not corroborate every fact, but must provide an independent basis that goes towards corroborating the allegations such that they are reasonable." *Id.* Plaintiffs have done so here.

Four, at the time of the transactions with Good Fortune San Gabriel and Good Fortune Monrovia, Xu was the chief operating officer of the general partners of Good Fortune San Gabriel and Good Fortune Monrovia. ¶¶41, 74-79; Ex. 2 at 12-13, 15-17. Five, Xu is business partners with XHJC's CEO in Masamitsu. Both Masamitsu and XHJC have its mail sent to J&C – another of Xu's businesses. ¶¶70-73; Ex. 2 at 1-10.

Six, despite all these facts, defendants admit Maison lacks "timely related party transaction monitoring" and does not "keep a list of related party transactions on a regular basis." This is in despite of Xu's penchant for entering into transactions with his own entities and with entities having suspiciously close ties to Xu. Defendants thus knew that there was a substantial risk of failing to identify related party transactions. *S. Ferry LP #2 v. Killinger*, 687 F. Supp. 2d 1248, 1258 (W.D. Wash. 2009) ("notice of a risk is often enough" for deliberate recklessness) (citing and quoting *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 513 F.3d 702, 704 (7th Cir. 2008) ("When the facts known to a person place him on notice of a risk, he cannot ignore the facts and plead ignorance of the risk.")).

Seven, at the time Maison's former auditor, Friedman LLP, was engaged by the Company to audit its financials, the SEC charged Friedman with "improper professional conduct" in the audits of two different companies for its failure to properly detect and audit the companies' related party transactions. ¶¶147-49. Thus defendants were put on notice that there was a high likelihood that its auditor would not be able to detect related party transactions independent of Maison . Defendants respond that Maison dismissed Friedman nine months prior to the IPO. Mot. 18. Although Friedman may not have been Maison's auditor during the Class Period, Friedman *was* the auditor for Class Period statements: the material omissions of the related party transactions with Good Fortune San Gabriel, Good Fortune Monrovia, and XHJC in the list of related party transactions and balances for the period ended April 30, 2022. ¶¶124, 137. Also, defendants did not dismiss Friedman for their failures relating to the audits of related parties, but rather stated there were no disagreements with Friedman. ¶149.

The inference of scienter is even stronger for Lopez and Xu. Lopez worked closely

with Xu, serving as CFO for Maison and J&C from 2014 through 2023. She was also listed as an officer in the business filings of at least one of Xu's entities. *See, e.g.*, ¶156. And for Xu, there can be no credible dispute as to his knowledge. Courts in this district, when faced with similar allegations, have explained that "it would be absurd to suggest that [Xu] was not aware of [the related party transactions]." *Cheung v. Keyuan Petrochemicals, Inc.*, 2012 WL 5834894, at *9 (C.D. Cal. Nov. 1, 2012) (inferring knowledge of related party transactions with CEO and Chairman's own companies); *Brown*, 875 F. Supp. 2d at 1124 ("It is natural to conclude that an executive is aware of the business dealings of his own son, particularly when those dealings were with the executive's own company."); *Snellink*, 870 F. Supp. 2d at 941 ("the omission of Gulf's related parties cannot be unintentional—it would be absurd to suggest that [Gulf's Chairman] did not know about the operations of his various companies."); *A-Power*, 2012 WL 1983341, at *8 ("cogent and compelling" inference of scienter pled when CEO and Chairman was "alleged to have had direct ties to the alleged related parties.").

**2. Scienter Can be Inferred When Defendants Knew Of Their Disclosure Obligations**

Defendants were well aware of their disclosure obligations. In discussing its commitments and contingencies, defendants explained that Maison is periodically involved in various legal proceedings "incidental to the conduct of the business[,]" going on to describe other matters. One such matter was pending litigation against one of its stores, Maison El Monte, in which it was a co-defendant in a complaint alleging violations of health and safety regulations, and another settled matter against Maison San Gabriel concerning employment issues. ¶¶116, 129. Discussing these others matters throughout the Class Period – despite one case having already settled – displays the Defendants' awareness of needing to disclose litigation incidental to Maison's stores.

Likewise, Maison flagged other related party transactions with companies owned by Xu or his wife (*see* ¶¶118-119, 123, 131-132, 136), displaying awareness of defendants' disclosure obligations. *Montage*, 78 F. Supp. 3d at 1226; *Snellink*, 870 F.

21
OPPOSITION TO MOTION TO DISMISS

Supp. 2d at 941 (C.D. Cal. 2012) ("The omission of related party transactions is not a trifle. Common sense dictates that this is material information and indeed, Regulation S–K devotes an entire section and notes that it is one of the core disclosures that companies have to report").  The "simplicity and obviousness" of the SEC regulations and GAAP concerning related party transactions further supports an inference of scienter.  *Henning v. Orient Paper, Inc.*, 2011 WL 2909322, at \*6 (C.D. Cal. July 20, 2011).

### 3.     Plaintiffs Have Alleged Maison's Scienter

Plaintiffs have also sufficiently alleged Maison's scienter.  Although a corporation does not have a "mental state," for purposes of determining scienter in the securities litigation context, "the scienter of the senior controlling officers of a corporation may be attributed to the corporation itself to establish liability as a primary violator of § 10(b) and Rule 10b-5 when those senior officials were acting within the scope of their apparent authority." *Alphabet*, 1 F.4th at 705; *see also, e.g.*, *Cho v. UCBH Holdings, Inc.*, 890 F. Supp. 2d 1190, 1205 (N.D. Cal. 2012) ("In light of the imputation of [officer's] scienter through respondeat superior, the Court finds that Plaintiffs have sufficiently alleged a primary violation of Section 10(b) and Rule 10b-5 by the Bank."); *Hollinger v. Titan Cap. Corp.*, 914 F.2d 1564, 1576-78 (9th Cir. 1990 as amended) (en banc) (affirming that principles of corporate agency law and respondeat superior apply in §10(b) cases).

### 4.     Defendants Fail To Raise A *More* Cogent And Compelling Inference Of Non-Culpability

Defendants fail to offer any non-culpable inference that can be drawn from Plaintiffs' allegations, let alone any non-culpable inference that is *more compelling*. Rather, Defendants argue that a lack of motive, and in particular, a lack of insider stock sales, negates scienter.  Mot. 19-20.[13]  But the Supreme Court has instructed that "the absence of a motive allegation is not fatal." *Tellabs*, 551 U.S. at 325; *see also Alphabet*,

---

[13] Although Defendants cite *Webb v. Solarcity Corp.*, 884 F.3d 844 (9th Cir. 2018) and *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869 (9th Cir. 2012), those cases merely hold that a lack of stock sales may be relevant – not dispositive.

22
OPPOSITION TO MOTION TO DISMISS

1 F.4th at 707 (suspicious stock sales "are not a sine qua non for raising [a strong] inference" of scienter). The Individual Defendants were also subject to a lock up provision, and thus could not even sell their Maison stock. ¶46, n.1. As one court noted, when lock up provisions exist, "[t]he lack of trading and lock-up provisions neither help[s] nor harms[s] defendants." *In re LDK Solar Sec. Litig.*, 584 F. Supp. 2d 1230, 1255 (N.D. Cal. 2008) (when plaintiffs do not rely on insider trading to establish scienter, "the lack of stock sales by defendants [does] not negate the inference of scienter.").

In sum, when viewing the allegations holistically, and taken collectively, the AC gives rise to a strong inference of scienter.

## C.    Plaintiffs Plead Loss Causation

To plead loss causation, a plaintiff need only "plausibly allege a causal connection between the defendant's misstatements and the plaintiff's economic loss[.]" *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 794 (9th Cir. 2020). Loss causation does not require a showing that a misrepresentation was "the sole reason for the decline in value of the securities," only that it was one "substantial cause." *Gilead*, 536 F.3d at 1055. The most common way to allege loss causation is through one of more "corrective disclosures," which "occurs when information correcting the misstatement or omission that is the basis for the action is disseminated to the market." *Genius*, 97 F.4th at 1184. This corrective disclosure may come from any source. *BofI*, 977 F.3d at 790. A disclosure is corrective, so long as it "reveals new facts that, taken as true, render some aspect of the defendant's prior statement false or misleading[,]" *i.e.*, the disclosure need not "mirror" the misrepresentations and omissions. *Genius*, 97 F.4th at 1184. Because of loss causation's fact-intensive nature, "it is normally inappropriate to rule on loss causation at the pleading stage." *Gilead*, 536 F.3d at 1057.

Plaintiffs have plausibly pled loss causation if they "provide enough factual content to give the defendant some indication of the loss and the causal connection that the plaintiff has in mind." *BofI*, 977 F.3d at 794. At this stage, pleading loss causation should not be "burdensome" – so long as the allegations give defendants "notice of

plaintiffs' loss causation theory" and provide the court "some assurance that the theory has a basis in fact[,]" it will suffice. *Id.* Plaintiffs allege a corrective disclose on December 15, 2023 when Hindenburg posted the results of its investigation into Maison, revealing that Xu and one of Maison's grocery stores were the subjects of, and defendants in, currently pending litigation and that Maison's new centralized vendor, XHJC, was an "undisclosed related party." That same day, Maison's share price fell 83.6%. ¶¶57-62, 140-144. At the pleading stage, this is sufficient. *Genius*, 97 F.4th at 1186.

Defendants claim this is insufficient without explanation. Mot. 21-22. To be sure, Hindenburg's research uncovered the pendency of the Zang Action and facts supporting an undisclosed related party relationship and came from "webpage[s] tucked deep in a corner of the internet" which Hindenburg "synthesized [] for the marketplace," revealed the truth about the prior misstatements and omissions, and are adequately pled. *Genius*, 97 F.4th at 1186-87 (loss causation adequately pleaded based on Hindenburg's research and analysis); *see also, e.g.*, *Garcia v. J2 Glob., Inc.*, 2021 WL 1558331, at *22 (C.D. Cal. Mar. 5, 2021) (same). To the extent any "skepticism" about Plaintiffs' loss causation allegations remains, such "skepticism is best reserved for later stages of the proceedings …. [L]oss causation is a matter of proof at trial and not to be decided on a Rule 12(b)(6) motion to dismiss." *Gilead*, 536 F.3d at 1055.

**VI.    The Bespeaks Caution Doctrine And The PSLRA Safe Harbor Do Not Apply**

Defendants also assert protection from the "bespeaks caution" doctrine and its statutory version, the PSLRA "safe harbor,"[14] "to the extent it is determined … applicable[.]" Mot. 23-24.[15] The bespeaks caution "doctrine provides a mechanism by which a court can rule as a matter of law that defendants' forward-looking representations

---

[14] The PSLRA safe harbor is codified at 15 U.S.C. §77z-2 for the Securities Act and at 15 U.S.C. §78u-5 for the Exchange Act.

[15] "Defendants bear the burden of demonstrating that their statements are protected by the safe harbor." *In re STEC Inc. Sec. Litig.*, 2011 WL 2669217, at *9 (C.D. Cal. June 17, 2011).

contained enough cautionary language or risk disclosure to protect the defendant against claims of securities fraud." *Atossa*, 868 F.3d at 798. Similarly, the PSLRA safe harbor protects wholly forward-looking statements that are either accompanied by meaningful cautionary language or made without actual knowledge of their propensity to mislead. 15 U.S.C. §77z-2; 15 U.S.C. § 78u-5. Such protections are inapplicable here.

The safe harbor and bespeaks caution doctrine only protect forward-looking statements, and courts will not extend their protection to statements and omissions of current or historical fact. *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 948 (9th Cir. 2005) ("extension of the bespeaks caution doctrine to statements of historical fact is inappropriate"); *In re Celera Corp. Sec. Litig.*, 2013 WL 4726097, at \*2 (N.D. Cal. Sept. 3, 2013) ("The safe harbor applies to forward-looking statements only, and not to material omissions or misstatements of historical fact."); *Mallen v. Alphatec Holdings, Inc.*, 861 F. Supp. 2d 1111, 1126 (S.D. Cal. 2012) ("to the extent Plaintiffs also challenge Defendants' alleged *omission of present facts* with respect to the challenged statements, the PSLRA's safe harbor does not apply."). This matter centers around the omissions of the current and past events. *See* Secs. IV.B, V.A, *supra*.

To be protected, the statements must also be accompanied by "meaningful cautionary language." At the pleading stage, Defendants must make a "stringent showing: There must be sufficient cautionary language or risk disclosure such that reasonable minds could not disagree that the challenged statements were not misleading. To meet this standard, the language bespeaking caution must relate directly to that to which plaintiffs claim to have been misled." *Atossa*, 868 F.3d at 798. Citing entirely generic risk warnings, *i.e.*, that Maison's IPO could be "highly speculative," "high risk," and "had the potential to fail" (Mot. 24), come nowhere close to meeting such a stringent showing. These risk warnings are entirely generic – they could be for any investment – and are in no way "directly related" to the omissions of the pending litigation and related party transactions. *See Atossa*, 868 F.3d at 798 (risk disclosures regarding FDA's concerns about its core product were insufficient where they were "vague enough to

cover any concern the FDA might have had").[16]

## VII.   Plaintiffs Allege Control Person Liability

Plaintiffs also bring control person liability claims against the Individual Defendants under Section 15 of the Securities Act (15 U.S.C. §77*o*(a), "Section 15") and Section 20(a) of the Exchange Act (15 U.S.C. §78t(a), "Section 20(a)"), which provides for joint and several liability with the controlled person/company who has violated the securities laws.  ¶¶183-191, 203-207.  Control person liability under both Sections 15 and 20(a) requires: (i) a primary violation of the securities laws; and (ii) "that defendants exercised actual power or control over a primary violator." *In re Charles Schwab Corp. Sec. Litig.*, 257 F.R.D. 534, 550 & n.4 (N.D. Cal. 2009) (explaining that although "Section 15 and Section 20(a) are separate bases of liability, the Ninth Circuit has held that the analysis is identical."); *In re CytRx Corp. Sec. Litig.*, 2015 WL 5031232, at *17-18 (C.D. Cal. July 13, 2015) (analyzing Sections 15 and 20(a) claims together).[17]

The AC adequately alleges violations of Sections 11 and Section 10(b), and so Sections 15 and 20(a) may not be dismissed for lack of a primary violation. *Crews v. Rivian Auto., Inc.*, 2023 WL 4361098, at *14, *17 (C.D. Cal. July 3, 2023).

Defendants contend that the AC's allegations are conclusory as to control.  Mot. 14-15, 23.  "In general, the determination of who is a controlling person is an intensely factual question." *UCBH Holdings*, 890 F. Supp. 2d at 1205; *accord Howard*, 228 F.3d at 1065.  "Courts have found general allegations concerning an individual's title and

---

[16] The PSLRA safe harbor excludes from protection statements that are "made in connection with an initial public offering[.]"  15 U.S.C. §77z-2 (b)(2)(D); 15 U.S.C. § 78u-5(b)(2)(D); *In re Musicmaker.com Sec. Litig.*, 2001 WL 34062431, at *13 n. 7 (C.D. Cal. June 4, 2001).  It is presumed that statements made in a registration statement filed for an IPO are made "in connection with" that IPO. *In re Merck & Co., Inc. Sec. Litig.*, 432 F.3d 261, 272 (3d Cir. 2005).  Accordingly, the PSLRA's safe harbor is also unavailable for the statements made in the IPO Registration Statement.

[17] The notice-pleading standard of Fed. R. Civ. P. 8(a) applies to Plaintiffs' Section 15 and 20(a) claims.  *See, e.g.*, *Washington Mut.*, 259 F.R.D. at 504 (Section 15); *Countrywide*, 588 F. Supp. 2d at 1201 (Section 20(a)).

responsibilities to be sufficient to establish control at the motion to dismiss stage[,]" and "although a person's being an officer or director does not create any *presumption* of control, it is a sort of red light." *UCBH Holdings*, 890 F. Supp. 2d at 1205 (citing cases).

Here, allegations that the Individual Defendants are each executive officers and/or directors of Maison, and signed or authorized the signing of the IPO Registration Statement and/or the Selling Shareholder Registration Statement on their behalf are sufficient.  ¶¶26-33, 95, 127.  "Courts have presumed that directors exercise actual authority and control, at least over the contents of and/or release of the statements they sign." *CytRx*, 2015 WL 5031232, at *18 (citing cases); *Amgen*, 544 F. Supp. 2d at 1037 ("persuasive authority indicates an officer or director who has signed financial statements containing materially false or misleading statements qualifies as a control person"); *UCBH Holdings*, 890 F. Supp. 2d at 1208 (similar and citing cases).

As for Xu, the AC alleges that Xu controlled Maison, owned approximately 83.6% of Maison's outstanding Class A shares (¶51), had control of over 93% of the voting rights of the Company (¶52), and has the "ability to control the outcome of matter submitted to our stockholders for approval, … as well as the overall management of our company" (*id.*).  Xu's control was plainly evident in the large number of transactions between Maison and Xu, his wife, and entities owned by them. *E.g.*, ¶¶53-55.  The Ninth Circuit has found similar allegations sufficient to meet a *prima facie* showing that a defendant is a controlling person. *America West*, 320 F.3d at 945-46 (control liability allegations that defendants were the largest stockholders of defendant company, had 57.4% of total voting power, and sat on board of directors, *inter alia*, were sufficient).

## VIII. Conclusion

Defendants' motion should be denied.  If the Court grants any portion of the motion, Plaintiffs requests leave to amend. *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

DATED:  September 16, 2024        **GLANCY PRONGAY & MURRAY LLP**

By: */s/ Leanne H. Solish*

Robert V. Prongay
Leanne H. Solish
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email:  rprongay@glancylaw.com
            lsolish@glancylaw.com

*Counsel for Lead Plaintiffs and Lead Counsel*

**THE LAW OFFICES OF FRANK R. CRUZ**
Frank R. Cruz
2121 Avenue of the Stars, Suite 800
Century City, CA 90067
Telephone: (310) 914-5007

*Additional Counsel for Lead Plaintiffs*

OPPOSITION TO MOTION TO DISMISS

## **PROOF OF SERVICE**

I hereby certify that on this 16th day of September, 2024, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*s/ Leanne H. Solish*
Leanne H. Solish

OPPOSITION TO MOTION TO DISMISS