**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RICK GREEN and EVGENIA NIKITINA, Individually and on Behalf of All Others Similarly Situated<br>Plaintiffs,<br>v.<br>MAISON SOLUTIONS INC., JOHN XU, ALEXANDRIA M. LOPEZ, TAO HAN, BIN WANG, MARK WILLIS, XIAOXIA ZHANG, JOSEPH STONE CAPITAL, LLC, and AC SUNSHINE SECURITIES LLC,<br>Defendants. | Case No. 2:24-cv-00063-SPG-KS<br>**ORDER GRANTING, IN PART, AND DENYING, IN PART, DEFENDANTS' MOTION TO DISMISS [ECF NO. 40]** |

Before the Court is the Motion to Dismiss (ECF No. 40 ("Motion")) filed by Defendants Maison Solutions Inc., John Xu, Alexandria M. Lopez, Tao Han, Bin Wang, Mark Willis, Xiaoxia Zhang, Joseph Stone Capital, LLC, and AC Sunshine Securities LLC ("Defendants"). Lead Plaintiffs Migwang Jeong, Yun Jung Kim, Yousub Jun, Lee Sun-Bok, and Hyeonnam Gang ("Plaintiffs") timely opposed Defendants' Motion (ECF No. 46 ("Opposition")), and Defendants replied (ECF No. 49 ("Reply")). Having considered the parties' submissions, the relevant law, and the record in this case, the Court finds that the

matter is suitable for resolution without oral argument. *See* Fed. R. Civ. P. 78(b); C.D. Cal. L. R. 7.15. For the reasons stated below, the Court GRANTS, in part, and DENIES, in part, Defendants' Motion.

## I. BACKGROUND

This case involves a putative class action of investors who have allegedly purchased shares of Class A common stock in Maison Solutions Inc. ("Maison" or the "Company"). In their operative First Amended Complaint, *see generally* (ECF No. 33 ("FAC")), Plaintiffs allege the following:

Maison is a specialty grocery store retailer offering Asian food and merchandise to United States consumers. (*Id.* ¶ 2). In 2023, Maison began its initial public offering process. On May 22, 2023, the Company filed its Form S-1 with the Securities and Exchange Commission ("SEC"). (*Id.* ¶ 44). Thereafter, on October 5, 2023, it filed its Initial Public Offering Prospectus ("IPO Prospectus" hereinafter referred together with Form S-1 as "IPO Registration Statement"). (*Id.* ¶ 45). Maison sold 2,500,000 shares of Class A common stock at $4.00 per share. (*Id.* ¶ 47). The Company received gross proceeds of approximately $10 million from the IPO. (*Id.*).

As background on the key players, Plaintiffs bring this lawsuit against Corporate Defendant Maison, Individual Defendants, and Underwriter Defendants. Starting with the Individual Defendants, John Xu ("Defendant Xu") served as a director, President, and Chief Executive Officer ("CEO") of Maison and currently serves as Chairman of the Company's Board of Directors. (*Id.* ¶ 26).[1] Defendant Xu also served as a director and President of J&C International Group LLC ("J&C"), a cross-border investment firm. (*Id.*).

---

[1] Relatedly, the Complaint alleges that Defendant Xu holds more than 50% of Maison's voting power, rendering it a "Controlled Company." (FAC ¶ 51). Through his ownership of Maison's Class A and Class B common stock, Defendant Xu allegedly controls 93.12% of the Company's voting rights following the IPO. (*Id.* ¶ 52). The Complaint further states that the IPO Registration Statement "explained that with this voting power, Defendant Xu will have the ability to control the outcome of matters submitted to our stockholders for approval, including the election of our directors, as well as the overall management and direction of our company." (*Id.*) (internal quotation marks omitted).

Defendant Alexandria M. Lopez ("Defendant Lopez") served as a director and Chief Financial Officer ("CFO") of Maison as well as CFO of J&C. (*Id.* ¶ 27). Defendant Tao Han ("Defendant Han") worked as Maison's Chief Operating Officer ("COO"). (*Id.* ¶ 28). Defendant Bin Wang ("Defendant Wang"), Defendant Mark Willis ("Defendant Willis"), and Defendant Xiaoxia Zhang ("Defendant Zhang") also served as Maison's directors. (*Id.* ¶¶ 29–31). Defendants Xu, Lopez, Han, Wang, Willis, and Zhang (collectively, the "Individual Defendants") are alleged to have signed or authorized the signing of Maison's IPO Registration Statement. (*Id.* ¶ 32).

Next, Defendant Joseph Stone Capital, LLC ("Defendant Joseph Stone") and Defendant AC Sunshine Securities, LLC ("Defendant AC Sunshine" hereinafter referred together with Defendant Joseph Stone as "Underwriter Defendants") served as underwriters for Maison's IPO and assisted in drafting the IPO documents. (*Id.* ¶¶ 34–35).

Two months after the IPO, Maison's stock price increased, closing at $15.21 per share on December 14, 2023. (*Id.* ¶ 56). The next day, Hindenburg Research ("Hindenburg") published a series of posts about Maison on the social media platform X—formerly known as Twitter. (*Id.* ¶ 57). In the post, Hindenburg stated that it "found multiple red flags" about the Company. (*Id.*). Specifically, Hindenburg discussed details about a pending lawsuit, *Zang v. Xu, et al.*, Case No. 20GDC00485 ("*Zang* lawsuit"), in the Los Angeles County Superior Court. (*Id.* ¶¶ 58, 63).[2] The plaintiff in *Zang* brought several causes of action involving alleged immigrant visa fraud against multiple

---

[2] *See* (ECF No. 33-1) (incorporating by reference the second amended complaint from the *Zang* action). At the pleading stage, the Court may consider extrinsic documents, such as the complaint in *Zang*, when such documents are extensively referenced and thereby incorporated into the Plaintiffs' operative complaint. *See Tellabs, Inc. v. Makor Issues & Rts.*, Ltd., 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."). Of course, however, the Court will not examine the underlying merits to determine the veracity of the allegations in the pending lawsuit.

defendants, including John Xu, serving as President of J&C, and his related entity, the "Hong Kong Supermarket"—a property allegedly owned by Defendant Maison. *See* (FAC ¶¶ 58, 63–68). According to Hindenburg, the lawsuit alleged that the defendants "used supermarkets as a front to defraud the EB-5 visa program." (*Id.*). The post further posited that Maison's "recently appointed centralized vendor," XHJC Holdings, Inc. ("XHJC") is "an undisclosed related party" to Maison. (*Id.* ¶ 59). Reaching this conclusion, Hindenburg discussed that XHJC shares the same address as the Masamitsu Japanese Cuisine restaurant, which according to Hindenburg, is "associated with Defendant Xu." (*Id.*). Hindenburg also posted a screenshot from J&C's website displaying that its address is the same as XHJC's mailing address listed in XHJC's public filing from the California Secretary of State website. (*Id.* ¶ 60).

After this news, Maison's stock price dropped by 83.6%, decreasing from $12.71 to $2.50 per share on December 15, 2023. (*Id.* ¶ 61). Maison, thereafter, publicly responded, stating that the Company believes the "short attack on Maison Solutions' securities directly reflected a report issued . . . by Hindenburg Research that contained inaccurate and misleading statements . . . ." (*Id.* ¶ 62).

Plaintiffs allege that Defendants made materially false or misleading statements in the IPO Registration Statement and "failed to disclose material adverse facts about the Company's business, operations, and prospects." (*Id.* ¶ 8). Defendants' alleged "wrongful acts and omissions" as well as the "precipitous decline in the market value" of Maison's securities caused Plaintiffs to suffer significant losses and damages. (*Id.* ¶ 9).

## II. LEGAL STANDARD

A complaint that fails to meet the applicable pleading standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). "Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). When ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable

to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The Court is "not required to accept as true allegations that contradict exhibits attached to the Complaint," allegations that contradict "matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Seven Arts Filmed Ent., Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013) (citing *Daniels–Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010)). Dismissal is appropriate if it appears the plaintiff can prove no set of facts in support of its claims that would entitle it to relief. *City of Almaty v. Khrapunov*, 956 F.3d 1129, 1131 (9th Cir. 2020).

Where a private plaintiff alleges securities fraud, the complaint "must [also] satisfy the dual pleading [requirements] of Federal Rule of Civil Procedure 9(b) and the [Private Securities Litigation Reform Act ("PSLRA")]." *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 701 (9th Cir. 2012). Under Rule 9(b), a complaint "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 765 (9th Cir. 2023) (internal quotation marks and citation omitted).

The PSLRA, in turn, "imposes formidable pleading requirements to properly state a claim and avoid dismissal under Rule 12(b)(6)." *Id.* (internal quotation marks and citation omitted). It requires that the complaint "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, . . . all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1). For each alleged misstatement or omission, the complaint must also "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* § 78u–4(b)(2)(A). A plaintiff also bears the burden of proving that a defendant's misrepresentations "caused

the loss for which the plaintiff seeks to recover." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345–46 (2005) (internal quotation marks omitted) (quoting 15 U.S.C. § 78u-4(b)(4)).

**III. DISCUSSION**

As background, the "Securities Act and the Exchange Act work together to prohibit the use of false or misleading statements in connection with the sale of securities." *In re Cloudera, Inc.*, 121 F.4th 1180, 1186 (9th Cir. 2024) (citing *Slack Techs., LLC v. Pirani*, 598 U.S. 759, 762–63 (2023)). The Securities Act focuses "on new offerings, imposing strict liability on issuing companies when their registration statements contain material misstatements or misleading omissions" while the Exchange Act "prohibit[s] material misrepresentations or omissions in connection with the sale of any security . . . but only when the material misleading statement or omission was made with scienter, *i.e.*, with intent to deceive, manipulate, or defraud." *Id.* (cleaned up).

Section 11 of the Securities Act confers a private right of action to security purchasers when the security's issuer published a registration statement that "contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading." 15 U.S.C. § 77k(a). To prevail on a Section 11 claim, a plaintiff must prove that: "(1) the registration statement contained an omission or misrepresentation, and (2) [] the omission or misrepresentation was material, that is, it would have misled a reasonable investor about the nature of his or her investment." *In re Daou Sys., Inc.*, 411 F.3d 1006, 1027 (9th Cir. 2005) (internal quotation marks omitted) (quoting *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1403–04 (9th Cir. 1996)), *abrogated on other grounds by Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27 (2011). Purchasers may assert this cause of action against "an issuer or designated individuals (directors, partners, underwriters, and so forth) . . . ." *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 179 (2015). Unlike Section 10(b), "[n]o scienter is required for liability under § 11; defendants will be liable for innocent or negligent material misstatements or omissions." *In re Daou Sys.*, 411 F.3d at 1027; *see also In re Stac Elecs.*, 89 F.3d at 1405 n.3 ("Of course, the scienter requirement

of Rule 9(b) does not apply to Section 11 claims, as such claims may be based on negligent or innocent misstatements or omissions.”).

Section 10(b) of the Exchange Act declares it unlawful to “use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe as necessary . . . .” 15 U.S.C. § 78j(b). SEC Rule 10b–5, in turn, implements Section 10(b) by making it unlawful to make any untrue statement of material fact or to omit a material fact necessary to make the statements made not misleading. 17 C.F.R. § 240.10b–5. The Supreme Court has “implied a private cause of action from the text and purpose of § 10(b).” *Matrixx Initiatives*, 563 U.S. at 37.

A plaintiff asserting a claim under Section 10(b) or Rule 10b–5 (collectively, “Section 10”) must adequately allege the six following elements: (1) a material misrepresentation or omission by the defendant, (2) scienter, (3) a connection between the misrepresentation or omission and the purchase or sale of a security, (4) reliance upon the misrepresentation or omission, (5) economic loss, and (6) loss causation. *See Stoneridge Inv. Partners, LLC v. Scientific–Atlanta, Inc.*, 552 U.S. 148, 157 (2008) (citation omitted); *see also In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1051–52 (9th Cir. 2014).

Finally, Section 15 of the Securities Act and Section 20(a) of the Exchange Act extend liability to those who wield control over the primary violator. *See* 15 U.S.C. §§ 77o(a) and 78t(a). To establish a cause of action under the provisions, a plaintiff must first prove a primary violation of the underlying federal securities laws and then show that the defendant exercised actual power over the primary violator. *In re NVIDIA*, 768 F.3d at 1052.

Against this legal backdrop, Plaintiffs allege that Defendants’ IPO Registration Statement reflected misstatements and omissions involving the pending *Zang* litigation and several related party transactions. *See* (FAC ¶ 8). These misstatements and omissions, according to Plaintiffs, violate both Section 11 of the Securities Act and Section 10 of the Exchange Act. Plaintiff, therefore, asserts the following: (1) a Section 11 claim against all

Defendants, *see* (*id.* ¶¶ 171–82); (2) a Section 15 control liability claim against the Individual Defendants, *see* (*id.* ¶¶ 183–91); (3) a Section 10(b) claim against Defendant Maison and the Individual Defendants, *see* (*id.* ¶¶ 192–202); and a Section 20 control liability claim against the Individual Defendants, *see* (*id.* ¶¶ 203–07).

Defendants move to dismiss Plaintiffs' FAC in its entirety. Defendants advance the following arguments in support of dismissal. First, Defendants argue that the allegations of the FAC sound in fraud and, as such, Plaintiffs have not pleaded with particularity their Section 11 claim under the heightened pleading standard mandated by Federal Rule of Civil Procedure 9(b). Second, under Rule 9(b) and the PSLRA, Plaintiffs fail to plead with particularity the falsity, scienter, and loss causation elements for their Section 10 claim. Third, as to their control liability claims, Plaintiffs do not allege how the Individual Defendants exercised control over any primary violators. Fourth and finally, the IPO Registration Statement includes cautionary language, and therefore, the bespeaks caution doctrine and the statutory safe harbor doctrine warrant dismissal.

**A. Applicable Pleading Standard Governing the Section 11 Claim**

Before addressing the merits, the parties first contest whether the traditional fair notice pleading standard under Rule 8(a) or the heightened pleading standard under Rule 9(b) governs Plaintiffs' Section 11 claim. Defendant argues Plaintiffs' Section 11 claim relies on the same alleged misrepresentations as Plaintiffs' Section 10 claim and thus sound in fraud, yet Plaintiffs' allegations fail to meet the heightened pleading standards of Rule 9(b). (Opp. at 17). Plaintiffs respond that their Section 11 claim is not grounded in fraud because (1) the FAC structurally separates the "fraud-based claims from those that are not," (Opp. at 16); (2) the Section 11 claim is "carefully couched in the language of strict liability and negligence, not fraud," (*id.*); and the FAC included an expressed disclaimer that the Section 11 claim does not include any "allegations of fraud," (*id.*); *see also* (FAC ¶¶ 93, 172, 184). The Court disagrees with Plaintiffs.

Long-settled precedent has recognized that, "[a]lthough section 11 does not contain an element of fraud, a plaintiff may nonetheless be subject to Rule 9(b)'s particularity

mandate if his complaint 'sounds in fraud.'" *In re Daou Sys.*, 411 F.3d at 1027 (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003)). To "ascertain whether a complaint sounds in fraud," courts must "determine, after a close examination of the language and structure of the complaint, whether the complaint alleges a unified course of fraudulent conduct and relies entirely on that course of conduct as the basis of a claim." *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 885 (9th Cir. 2012) (cleaned up) (quoting *Rubke v. Capitol Bancorp Ltd*, 551 F.3d 1156, 1161 (9th Cir. 2009)). In other words, where "a complaint employs the *exact same factual allegations* to allege violations of section 11 as it uses to allege fraudulent conduct under section 10(b) of the Exchange Act, we can assume that it sounds in fraud." *Rubke*, 551 F.3d at 1161 (internal quotation marks omitted) (emphasis added).

Upon close examination of the FAC's language and structure, the Court finds that Plaintiffs' Section 11 claim stems from the same factual allegations and misrepresentations giving rise to their Section 10(b) claim—namely that Maison's IPO Registration Statement failed to disclose pending litigation and related party transactions. In fact, the factual allegations for Plaintiffs' Section 11 claims, *see* (FAC ¶¶ 97–110), are nearly identical, cut-and-paste to the factual allegations for their Section 10(b) claims, *see* (*id.* ¶¶ 115–26). *See, e.g.*, *In re Bare Escentuals, Inc. Sec. Litig.*, 745 F. Supp. 2d 1052, 1068 (N.D. Cal. 2010) (concluding the plaintiffs' section 11 claims sound in fraud where the complaint presented "remarkable similarity between the conduct forming the basis for plaintiffs' section 11 claims, and the conduct forming a basis for plaintiffs' section 10(b) claims" and contained "obvious overlap between [the] paragraphs" in the section 11 pleadings and section 10(b) pleadings).

Plaintiffs do not meaningfully distinguish the factual basis supporting the Section 11 claim compared to the factual basis supporting the Section 10(b) claim. Nor could they do so because the two claims do "not allege different misrepresentations." *In re Rigel Pharms.*, 697 F.3d at 886 (applying the heightened pleading standard where the section 11 claim alleged the "same . . . misrepresentations from the . . . press release that are central

to Plaintiff's section 10(b) fraud claim," even though "the section 11 claim [did] not adopt all of the allegations contained in the rest of the complaint"); *see also In re Cloudera*, 121 at 1186–87 ("Thus, even though fraud is not an element of [plaintiff's] Securities Act claims, those claims too are subject to Rule 9(b) because they rely on the same factual allegations underlying the Exchange Act claims.").[3] In sum, the Court does not find much distinction between the factual allegations giving rise to both claims because the core of these claims concerns the same alleged misrepresentations in the IPO Registration Statement. *Compare In re LendingClub Sec. Litig.*, 254 F. Supp. 3d 1107, 1115 (N.D. Cal. 2017) (noting the lead plaintiff made "no effort to distinguish the factual bases for its Section 11 claim and its Rule 10b–5 claim," thereby justifying application of the heightened pleading standard) *with Reckstin Fam. Tr. v. C3.ai, Inc.*, 718 F. Supp. 3d 949, 971 (N.D. Cal. 2024) (applying Rule 8's pleading standard because the "Plaintiffs have not

---

[3] Plaintiffs' nominal disclaimers that their Section 11 claim alleges negligent conduct, as opposed to fraudulent conduct, are unpersuasive for two reasons. First, as a preliminary matter, the Ninth Circuit has emphasized that "a plaintiff's nominal efforts to disclaim allegations of fraud with respect to its section 11 claims are unconvincing where the gravamen of the complaint is fraud . . . ." *Rigel*, 697 F.3d at 885. As such, a "plaintiff cannot escape the requirements of Rule 9(b) by virtue of a general disclaimer that a [Section 11] claim is based on negligence rather than fraud." *Rieckborn v. Jefferies LLC*, 81 F. Supp. 3d 902, 918 (N.D. Cal. 2015) (internal quotation marks omitted). Indeed, the court in *Rieckborn* concluded that, "[i]n light of the rest of the language and structure of the [complaint], this and other boilerplate disclaimers included in plaintiffs' allegations do not justify analysis under Rule 8(a)." *Id.*; *see also Brown v. China Integrated Energy, Inc.*, 875 F. Supp. 2d 1096, 1104 (C.D. Cal. 2012) (rejecting plaintiffs' nominal disclaimer stating that the section 11 pleadings "assert only strict liability and negligence claims and expressly disclaim any claim of fraud or intentional misconduct" (cleaned up)). Second, even more indicative that the Section 11 claim is not based in negligence, but rather fraud, is the fact that Plaintiffs allege that the Individual Defendants were "all motivated by their own and the Company's financial interests" (FAC ¶ 32), and "knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public and that the positive representations which were being made were then materially false and/or misleading," (*id.* ¶ 33). The Complaint later incorporates these allegations into the Section 11 pleadings. *See* (*id.* ¶ 171) ("Plaintiffs repeat and re-allege the foregoing allegations in ¶¶1–110[.]").

alleged that any given statement violates both Section 11 and Section 10(b)"). Accordingly, the Court will assess the adequacy of the Section 11 claim under Rule 9(b)'s heightened pleading standard, requiring the FAC to contain allegations of fact "set[ting] forth what is false or misleading about a statement, and why it is false." *Rubke*, 551 F.3d at 1161.[4]

**B. Assessing the Pleadings of the Section 11 Claim**

Based on Rule 9(b)'s heightened pleading standard, Defendants next argue that Plaintiffs' Section 11 claim fails to plead with particularity an actionable misstatement or omission in the IPO Registration Statement regarding the pending *Zang* lawsuit and alleged related party transactions. The Court addresses each argument in turn.

a) *Zang* Lawsuit

As stated previously, Section 11(a) prohibits any registration statement that "contain[s] an untrue statement of a material fact or omit[s] to state a material fact required to be stated therein or necessary to make the statements therein not misleading." 15 U.S.C. § 77k(a). "[I]n addition to proscribing lies and half-truths," Section 11 "creates liability for failure to speak on a subject at all." *Macquarie Infrastructure Corp. v. Moab Partners, L. P.*, 601 U.S. 257, 264 (2024). SEC Regulation S-K, which applies to Section 11, dictates the types of disclosures that must be made in certain filings with the SEC. Item 103 of SEC Regulation S-K (hereinafter, "Item 103") imposes an affirmative duty on public companies to disclose in their registration statement "any material pending legal

---

[4] The Court, however, notes that Plaintiffs need not plead with particularity their Section 11 claim insofar as it has been brought against the Underwriter Defendants, who are not alleged to have engaged in any fraudulent conduct. *See* (FAC at 66) (alleging fraudulent conduct only against Corporate Defendant Maison and the Individual Defendants). Therefore, the Court will not apply Rule 9(b)'s heightened pleading standard to the portion of Plaintiffs' Section 11 claim against the Underwriter Defendants. *See Cullen v. RYVYL Inc.*, No. 3:23-CV-0185-GPC-SBC, 2024 WL 898206, at *6 (S.D. Cal. Mar. 1, 2024) (applying the heightened pleading standard to a Section 11 claim against the individual defendants but not against the underwriter defendants who allegedly "failed to conduct a due diligence investigation" but did not "engage[] in fraud of any kind") (collecting cases).

proceedings, other than ordinary routine litigation incidental to the business, to which the registrant or any of its subsidiaries is a party or of which any of their property is the subject." 17 C.F.R. § 229.103(a).

Plaintiffs allege in the FAC that Defendants' failure to disclose the pending *Zang* lawsuit and the substance thereof in their IPO Registration Statement violated the affirmative disclosure duty mandated by federal securities regulation and misled Maison's investors. Plaintiffs point to the two following representations made in Maison's IPO Registration Statement that Plaintiffs claim were materially untrue and misleading. (FAC ¶ 96). First, the "Limitation on Liability and Indemnification Matters" section IPO Registration Statement stated, in pertinent part: "[T]here is no pending litigation or proceeding involving any of our directors, officers or employees for which indemnification is sought, and we are not aware of any threatened litigation that may result in claims for indemnification." (*Id.* ¶ 97). Second, the IPO Registration Statement further represented that "management does not believe any currently pending legal proceeding to which the Company is a party will have a material adverse effect on its financial statements." (*Id.* ¶ 98).

Defendants argue that they had no affirmative duty to disclose the Zang lawsuit, because, according to Defendants, the *Zang* lawsuit is "in no way related to Maison" or its property. (Mot. at 19). Defendants also argue that Plaintiffs' allegations fail to allege how the undisclosed information was material. Defendants contend that the FAC fails to allege "how the outcome of *Zang* could have an adverse effect on Maison stock." (Reply at 13). Lastly, even if the litigation involved Maison, Defendants assert they did not have a duty to disclose this information as "a matter of public record." (Mot. at 20).

The Court disagrees with Defendants as to Plaintiffs' allegations regarding the disclosure duty, but agrees with Defendants as to Plaintiffs' allegations of materiality. Based on the factual allegations of the FAC, which the Court accepts as true, Plaintiffs' allegations regarding the involvement of Defendant Xu and Maison's property in the *Zang*

lawsuit could serve as a basis for triggering Defendants' affirmative duty to disclose the lawsuit in the IPO Registration Statement.[5]

As to whether Plaintiffs have sufficiently alleged that the nondisclosure of the *Zang* lawsuit was material, it is well-settled that a misleading misstatement or omission is material if "there is a substantial likelihood that [it] would have been viewed by the reasonable investor as having significantly altered the total mix of information made available for the purpose of decisionmaking by stockholders concerning their investments." *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 699–700 (9th Cir. 2021) (internal quotation marks omitted) (citing *Basic Inc. v. Levinson*, 485 U.S. 224, 231–32 (1988)). The materiality inquiry is "fact-specific," *Matrixx Initiatives*, 563 U.S. at 43, and therefore, "requires delicate assessments of the inferences a reasonable shareholder would draw from a given set of facts and the significance of those inferences to him," *In re Alphabet*, 1 F.4th at 700 (internal quotation marks and citation omitted). Such fact-intensive assessments, the Ninth Circuit has emphasized, "are peculiarly ones for the trier of fact." *Id.* As such, dismissal premised on "materiality as a matter of law is generally appropriate only if the adequacy of the disclosure or the materiality of the statement is so obvious that reasonable minds could not differ." *Id.* (internal quotation marks omitted) (quoting *Fecht v. Price Co.*, 70 F.3d 1078, 1081 (9th Cir. 1995)).

Notwithstanding that materiality is not well-suited for disposition at the pleading stage, the FAC offers threadbare allegations to demonstrate materiality. The FAC, for example, vaguely alleges that the *Zang* "litigation is material, particularly because [] of Defendant Xu's actions relating to Maison's supermarkets . . . ." (FAC ¶ 101). Without

---

[5] Defendants also seek to undermine this affirmative duty by attacking the underlying merits of the *Zang* lawsuit—namely that the Hong Kong supermarket "was pled as an entity of unknown corporate status" and the allegations against the supermarket "are threadbare." (Reply at 12–13). Such contentions, however, do not negate the affirmative duty required by Item 103. Whether the litigant in the *Zang* lawsuit will ultimately prevail against the supermarket is of no consequence for the sake of this instant Motion; the text of Item 103 requires disclosure of "pending legal proceedings"—meaning such proceedings need not reach resolution to warrant disclosure.

more, however, this factual allegation does not sufficiently plead whether this lawsuit could jeopardize Maison's operations and financial well-being, which would, in turn, concern the Company's investors and their decision to invest in Maison's stocks. Plaintiffs' Opposition elaborates why this litigation may be material but, again, these factual allegations are missing from the FAC. Accordingly, the FAC has not presented sufficient factual allegations from which the Court could reasonably infer the undisclosed information regarding the *Zang* lawsuit was material.

Defendants also contend that because the *Zang* litigation already exists in the public domain, they were under no duty to inform investors under Item 103 about the Zang lawsuit. Defendants' argument raises what courts have coined as, a "truth-on-the-market defense." A truth-on-the-market defense is, as one sister district court explained, "based on the theory that, if an alleged misstatement or omission of fact is already known to the market, then the fact will already be reflected in the stock price, and the market has not been misled." *Bos. Ret. Sys. v. Uber Techs., Inc.*, No. 19-CV-06361-RS, 2020 WL 4569846, at *6 (N.D. Cal. Aug. 7, 2020).

Such a defense, however, poses a heavy burden of proof on Defendants, particularly at this stage of the proceedings. *See Provenz v. Miller*, 102 F.3d 1478, 1493 (9th Cir. 1996) (emphasizing that "defendants bear a heavy burden of proof" when raising a truth-on-the-market defense). This is because "defendants must prove that the information that was withheld or misrepresented was transmitted to the public with a degree of intensity and credibility sufficient to effectively counterbalance any misleading impression created by insider's one-sided representations." *Id.* at 1492–93 (internal quotation marks omitted). Further, "as the Supreme Court and Ninth Circuit have explained, the truth-on-the-market defense is a method of refuting an alleged misrepresentation's materiality." *Conn. Ret. Plans & Tr. Funds v. Amgen Inc.*, 660 F.3d 1170, 1177 (9th Cir. 2011) (emphasis omitted), *aff'd*, 568 U.S. 455 (2013). Thus, prevailing on this defense is "proper only if [defendants] show that no rational jury could find that the market was misled." *Provenz*, 102 F.3d at 1493 (internal quotation marks omitted) (noting that summary judgment premised on this

defense "should be denied" if "the evidence presents a sufficient disagreement to require submission to the jury").

Unsurprisingly, many courts decline to dismiss a complaint at the pleading stage premised on this defense. *Nguyen v. Radient Pharms. Corp.*, No. SA CV 11-0406 DOC, 2011 WL 5041959, at *7 (C.D. Cal. Oct. 20, 2011) ("As a general rule, however, the truth-on-the-market defense is intensely fact-specific, so courts rarely dismiss a complaint on this basis.") (collecting cases); *see also Bos. Ret. Sys.*, 2020 WL 4569846, at *6 ("[A]ssuming the [truth-on-the-market] defense is available for Section 11 claims, it is not available at the motion to dismiss stage."); *In re Amgen Inc. Securities Litigation*, 544 F. Supp. 2d 1009, 1025 (C.D. Cal. 2008).

Based on the above-referenced precedent, the Court declines to prematurely determine that the information involving the *Zang* litigation was transmitted to the public with a degree of intensity and credibility, thereby counterbalancing any purported misleading impressions to Maison's investors. Defendants have only pointed to the mere fact that the *Zang* lawsuit is available on a judicial public docket. Without more, however, that fact does not convincingly demonstrate that the information regarding the *Zang* lawsuit was so widely available that the market could not have been misled by Maison's IPO Registration Statement and the alleged omissions therein. Stated simply, a rational jury could, perhaps, find that Defendants' omission of the pending *Zang* lawsuit did mislead the market.

b) Related Party Transactions

Securities federal regulations also mandate a company to disclose certain related party transactions in its registration statements.[6] Specifically, Item 404 of SEC Regulation S-K (hereinafter, "Item 404") requires a registrant to describe its transactions that involve:

---

[6] SEC Regulation S-X, as a general matter, requires that financial statements be prepared consistent with generally accepted accounting principles ("GAAP"). Thus, "[f]inancial statements . . . which are not prepared in accordance with [GAAP] will be presumed to be misleading or inaccurate . . . ." 17 C.F.R. § 210.4–01(a)(1).

(1) an amount exceeding $120,000, and (2) any related person who has a direct or indirect material interest. *See* 17 C.F.R. § 229.404(a). A "related person" includes any director or executive officer of the registrant or any immediate family member of the director or executive director. *Id.* Additionally, the "SEC relies on the Financial Accounting Standards Board ("FASB") to adopt the principles that govern accounting standards for SEC filings." *In re Montage Tech. Grp. Ltd. Sec. Litig.*, 78 F. Supp. 3d 1215, 1224 (N.D. Cal. 2015) (citing Thomas Lee Hazen, 2 The Law of Securities Regulations § 9.6 (6th ed. 2009)). As the FAC notes and caselaw confirms, *see id.*, the FASB's Statement of Financial Accounting Standards No. 57 further defines what constitutes a related party. The FASB Standard No. 57 states that related parties include, in relevant part:

> parties with which the enterprise may deal if one party controls or can significantly influence the management or operating policies of the other to an extent that one of the transacting parties might be prevented from fully pursuing its own separate interests. Another party also is a related party if it can significantly influence the management or operating policies of the transacting parties or if it has an ownership interest in one of the transacting parties and can significantly influence the other to an extent that one or more of the transacting parties might be prevented from fully pursuing its own separate interests.

FASB No. 57(24)(f). The FASB further defines "control" as: "[t]he possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an enterprise through ownership, by contract, or otherwise." *Id.* at (b).

With this regulatory framework in mind, Plaintiffs allege that Defendants failed to disclose purportedly related party transactions between Maison and XHJC, Good Fortune Supermarket San Gabriel, LP ("San Gabriel Limited Partnership"), and Good Fortune Supermarket of Monrovia, LP ("Monrovia Limited Partnership"). To assess the underlying merits, the Court must first disentangle the web of factual allegations supporting this claim of undisclosed related parties.

*i. XHJC and Maison*

Starting with XHJC, the FAC alleges that the IPO Registration Statement listed Maison's centralized vendors—one of which being XHJC. *See* (FAC ¶¶ 70, 105). The Registration Statement, according to Plaintiffs, omitted that XHJC is also a related party to Maison due to Defendant Xu's affiliation with and control over XHJC. (*Id.* ¶ 106). The basis of Defendant Xu's alleged control over XHJC is as follows: Defendant Xu is a business partner with XHJC's principal in a different venture, Masamitsu Japanese Cuisine. (*Id.* ¶ 70). Masamitsu, in turn, shares a mailing address with Maison's principal executive office, (*id.* ¶ 72), while XHJC shares a mailing address with J&C's current headquarters, (*id.* ¶ 71).

Defendants contend that shared addresses, without more, fall short of presenting well-pleaded facts demonstrating Defendant Xu's purported control and influence over XHJC. *See* (Mot. at 20–21). The Court agrees. This minimal allegation is too attenuated to draw a reasonable inference that Defendant Xu wields control over XHJC and thereby connect Maison to XHJC as related parties. The FAC, for example, does not allege that XHJC and Maison share a common address. Instead, the proffered facts supporting the allegations of common control are, as Defendants noted, one-step removed because XHJC shares addresses with other entities, such as Masamitsu and J&C—but not with Maison. Further, Defendant Xu's separate business venture with XHJC's principal, without additional factual allegations about the nature of the business relationship and influence, does not demonstrate a connection between Maison and XHJC.

To this point, the cases upon which Plaintiffs rely not only alleged that the parties shared addresses, but also alleged other supporting facts demonstrating undisclosed related party transactions. For example, in *Snellink v. Gulf Res., Inc.*, the plaintiffs alleged that the registrant's board of director chairman owned over 90% in equity of another company that was also the registrant's largest customer in a given year. 870 F. Supp. 2d 930, 934, 939 (C.D. Cal. 2012). The chairman's significant ownership in the entity could demonstrate his common control over both the registrant company and the related company.

Additionally, that related company shared the same phone number, address, and website as its alleged parent company, and that parent company was also owned by the same chairman and his spouse. *Id.* Those robust factual allegations, the court concluded, demonstrated a potential related party connection, thereby surviving the pleading stage. *Id.* at 939. Similarly, another district court concluded that one could reasonably infer a related party connection where the alleged related company not only shared the same address as the registrant but was also "owned by an officer of [the registrant], or by an employee of [the] officer's family member." *In re Montage Tech.*, 78 F. Supp. 3d at 1225.

The FAC here does not allege similar facts, or at least, does not adequately tie all the factual allegations together to present a related party connection between Maison and XHJC. Therefore, the allegations in the FAC are not sufficient to support Plaintiffs' theory that Plaintiffs failed to disclose related party transactions based on the shared addresses.

*ii. Maison, San Gabriel Limited Partnership, and Monrovia Limited Partnership*

The FAC alleges that the IPO Registration Statement disclosed Maison acquired 91% of the equity interests in San Gabriel Limited Partnership while also acquiring 85.25% of the equity interests in the Monrovia Limited Partnership. (FAC ¶ 102). These statements, Plaintiffs allege, were misleading and omitted certain facts—namely, that Maison's equity purchases are related party transactions due to Defendant Xu's purported affiliation with and controlling influence over the two limited partnerships. (*Id.* ¶ 104). For example, the FAC alleges that, according to initial filing documents, Defendant Xu served as San Gabriel Limited Partnership's agent for service of process, and San Gabriel Limited Partnership's general partner was JCW International, LLC, for which Defendant Xu served as the manager. (*Id.* ¶ 75). Thereafter, the San Gabriel Limited Partnership's restated certificate of limited partnership changed its general partner to Good Fortune Supermarket of San Gabriel, Inc., for which Defendant Xu serves as the Chief Operating Officer. (*Id.* ¶ 76).

Likewise, the FAC alleges that, according to initial filing documents, Defendant Xu served as Monrovia Limited Partnership's agent for service of process, and one of Monrovia Limited Partnership's general partners was Ideal Investment CA Regional Center, LLC, for which Defendant Xu served as the manager. (*Id.* ¶ 78). Thereafter, the Monrovia Limited Partnership's restated certificate of limited partnership changed its general partner to Good Fortune Supermarket of Monrovia, Inc., for which Defendant Xu serves as the Chief Operating Officer. (*Id.* ¶ 79).

These factual allegations demonstrate at the pleading stage that, through his managerial roles in these connected entities, Defendant Xu may have exercised common control over the San Gabriel Limited Partnership and Monrovia Limited Partnership. Taking these factual allegations as true, Plaintiffs have sufficiently alleged Defendants did not disclose this information under Item 404. At the preliminary stages of this action, whether an entity exists as a related party may hinge on additional facts yet to be revealed through discovery. *See Snellink*, 870 F. Supp. 2d at 939 ("The question whether [the entity] was a related party in 2009 is a question of fact, and is inappropriate to resolve at this [pleading] stage of litigation.").

However, similar to Plaintiffs' allegations regarding Defendants' failure to disclose the *Zang* lawsuit, Plaintiffs' allegations have not sufficiently alleged facts to show that the related party transactions—specifically Defendant Xu's alleged control over the two entities—were material to a reasonable investor's decision to invest in Maison's stocks. As stated previously, in addition to alleging facts demonstrating a company's affirmative duty to disclose information pursuant to SEC Regulation S-K, a plaintiff must also plead sufficient facts to show that the defendant's failure to disclose such information was material.[7] Other courts, for example, have reasoned that undisclosed related party

---

[7] Plaintiffs' FAC recites at length the relevant regulatory framework requiring disclosure of material related party transactions, *see* (FAC ¶¶ 80–91), but the factual allegations supporting their Section 11 claim, *see* (*id.* ¶¶ 102–10), are devoid of facts demonstrating why these transactions are considered material.

transactions were material given the magnitude of such transactions or the transactions' impact on the company's finances and business operations. *See, e.g.*, *In re Montage Tech.*, 78 F. Supp. 3d at 1225 ("Plaintiffs have alleged that [the registrant's] transactions with [the related entity] accounted for between 50 and 71 percent of its revenues, and that [the registrant's] 2012 revenue growth is attributable entirely to its transactions with [the related entity]."); *Cheung v. Keyuan Petrochemicals, Inc.*, No. CV 11-9495 PSG JCGX, 2012 WL 5834894, at *8 (C.D. Cal. Nov. 1, 2012) ("Given the magnitude of these [related party] transactions, both in dollar terms and in proportion to the company's operations as a whole, these transactions are something a reasonable investor might have considered . . . important and so are material." (internal quotation marks omitted)).

Tellingly, Plaintiffs' Opposition elaborates, in a footnote, why these transactions might be important to Maison's business and material to investors. *See* (Opp. at 22 n.8). However, the FAC—specifically, the facts alleged in support of Plaintiffs' Section 11 claim, *see* (FAC ¶¶ 102–10)—have not done so, and Plaintiffs cannot cure the factual deficiencies in their pleadings by asserting missing information in their opposition papers. *See Schneider v. California Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." (emphasis omitted)).

In sum, the Court grants Defendants' Motion, insofar as it argues Rule 9(b)'s heightened pleading standard applies to Plaintiffs' Section 11 claim, Plaintiffs' related party allegations premised on Maison's purported ties to XHJC are insufficient, and Plaintiffs' allegations of materiality regarding the undisclosed litigation and related party transactions are insufficient. The Court grants Plaintiffs leave to amend to cure the deficiencies identified in this Order.[8]

---

[8] Even under a Rule 8 standard, the FAC does not adequately plead materiality because the FAC is devoid of allegations articulating why the undisclosed information "significantly altered the total mix of information made available for the purpose of decisionmaking by

Further, because the Court finds that the FAC has not sufficiently pleaded materiality for both the undisclosed litigation and related party transactions allegations and allegations of materiality are a required element for both Section 11 and Section 10(b) claims, the Court declines to review the Section 10(b) pleadings at this time. If Plaintiffs elect to amend their pleadings, Defendants may renew these arguments as to the amended pleading.[9]

//

//

//

//

---

stockholders concerning their investments." *In re Alphabet*, 1 F.4th at 699–700. The FAC alleges, in a vague and conclusory manner, that investors were left in dark about "the truth regarding the problems that Maison was experiencing." (FAC ¶ 200). However, the FAC does not state what "problems" Maison allegedly experienced, and more importantly, how these problems were material and warranted disclosure to avoid misleading investors.

[9] As a final matter, the Court rejects Defendants' reliance on the bespeaks caution and safe harbor doctrines to dismiss Plaintiffs' claims. The doctrine "provides a mechanism by which a court can rule as a matter of law . . . that defendants' forward-looking representations contained enough cautionary language or risk disclosure to protect the defendant against claims of securities fraud." *In re Atossa Genetics Inc Sec. Litig.*, 868 F.3d 784, 798 (9th Cir. 2017). Nonetheless, this doctrine requires a "stringent showing" of cautionary language, and "the language bespeaking caution [must] relate directly to that to which plaintiffs claim to have been misled." *Id.* Pursuant to Defendants' request, *see* (ECF No. 41), the Court takes judicial notice of the IPO Registration Statement and the purported cautionary language therein. However, the cautionary language that Defendants highlight reflects generalized, broad statements. *See* (Mot. at 33) (contending that Maison's IPO Registration Statement warned that the company's stock "could be 'highly speculative,' 'high risk,' and had the potential to fail or have an uncertain outcome'"). Such broad language does not relate directly to the specific misstatements and omissions that Plaintiffs have alleged; therefore, the Court will not rule, as a matter of law, that these representations adequately warned Plaintiffs of such risks.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS, in part, and DENIES, in part, Defendants' Motion. Should Plaintiffs elect to amend their FAC, they must do so within twenty-one (21) days of this Order. If Plaintiffs do not amend the FAC, then the FAC shall remain the operative complaint.

**IT IS SO ORDERED.**

Dated: March 31, 2025

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE