Robert V. Prongay (SBN 270796)
  rprongay@glancylaw.com
Leanne H. Solish (SBN 280297)
  lsolish@glancylaw.com
GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Counsel for Lead Plaintiffs and Lead Counsel*

[Additional Counsel on Signature Page]

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICK GREEN AND EVGENIA NIKITINA, Individually And On Behalf Of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>MAISON SOLUTIONS INC., JOHN XU, ALEXANDRIA M. LOPEZ, TAO HAN, BIN WANG, MARK WILLIS, XIAOXIA ZHANG, JOSEPH STONE CAPITAL, LLC, and AC SUNSHINE SECURITIES LLC,<br><br>Defendants. | Case No. 2:24-cv-00063-SPG(KS)<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND COMPLAINT**<br><br>Judge:     Hon. Sherilyn Peace Garnett<br>Date:      September 17, 2025<br>Time:      1:30 p.m.<br>Courtroom: 5C |

## **TABLE OF CONTENTS**

I.      PRELIMINARY STATEMENT ................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND....................................2

        A.      Maison And Its Business.....................................................................2

        B.      Maison Goes Public ...........................................................................3

        C.      Two Months After The IPO, The Truth Emerges................................3

        D.      The Court's Previous Order And Plaintiffs' SAC .............................5

III.    APPLICABLE LEGAL STANDARDS DISFAVOR DEFENDANTS'
        MOTION        ........................................................................................5

IV.     PLAINTIFFS ALLEGE CLAIMS UNDER SECTION 11 OF THE
        SECURITIES ACT   ....................................................................................6

        A.      The IPO Registration Statement Contained Misleading Statements And
                Omissions...........................................................................................7

                1.      The IPO Registration Statement Failed To Disclose The Pendency
                        Of The Zang Action......................................................................9

                2.      The IPO Registration Statement Failed To Disclose Multiple
                        Related Parties ...........................................................................12

V.      PLAINTIFFS ALLEGE CLAIMS UNDER SECTION 10(B) OF THE
        EXCHANGE ACT   ....................................................................................18

        A.      Plaintiffs Allege Material Misrepresentations And Omissions During
                The Class Period ...............................................................................19

        B.      Plaintiffs Allege A Strong Inference Of Scienter ...............................20

                1.      Plaintiffs Allege Strong Circumstantial Evidence Of Scienter ..21

                2.      Scienter Can be Inferred When Defendants Knew Of Their
                        Disclosure Obligations...............................................................24

                3.      Plaintiffs Have Alleged Maison's Scienter .............................25

                4.      Defendants Fail To Raise A *More* Cogent And Compelling
                        Inference Of Non-Culpability...................................................26

C. Plaintiffs Plead Loss Causation ........................................................... 26

VI. PLAINTIFFS ALLEGE CONTROL PERSON LIABILITY ........................ 28

VII. CONCLUSION  ....................................................................... 30

# TABLE OF AUTHORITIES

## CASES

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................................ 6

*Basic, Inc. v. Levinson*,
485 U.S. 224 (1988) .............................................................................................. 12

*Berson v. Applied Signal Tech., Inc.*,
527 F.3d 982 (9th Cir. 2008) ................................................................................ 7

*Brown v. China Integrated Energy, Inc.*,
875 F. Supp. 2d 1096 (C.D. Cal. 2012) ....................................................... 15, 24

*Brown v. China Integrated Energy, Inc.*,
2013 WL 12124124 (C.D. Cal. Apr. 22, 2013) ................................................... 8

*Cheung v. Keyuan Petrochemicals, Inc.*,
2012 WL 5834894 (C.D. Cal. Nov. 1, 2012) ............................................... 17, 24

*Cho v. UCBH Holdings, Inc.*,
890 F. Supp. 2d 1190 (N.D. Cal. 2012) ................................................. 25, 29, 30

*City of Roseville Emps.' Ret. Sys. v. EnergySolutions, Inc.*,
814 F. Supp. 2d 395 (S.D.N.Y. 2011) ................................................................. 9

*Crews v. Rivian Auto., Inc.*,
2023 WL 4361098 (C.D. Cal. July 3, 2023) ..................................................... 29

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005) .............................................................................................. 27

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
751 F.3d 990 (9th Cir. 2014) .............................................................................. 21

*Eminence Cap., LLC v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003) ............................................................................ 30

*Fecht v. Price Co.*,
70 F.3d 1078 (9th Cir. 1995) ................................................................................ 7

*Feyko v. Yuhe Int'l, Inc.*,
2013 WL 816409 (C.D. Cal. Mar. 5, 2013) ...................................................... 15

*Garcia v. J2 Glob., Inc.*,
   2021 WL 1558331 (C.D. Cal. Mar. 5, 2021)................................................................. 28

*Green v. Maison Sols. Inc.*,
   2025 WL 1009121 (C.D. Cal. Mar. 31, 2025)........................................................*passim*

*Henning v. Orient Paper, Inc.*,
   2011 WL 2909322 (C.D. Cal. July 20, 2011)............................................................... 25

*Herman & MacLean v. Huddleston*,
   459 U.S. 375 (1983) ...................................................................................................... 6

*Hildes v. Arthur Andersen LLP*,
   734 F.3d 854 (9th Cir. 2013) ..................................................................................... 6, 7

*Hollinger v. Titan Cap. Corp.*,
   914 F.2d 1564 (9th Cir. 1990 as amended) ................................................................ 25

*Howard v. Everex Sys., Inc.*,
   228 F.3d 1057 (9th Cir. 2000) ............................................................................... 20, 29

*IBEW Loc. Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC*,
   783 F.3d 383 (2d Cir. 2015) ....................................................................................... 12

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
   2012 WL 3758085 (S.D.N.Y. Aug. 29, 2012)............................................................. 15

*In re Alphabet, Inc. Sec. Litig.*,
   1 F.4th 687 (9th Cir. 2021) ....................................................................... 11, 22, 25, 26

*In re Amgen Inc. Sec. Litig.*,
   544 F. Supp. 2d 1009 (C.D. Cal. 2008) ................................................................. 16, 29

*In re A-Power Energy Generation Sys. Ltd. Sec. Litig.*,
   2012 WL 1983341 (C.D. Cal. May 31, 2012)....................................................... 14, 24

*In re Atossa Genetics Inc. Sec. Litig.*,
   868 F.3d 784 (9th Cir. 2017) ....................................................................................... 19

*In re Banc of California Sec. Litig.*,
   2017 WL 3972456 (C.D. Cal. Sept. 6, 2017) .............................................................. 15

*In re BofI Holding, Inc. Sec. Litig.*,
   977 F.3d 781 (9th Cir. 2020) ................................................................................. 26, 27

*In re Charles Schwab Corp. Sec. Litig.*,
   257 F.R.D. 534 (N.D. Cal. 2009) ................................................................................ 28

*In re China Educ. All., Inc. Sec. Litig.*,
  2011 WL 4978483 (C.D. Cal. Oct. 11, 2011) ................................................................ 15

*In re Countrywide Fin. Corp. Sec. Litig.*,
  588 F. Supp. 2d 1132 (C.D. Cal. 2008) ................................................................ 16, 29

*In re CytRx Corp. Sec. Litig.*,
  2015 WL 5031232 (C.D. Cal. July 13, 2015) ................................................................ 29

*In re Facebook, Inc. Sec. Litig.*,
  87 F.4th 934 (9th Cir. 2023) ................................................................ 18

*In re Galena Biopharma, Inc. Sec. Litig.*,
  117 F. Supp. 3d 1145 (D. Or. 2015) ................................................................ 19

*In re Genius Brands Int'l, Inc. Sec. Litig.*,
  97 F.4th 1171 (9th Cir. 2024) ................................................................ 18, 27, 28

*In re Gilead Scis. Sec. Litig.*,
  536 F.3d 1049 (9th Cir. 2008) ................................................................ 6, 27, 28

*In re Immune Response Sec. Litig.*,
  375 F. Supp. 2d 983 (S.D. Cal. 2005) ................................................................ 7, 8

*In re LDK Solar Sec. Litig.*,
  584 F. Supp. 2d 1230 (N.D. Cal. 2008) ................................................................ 26

*In re LendingClub Sec. Litig.*,
  254 F. Supp. 3d 1107 (N.D. Cal. 2017) ................................................................ 24

*In re Montage Tech. Grp. Ltd. Sec. Litig.*,
  78 F. Supp. 3d 1215 (N.D. Cal. 2015) ................................................................ 14, 25

*In re NVIDIA Corp. Sec. Litig.*,
  768 F.3d 1046 (9th Cir. 2014) ................................................................ 29

*In re Oracle Corp. Sec. Litig.*,
  627 F.3d 376 (9th Cir. 2010) ................................................................ 20

*In re QuantumScape Sec. Class Action Litig.*,
  580 F. Supp. 3d 714 (N.D. Cal. 2022) ................................................................ 15, 16

*In re Questcor Sec. Litig.*,
  2013 WL 5486762 (C.D. Cal. Oct. 1, 2013) ................................................................ 6

*In re Rigel Pharms., Inc. Sec. Litig.*,
  697 F.3d 869 (9th Cir. 2012) ................................................................ 26, 28

1158739.2

V

OPPOSITION TO MOTION TO DISMISS

*In re Snap Inc. Sec. Litig.*,
  2018 WL 2972528 (C.D. Cal. June 7, 2018) ........................................................................ 9, 11

*In re Stac Elecs. Sec. Litig.*,
  89 F.3d 1399 (9th Cir. 1996) ............................................................................................... 8

*In re VeriFone Holdings, Inc. Sec. Litig.*,
  704 F.3d 694 (9th Cir. 2012) .......................................................................................... 19, 20

*In re Washington Mut., Inc. Sec., Deriv. & ERISA Litig.*,
  259 F.R.D. 490 (W.D. Wash. 2009) .................................................................................. 8, 29

*Khoja v. Orexigen Therapeutics, Inc.*,
  899 F.3d 988 (9th Cir. 2018) ........................................................................................ 5, 6, 19

*Loos v. Immersion Corp.*,
  762 F.3d 880 (9th Cir. 2014) ............................................................................................... 27

*Lorenzo v. Sec. & Exch. Comm'n*,
  587 U.S. 71 (2019) ............................................................................................................... 19

*Macquarie Infrastructure Corp. v. Moab Partners, L. P.*,
  601 U.S. 257 (2024) .......................................................................................................... 9, 13

*Makor Issues & Rts., Ltd. v. Tellabs, Inc.*,
  513 F.3d 702 (7th Cir. 2008) ............................................................................................... 23

*Matrixx Initiatives, Inc. v. Siracusano*,
  563 U.S. 27 (2011) ........................................................................................................ *passim*

*Miller v. Thane Int'l, Inc.*,
  519 F.3d 879 (9th Cir. 2008) ............................................................................................... 19

*Mulderrig v. Amyris, Inc.*,
  492 F. Supp. 3d 999 (N.D. Cal. 2020) ................................................................................. 21

*Nayab v. Cap. One Bank (USA), N.A.*,
  942 F.3d 480 (9th Cir. 2019) ............................................................................................... 17

*Ng v. Berkeley Lights, Inc.*,
  2024 WL 695699 (N.D. Cal. Feb. 20, 2024) ....................................................................... 15

*No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp.*,
  320 F.3d 920 (9th Cir. 2003) ............................................................................................... 30

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
  575 U.S. 175 (2015) ................................................................................................ 6, 7, 9, 13

OPPOSITION TO MOTION TO DISMISS

*Reese v. BP Expl. (Alaska) Inc.*,
    643 F.3d 681 (9th Cir. 2011) ................................................................................... 19

*Rubke v. Capitol Bancorp Ltd.*,
    551 F.3d 1156 (9th Cir. 2009) ................................................................................... 8

*S. Ferry LP #2 v. Killinger*,
    687 F. Supp. 2d 1248 (W.D. Wash. 2009) ................................................................. 23

*S.E.C. v. China Ne. Petroleum Holdings Ltd.*,
    27 F. Supp. 3d 379 (S.D.N.Y. 2014) ........................................................................ 18

*SEB Inv. Mgmt. AB v. Wells Fargo & Co.*,
    742 F. Supp. 3d 1003 (N.D. Cal. 2024) ..................................................................... 22

*Snellink v. Gulf Res., Inc.*,
    870 F. Supp. 2d 930 (C.D. Cal. 2012) ............................................................ 14, 15, 24, 25

*State Inv. Council v. Ernst & Young LLP*,
    641 F.3d 1089 (9th Cir. 2011) .................................................................................. 21

*Steckman v. Hart Brewing, Inc.*,
    143 F.3d 1293 (9th Cir. 1998) ................................................................................... 9

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007) ......................................................................................... *passim*

*United Ass'n Nat'l Pension Fund v. Carvana Co.*,
    759 F. Supp. 3d 926 (D. Ariz. 2024) ......................................................................... 30

*Webb v. Solarcity Corp.*,
    884 F.3d 844 (9th Cir. 2018) .................................................................................... 26

*Zagami v. Nat. Health Trends Corp.*,
    540 F. Supp. 2d 705 (N.D. Tex. 2008) ................................................................. 17, 18

**STATUTES**

15 U.S.C. §77k .......................................................................................................... 6

15 U.S.C. §77o(a) ..................................................................................................... 28

15 U.S.C. §78j(b) ...................................................................................................... 18

15 U.S.C. §78t(a) ...................................................................................................... 28

15 U.S.C. §78u-4(b) ................................................................................................... 8

15 U.S.C. §78u-4(b)(2) ................................................................................................ 20

15 U.S.C. § 77k(a) .............................................................................................. 6, 7, 13

**RULES**

Fed. R. Civ. P. 8(a) ................................................................................................. 8, 29

Fed. R. Civ. P. 12(b)(6) .............................................................................................. 5

Fed R. Civ. P 9(b) ....................................................................................................... 8

**REGULATIONS**

17 C.F.R. §229.103 ..................................................................................................... 9

17 C.F.R. §240.10b-5 ................................................................................................ 18

Lead Plaintiffs Migwang Jeong, Yun Jung Kim, Yousub Jun, Lee Sun-Bok, and Hyeonnam Gang ("Plaintiffs") respond to Defendants'[1] Motion to Dismiss (ECF No. 55, the "Motion")[2] the Second Amended Class Action Complaint (ECF No. 52, the "SAC").

## I. PRELIMINARY STATEMENT

Maison is a grocery retailer offering Asian foods and merchandise. The Company is largely owned and controlled by its CEO, President, and Chairman, defendant John Xu. As a businessman with many ventures, Xu entwined Maison with his other businesses and family. In October 2023, Maison went public, raising $10 million in gross proceeds from investors as part of its initial public offering ("IPO"). Maison stated that it intended to use a significant portion of the IPO proceeds to acquire additional entities owned by Xu and his wife. Following the IPO, Maison's stock quickly shot up in price, closing at an all-time high of $15.21 per share of common stock on December 14, 2023.

On December 15, 2023, Hindenburg Research posted the results of an investigation into Maison, noting that it found "multiple red flags." Hindenburg's Research uncovered litigation alleging that Xu and another of his business ventures used Hong Kong Supermarkets "as a front to defraud the EB-5 visa program." Critically, the litigation centers around the plaintiff being "steered" into investing in, and working at, a now Maison-owned supermarket. The plaintiff seeks over $600,000

---

[1] Defendants are Maison Solutions, Inc. ("Maison" or the Company"), CEO John Xu ("Xu"), CFO Alexandria M. Lopez ("Lopez"), Tao Han ("Han"), Bin Wang ("Wang"), Mark Willis ("Willis"), Xiaoxi Zhang ("Zhang"), Joseph Stone Capital, LLC and AC Sunshine Securities LLC. The Individual Defendants are Xu, Lopez, Han, Wang, Willis, and Zhang. Underwriter Defendants are Joseph Stone Capital and AC Sunshine Securities.

[2] Defendants' accompanying memorandum of law is cited as "Mot. __," citations to the SAC are "¶__," and citations to the exhibits attached to the SAC are "Ex. __." Unless otherwise noted, alterations, citations, and quotations are omitted, and emphasis is added.

from this Maison-owned store, plus a share of its profits—money of which Maison cannot afford to spare.  Hindenburg also posted that it believed, based on its research, Maison was not disclosing all related party transactions.  Plaintiffs' independent investigation confirmed that Maison acquired its first two supermarkets from entities that were either under Xu's common control or in which Xu had the ability to significantly influence that entity and thus were related party transactions.  Maison failed to disclose the lawsuit or that the acquisitions of these stores were with related parties.  Maison's shares fell *83.6%* on this news.

Plaintiffs' SAC sufficiently alleges securities law violations against Defendants.  This Court has already found that Defendants had a duty to disclose the litigation and the related party transactions.  And the SAC adds detailed allegations as to why this information was material to investors, curing any prior pleading deficiency.  In their Motion, Defendants focus on recycled arguments from their previous motion to dismiss.  At bottom, these arguments are all based on factual disputes that are not properly resolved in their favor on this motion.  Because the Court has already held that Plaintiffs sufficiently alleged omissions, and because the SAC cures the previously identified pleading defects, the Motion should be denied in their entirety and this case should proceed to discovery.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Maison And Its Business

Maison is a specialty grocery retailer offering Asian food and merchandise.  ¶41.  Formed in 2019, Maison has acquired majority interests in four Good Fortune or Hong Kong Supermarkets around Los Angeles County, rebranding them as "HK Good Fortune Supermarkets" or "Hong Kong Supermarkets."  During the Class Period, Maison also held minority interests in two additional supermarkets and a wholesale supplier of food and groceries imported from Asia.  ¶¶41-43.  Maison is largely run and controlled by Xu.  ¶¶26, 52-56.

**B.      Maison Goes Public**

In October 2023, Maison went public.  The Company first filed its registration statement with the SEC on Form S-1 on May 22, 2023, and thereafter filed a number of amendments.  ¶45.  On September 29, 2023, the SEC declared Maison's registration statement effective.  *Id.*

On October 4, 2023, Maison announced its pricing of the IPO at $4 per share of Class A common stock.  ¶46.  The following day, October 5, 2023, Maison filed its final prospectus with the SEC for its IPO (the "IPO Prospectus"), which forms part of the registration statement (the IPO Prospectus and Form S-1 are collectively referred to as the "IPO Registration Statement").  *Id*.  That day, Maison's Class A common stock began trading on NASDAQ, with the ticker symbol MSS.  ¶47.

On October 10, 2023, Maison closed its IPO of 2.5 million shares of its Class A common stock at a price of $4 per share.  ¶48.  Maison received $10 million in gross proceeds, and net proceeds of approximately $8.72 million from its IPO.  *Id*. Defendants Joseph Stone and AC Sunshine served as underwriters for the IPO.  ¶¶35-39.  In addition, as part of the IPO, Maison's executive officers and directors – *i.e.*, the Individual Defendants – were subject to a lock up provision, pursuant to which they could not trade their shares of Maison Class A common stock.  ¶47, n.1.

On November 22, 2023, Maison announced the closing of a private placement to two non-U.S. persons.  In connection with this offering, Maison agreed to provide for the resale of these shares.  ¶49.  In accordance with this agreement, Maison filed a registration statement on Form S-1 on November 29, 2023, which was declared effective by the SEC on December 6, 2023.  On December 11, 2023, Maison filed a prospectus with the SEC (the "Selling Shareholders Prospectus"), which forms part of the registration statement (the Selling Shareholders and Form S-1 together are referred to as the "Selling Shareholders Registration Statement").  ¶50.

**C.      Two Months After The IPO, The Truth Emerges**

The Company's stock quickly soared following the IPO, closing at $15.21 per

share of Class A common stock on December 14, 2023. ¶57. The next day, December 15, 2023, Hindenburg Research ("Hindenburg") made several posts on the social media platform X, formerly known as Twitter, detailing the results of its investigation into Maison, noting that it found "multiple red flags." ¶¶5, 58.

In its posts, Hindenburg, through its analysis of Los Angeles Superior Court filings, uncovered a previously undisclosed 2020 lawsuit alleging that Xu and another of his businesses, J&C,[3] used the Hong Kong Supermarkets "as a front to defraud the EB-5 visa program." ¶¶5, 59. Captioned *Zang v. Xu, et al.*, Case No. 20GDC00485 (Cal. Super. Ct.) (the "Zang Action"), the litigation centers around the plaintiff being "steered" into investing in, and working at, a now Maison-owned supermarket, and specifically brings two causes of action against the supermarket. ¶¶59, 63-70; & Ex. 1 at ¶¶24-27, 38-42, 108-116 & Exs. A, D; Ex. 2 at 6.

Hindenburg also posted that it believed, based on its research, Maison was not disclosing all related party transactions. ¶¶5, 60. Indeed, Plaintiffs allege, based on their own independent investigation, that Maison's acquisitions of the majority equity interests of Good Fortune Supermarket of San Gabriel, LP ("Good Fortune San Gabriel") and Good Fortune Supermarket of Monrovia, LP (Good Fortune Monrovia"), which owned HK Good Fortune Supermarkets in each of these respective cities, were undisclosed related party transactions. The SAC details that, at the time of these acquisitions, Xu would have had common control and/or a significant influence over these entities, and thus under both U.S. generally accepted accounting principles ("GAAP") and the Company's own accounting policies, would be a related party transaction. ¶¶71-77, 83-91; Ex. 3 at 1-7.

On this news, Maison's Class A common stock fell $12.71 per share—over

---

[3] J&C International Group ("J&C") describes itself as a cross-border investment firm that "supports immigration services for high-net-worth Chinese investors and institutions." ¶¶5, 26, 59. Xu has served as J&C's Director and President since 2013, and Lopez served as its CFO from 2014 to 2023. ¶¶26, 27.

4

OPPOSITION TO MOTION TO DISMISS

*83%*—to close at just $2.50 per share, on unusually heavy trading volume. ¶¶6, 61. Maison's stock price has not recovered and closed at just $1.01 per share on April 17, 2024 (the last trading day prior to the filing of the SAC), well below the $4 per share IPO price, and a more than 93% decline from Maison's all-time high share price. ¶7.

### D.   The Court's Previous Order And Plaintiffs' SAC

After being appointed the Lead Plaintiffs in this Action on April 4 2024, (ECF No. 28), Plaintiffs amended the initial complaint on June 17, 2024 (ECF No. 33), and Defendants moved to dismiss (ECF No. 40). In granting and denying in part Defendants' Motion, and as relevant to this Motion, the Court held that Defendants had an affirmative duty to disclose the Zang Action and that Plaintiffs sufficiently alleged that Xu "may have exercised common control over" Good Fortune San Gabriel and Good Fortune Monrovia and that Defendants did not disclose this information. *Green v. Maison Sols. Inc.*, 2025 WL 1009121, at *6, *10 (C.D. Cal. Mar. 31, 2025). However, the Court held that Plaintiffs failed to allege sufficient factual allegations from which the Court could reasonably infer that that the Zang Action and the related party transactions were material, *id.* at *7, *10. The Court granted plaintiff leave to cure the deficiencies in pleading materiality. *Id.* at *11.

Plaintiffs filed their SAC on April 21, 2025, adding, *inter alia*, additional allegations as to the materiality of the Zang Action and the related party transactions with Good Fortune San Gabriel and Good Fortune Monrovia. ¶¶99, 101, 106, 110.

## III.   APPLICABLE LEGAL STANDARDS DISFAVOR DEFENDANTS' MOTION

In ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court "must … accept all factual allegations … as true," and construe them in the light most favorable to the plaintiff. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007); *see also Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1014 (9th Cir. 2018) ("courts must interpret the allegations and factual disputes in favor of the plaintiff at the pleading stage"). A complaint must "contain sufficient factual matter

… to state a claim that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] district court ruling on a motion to dismiss is not sitting as a trier of fact," and "so long as the plaintiff alleges facts to support a theory that is not facially implausible, the court's skepticism is best reserved for later stages of the proceedings." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1057 (9th Cir. 2008). As such, "[a] complaint should not be dismissed unless it appears beyond a doubt that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief." *In re Questcor Sec. Litig.*, 2013 WL 5486762, at *8 (C.D. Cal. Oct. 1, 2013); *see also Khoja*, 899 F.3d at 1008 ("Dismissal is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory").

## IV.    PLAINTIFFS ALLEGE CLAIMS UNDER SECTION 11 OF THE SECURITIES ACT

Plaintiffs bring claims under Section 11 of the Securities Act, 15 U.S.C. §77k ("Section 11"), against all Defendants. Section 11 creates a private remedy for any purchaser of a security if "any part of the registration statement ... contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading[.]" 15 U.S.C. § 77k(a); *Green*, 2025 WL 1009121, at *4.

"Section 11 places a relatively minimal burden on a plaintiff." *Hildes v. Arthur Andersen LLP*, 734 F.3d 854, 859 (9th Cir. 2013); *Herman & MacLean v. Huddleston*, 459 U.S. 375, 382 (1983). "The section was designed to assure compliance with the disclosure provisions of the Act by imposing a stringent standard of liability on the parties who play a direct role in a registered offering." *Hildes*, 734 F.3d at 859. Thus, plaintiffs bringing Section 11 claims are not required to plead or prove scienter, reliance, or loss causation. 15 U.S.C. § 77k(a); *Hildes*, 734 F.3d at 860; *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 179 (2015). "Liability against the issuer of a security is virtually absolute, even for innocent

1158739.2

misstatements." *Hildes*, 734 F.3d at 859. "As long as a plaintiff purchased a security issued pursuant to a registration statement, he need only show a material misstatement or omission to establish his *prima facie* case." *Id.*; 15 U.S.C. §77k(a).

### A.    The IPO Registration Statement Contained Misleading Statements And Omissions

Section 11 imposes strict liability on every person who issues, underwrites, or signs offering materials for securities that contain an untrue or misleading statement or omission. 15 U.S.C. §77k(a). "Section 11 thus creates two ways to hold issuers liable for the contents of a registration statement—one focusing on what the statement says and the other on what it leaves out." *Omnicare*, 575 U.S. at 179. A statement or omission is misleading "if it would give a reasonable investor the 'impression of a state of affairs that differs in a material way from the one that actually exists.'" *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 985 (9th Cir. 2008).

A misrepresentation or omission is material if there is "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 38 (2011). The "materiality" of a misrepresentation or omission is a fact-specific inquiry reserved for the trier of fact. *Fecht v. Price Co.*, 70 F.3d 1078, 1081 (9th Cir. 1995). "Only if 'reasonable minds' could not disagree that the challenged statements were not misleading should the district court dismiss under 12(b)(6)." *In re Immune Response Sec. Litig.*, 375 F. Supp. 2d 983, 1021-22 (S.D. Cal. 2005)

Plaintiffs bring Section 11 claims based on two categories of misleading statements and omissions in the IPO Registration Statement,[4] and specifically identify the omitted fact necessary to make the statements therein not misleading: (1) the pendency of the Zang Action and the substance thereof; and (2) the existence of

---

[4] Each of the Individual Defendants signed or authorized the signing of the IPO Registration Statement. ¶¶26, 27, 30-33, 95.

related party transactions.  ¶¶97-111.

In determining whether Plaintiffs have sufficiently alleged their Section 11 claim, this Court has held that under the circumstances here, the heightened pleading standards of Fed R. Civ. P 9(b) applies for those defendants who are also alleged to have engaged in fraudulent conduct – *i.e.*, Maison, Xu, and Lopez.  *Green*, 2025 WL 1009121, at *5 & n.4; SAC at 71-75.  For these defendants, Plaintiffs have alleged their Section 11 claim with particularity because the SAC details "what is false or misleading about a statement, and why it is false." *Brown v. China Integrated Energy, Inc.*, 2013 WL 12124124, at *11 (C.D. Cal. Apr. 22, 2013); *Immune Response*, 375 F. Supp. 2d at 1038 (because the complaint "gives details about the contents of the [registration] statement and contains information on why it was false" it "meets the requirements of Rule 9(b)").

"The scienter requirement of Rule 9(b) does not apply to Section 11 claims, even when a section 11 claim sounds in fraud." *Brown*, 2013 WL 12124124, at *12; *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 n.3 (9th Cir. 1996) ("Of course, the scienter requirement of Rule 9(b) does not apply to Section 11 claims, as such claims may be based on negligent or innocent misstatements or omissions.").  Nor do the heightened pleading requirements of the Private Securities Litigation Reform Act of 1995 (15 U.S.C. §78u-4(b), "PSLRA"). *Rubke v. Capitol Bancorp Ltd.*, 551 F.3d 1156, 1161 (9th Cir. 2009).

The notice pleading standards of Fed. R. Civ. P. 8(a) are applicable for the Underwriter Defendants and defendants Han, Wang, Willis, and Zhang. *In re Washington Mut., Inc. Sec., Deriv. & ERISA Litig.*, 259 F.R.D. 490, 504 (W.D. Wash. 2009) ("Rule 9(b) applies only to those defendants also accused in the underlying fraud."); *accord Green*, 2025 WL 1009121, at *5, n.4.  None of these defendants are named or mentioned in the Exchange Act claims and are not alleged to have engaged in fraud. *See* SAC at 71, 75.

### 1. The IPO Registration Statement Failed To Disclose The Pendency Of The Zang Action

Plaintiffs allege that Defendants' failure to disclose the Zang Action (¶¶63-70) rendered materially misleading certain statements in the IPO Registration Statement representing that there was no pending legal proceedings that would have a material adverse effect on the Company's financials or for which indemnification would be sought (¶¶97-99). *Omnicare*, 575 U.S. at 192 ("An issuer must as well desist from misleading investors by saying one thing and holding back another."); *see also, e.g.*, *In re Snap Inc. Sec. Litig.*, 2018 WL 2972528, at *8 (C.D. Cal. June 7, 2018) (Section 11 claim sufficiently pled based on failure to disclose litigation in the company's registration statement and citing *Omnicare*).

Plaintiffs also allege that Defendants also had an affirmative duty to disclose the Zang Action under Item 103 of Regulation S-K (17 C.F.R. §229.103, "Item 103") (¶¶100-01). *Green*, 2025 WL 1009121, at *6 ("Section 11 'creates liability for failure to speak on a subject at all.'") (quoting *Macquarie Infrastructure Corp. v. Moab Partners, L. P.*, 601 U.S. 257, 264 (2024)); *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1296 (9th Cir. 1998) (any omission of facts required to be stated under Regulation S-K "produces liability under Section 11."); *see also, e.g.*, *City of Roseville Emps.' Ret. Sys. v. EnergySolutions, Inc.*, 814 F. Supp. 2d 395, 427 (S.D.N.Y. 2011) (plaintiffs adequately alleged a Section 11 claim based on failure to make disclosures required under Item 103 of Regulation S-K).

This Court has already held that Plaintiffs have sufficiently alleged that Defendants had a duty to disclose the Zang Action:

> Based on the factual allegations of the FAC, which the Court accepts as true, Plaintiffs' allegations regarding the involvement of Defendant Xu and Maison's property in the *Zang* lawsuit could serve as a basis for triggering Defendants' affirmative duty to disclose the lawsuit in the IPO Registration Statement.

*Green*, 2025 WL 1009121, at *6.

Nothing has changed since the Order to upset that result, and the Court should reject Defendants' attempt to re-hash arguments they already lost. *See* Mot. 12-13. Specifically, without acknowledging the Court's prior decision, Defendants ask the Court to revisit its holding by again complaining that the SAC has not asserted that Hong Kong Supermarket of Monterey Park, CA "is in any way related to Maison." Mot. 12-13. Not only is this argument improper at the pleading stage, *Tellabs*, 551 U.S. at 314, but the SAC alleges that the Hong Kong Supermarket is a defendant in the Zang Action, that the Hong Kong Supermarket in Monterey Park is a key subject of the Zang Action, and that the Hong Kong Supermarket in Monterey Park was purchased by Maison, and thus is the Company's "property." ¶¶42, 63-71; Ex. 1.

Defendants attempt to distance the Zang Action from these well-pled allegations by claiming that the Zang Action centered on representations made to the plaintiff regarding immigration services. Mot. 12-13. In doing so, Defendants conveniently ignore that as part of these immigration services, the plaintiff alleges that he was "steered" to invest $500,000 into the Hong Kong Supermarket in Monterey Park, and was also not paid for working over a month at the Hong Kong Supermarket in Monterey Park—Maison's Monterey Park store is thus a key subject of the action. ¶¶65-66. And Defendants misunderstand the import of a recent settlement by one of the Zang Action defendants. *See* Mot. at 13. This defendant stipulated to and confessed that: Zang's investment was the Monterey Park supermarket; the Monterey Park location was the supermarket listed in the relevant contract; Zang was instructed to report for work and placed for work inside the Monterey Park store. ¶71 & Ex. 2. Plaintiffs never allege that Maison is a party to the Zang Action (*contra* Mot. 13), rather, the stipulation and confession further support the veracity of the allegations in the SAC that Maison's property is a subject of the Zang Action.

Defendants next argue that the SAC's allegations concerning the materiality of the Zang Action are flawed. Mot. 13-14. Although the Court acknowledged that

"materiality is not well-suited for disposition at the pleading stage," it found that Plaintiffs' prior complaint was missing factual allegations to support materiality. The SAC adds these allegations. *See, e.g.*, ¶¶99, 101.

The Zang plaintiff sought damages of $620,000 plus punitive damages, an accounting relating to the $500,000 investment, and a share of profits for the Monterey Park store for the two causes of action brought against the Monterey Park supermarket. ¶¶67, 99(b), 101(b). In comparison, Defendants disclosed a previously settled employment litigation wherein Maison agreed to pay $98,500 and accrued another $40,000 loss that is subject to reduction. ¶¶98, 99(c), 101(c). Thus, by Defendants' own assessment, significantly smaller amounts were material to Maison.

The materiality of the Zang Action is also apparent when comparing sought damages against Maison's reported net *loss* of $104,939, that it had a working capital *deficit* of $1.44 million (signaling liquidity issues), and had just $1.61 million in "cash on hand." ¶¶99(d) & n.2, 101(d). This means that the Zang plaintiff sought monetary damages of at least 38.5% of Maison's current cash (not including the accounting and share of profits for the Monterey Park store). Moreover, because Maison was already operating at a loss and was losing money, any unfavorable outcome from the litigation would undoubtedly have a material impact on Maison's finances and operations. At least one Court has found similar allegations sufficient to allege materiality at the pleading stage. *See Snap*, 2018 WL 2972528, at *6 (allegations that a plaintiff sought "significant damages" and the defendant company was "losing money" sufficient to allege materiality of undisclosed lawsuit). And as evidenced by the over 83% stock drop when Hindenburg reported on this undisclosed lawsuit (¶¶6, 61), investors did find the revelation of the Zang Action material. *E.g.*, *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 703 (9th Cir. 2021).

Defendants cannot overcome these well-pled allegations. In response, Defendants again complain that Maison is not a named defendant and so the plaintiff could not recover from Maison. Mot. 13. This response conveniently ignores the fact

11
OPPOSITION TO MOTION TO DISMISS

that Maison owns 100% of the Monterey Park supermarket (¶64), and the Court's prior order. Defendants next point out that there are twelve defendants in the lawsuit. Mot. 13. However, the causes of action brought against the Monterey Park store only name four unique defendants. *See* Ex. 1 at 23-36.[5] Thus, while there is no "bright-line rule" for determining materiality, *Basic, Inc. v. Levinson*, 485 U.S. 224, 236 (1988), even distributing the definitive amount damages sought ($620,000) between the three defendants named for that cause of action would amount to 12.8% of Maison's current cash, well above the 5% presumption for quantitative materiality recognized by some courts. *E.g.*, *IBEW Loc. Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC*, 783 F.3d 383, 390 (2d Cir. 2015) (recognizing a 5% "rule of thumb" for materiality).

## 2. The IPO Registration Statement Failed To Disclose Multiple Related Parties

Plaintiffs allege that Defendants' failure to disclose that Good Fortune San Gabriel and Good Fortune Monrovia were related parties at the time when Maison acquired majority interests in these entities rendered materially misleading certain statements in the IPO Registration Statement, including statements discussing these acquisitions and statements discussing Maison's related party transactions since its formation. ¶¶103-111.

After analyzing the Plaintiffs' factual allegations relating to Good Fortune San Gabriel and Good Fortune Monrovia, the Court held that:

> These factual allegations demonstrate at the pleading stage that, through his managerial roles in these connected entities, Defendant Xu may have exercised common control over [Good Fortune San Gabriel] and [Good Fortune Monrovia]. Taking these factual allegations as true, Plaintiffs have sufficiently alleged Defendants did not disclose this information under Item 404.

---

[5] And two of these defendants, J&C International and HZV Holdings, are also entities owned and run by Xu. ¶¶5, 26, 55.

*Green*, 2025 WL 1009121, at *10.  Just as with the Zang Action allegations, nothing has changed in the SAC since the Court's previous order, and Defendants' attempt to relitigate these issues should be rejected.

Defendants first challenge whether they were required to disclose the related party transactions with Good Fortune San Gabriel and Good Fortune Monrovia, relying on instructions to Item 404 of SEC Regulation S-K. Mot. 14-15.  This argument ignores, however, that despite whether or not Defendants were mandated to disclose the related party transactions under Item 404, Section 11 "proscrib[es] … half-truths," *i.e.*, omissions of material fact necessary to make the statements therein not misleading.  *Green*, 2025 WL 1009121, at *6 (quoting 15 U.S.C. §77k(a) and *Macquarie*, 601 U.S. at 264); *see also Omnicare*, 575 U.S. at 192 ("literal accuracy is not enough: An issuer must as well desist from misleading investors by saying one thing and holding back another.").

Twice in the IPO Registration Statement, Defendants list Maison's acquisitions—including the acquisitions of Maison's San Gabriel and Monrovia stores from Good Fortune San Gabriel and Good Fortune Monrovia—since the Company's founding, and noting when other acquisitions were from a related party. ¶¶103, 104.  The IPO Registration Statement also listed transactions and proposed transactions with related parties "since July 2019," and failed to include the transactions with Good Fortune San Gabriel and Good Fortune Monrovia (that took place in July 2019). ¶107.  As such, all these statements are materially misleading by omission. ¶¶103-110.

Defendants next repeat several arguments from their prior motion to dismiss. First, they complain that Plaintiffs' well-pled allegations are insufficient to allege that Good Fortune San Gabriel and Good Fortune Monrovia are related parties. Mot. 15-16.  But the Court has already held the opposite. *Green*, 2025 WL 1009121, at *10.

Moreover, Defendants' insufficiency argument is solely based on the idea that a shared address is not enough to allege a related party relationship.  Mot. 15-16.  But

1158739.2

13

OPPOSITION TO MOTION TO DISMISS

this argument ignores what the SAC actually alleges: that Xu was the chief operating officer of the general partners of Good Fortune San Gabriel and Good Fortune Monrovia when Maison acquired them, and previously managed Good Fortune San Gabriel and Good Fortune Monrovia through his dual roles as agent and manager of the general partners.  ¶¶72-77.  These allegations are particular and sufficient to show that these entities and Maison[6] were either under the common control of Xu and/or that Xu had the ability to significantly influence all entities, and thus were related parties under SEC regulations and guidance, U.S. Generally Accepted Accounting Principles ("GAAP"), and Maison's own accounting policies[7] (¶¶81-91), and as such, should have been disclosed.[8]  And indeed, it is these allegations the Court already found sufficient.  *Green*, 2025 WL 1009121, at *10.  So too have other courts.  *See, e.g.*, *In re A-Power Energy Generation Sys. Ltd. Sec. Litig.*, 2012 WL 1983341, at *3, *8 (C.D. Cal. May 31, 2012) (defendant company entering into transactions with companies operated by CEO of defendant company were satisfactory to allege material omission of relationship); *In re Montage Tech. Grp. Ltd. Sec. Litig.*, 78 F. Supp. 3d 1215, 1225 (N.D. Cal. 2015) (allegations that entity was owned by a Montage officer or by an employee of a Montage officer's family member and entities shared phone numbers supported inference of "power to direct or cause direction of the management …" of other party); *Snellink v. Gulf Res., Inc.*, 870 F. Supp. 2d 930,

---

[6] Defendants admit that Maison is controlled by Xu.  ¶¶52-54.

[7] Under which a related party includes, *inter alia*: (1) management of the other entity; (2) a relationship in which the other party was under common control with Maison; (3) a relationship in which one party "can significantly influence the management or operating policies" of the other; and (4) a relationship in which "other parties can significantly influence the management or operating policies of the transacting parties or that have an ownership interest in one of the transacting parties and can significantly influence the other."

[8] Defendants' cited authority (Mot. 16) is thus inapt and distinguishable.  *See also* ECF No. 46 at 14 (distinguishing Defendants' cases in Plaintiffs' Opposition to Defendants' Motion to Dismiss the Amended Complaint).

14

OPPOSITION TO MOTION TO DISMISS

939, 940 (C.D. Cal. 2012) (shared address and common ownership and control by defendant company's Chairman supported material omission of related party relationship); *In re Advanced Battery Techs., Inc. Sec. Litig.*, 2012 WL 3758085, at *3-4, *10 (S.D.N.Y. Aug. 29, 2012) (allegations that CEO purchased entity prior to transaction, along with public filing that CEO was entity's "legal representative" supported a "compelling" inference of material omission of related party). To the extent any question remains, it is inappropriate to resolve those questions at the pleading stage. *Green*, 2025 WL 1009121, at *10 (quoting *Snellink*, 870 F. Supp. 2d at 939).

Second, Defendants recycle their argument that Plaintiffs may not rely on Hindenburg. Mot. 16-18. Defendants start by questioning Hindenburg's credibility. But courts in this district have repeatedly upheld allegations based on short sellers, explaining that such attacks on the credibility or motive of the author are "a factual dispute not appropriate for resolution at this stage." *Feyko v. Yuhe Int'l, Inc.*, 2013 WL 816409, at *11 (C.D. Cal. Mar. 5, 2013) (quoting *In re China Educ. All., Inc. Sec. Litig.*, 2011 WL 4978483, at *4 (C.D. Cal. Oct. 11, 2011)); *accord Snellink*, 870 F. Supp. 2d at 939; *Brown v. China Integrated Energy, Inc.*, 875 F. Supp. 2d 1096, 1119-20 (C.D. Cal. 2012); *see also In re QuantumScape Sec. Class Action Litig.*, 580 F. Supp. 3d 714, 731 (N.D. Cal. 2022) (cited at Mot. 15-16) (rejecting argument that a short seller's conclusions are "inherently unreliable").[9]

---

[9] Defendants' reliance on *Ng v. Berkeley Lights, Inc.*, 2024 WL 695699 (N.D. Cal. Feb. 20, 2024) is misplaced. In *Ng*, the short seller relied on witness interviews, without providing any details as to these witnesses' titles, roles, period of employment, or that the witnesses had firsthand knowledge of the relevant facts. 2024 WL 695699, at *9. The *Ng* court concluded that because the plaintiffs relied entirely on the "short-seller's own assertions that the characterizations passed on by the witnesses were credible," there was no basis to conclude that the short seller's witnesses were reliable. *Id.* Here, Hindenburg relied on publicly filed documents and websites, which do not "raise the same concerns about unreliability as a confidential informant." *In re Banc of California Sec. Litig.*, 2017 WL 3972456, at *7 (C.D. Cal. (footnote continued)

Defendants also complain that the SAC's allegations "derive completely from" Hindenburg. Mot. 17-18. This is incorrect. While Hindenburg, through its research, concluded that Maison was not be disclosing all related party transactions (¶¶5, 60), the allegations concerning Maison's related party acquisitions of Good Fortune San Gabriel and Good Fortune Monrovia are derived from Plaintiffs' independent investigation and supported by factual documents. ¶¶71-77; Ex. 3 at 1-7.

Third, Defendants assert a truth-on-the-market defense. Mot. 18. Ignoring that Plaintiffs' allegations do not rest on a shared address, Defendants fail to meet their heavy burden in stating that the addresses of Good Fortune San Gabriel and Good Fortune Monrovia were publicly available. *Green*, 2025 WL 1009121, at *7-*8. Although these addresses *may* be accessible, it is unreasonable to task investors with researching each and every company Maison transacts with to determine if they share an address and thus may be a related party. *See In re Amgen Inc. Sec. Litig.*, 544 F. Supp. 2d 1009, 1025 (C.D. Cal. 2008) ("The mere fact that [a meeting agenda] was available to the public… is not enough to shield Defendants from liability."); *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1160 (C.D. Cal. 2008) (rejecting truth-on-the-market defense because the publicly available information was not issued by the defendant company).

Lastly, the SAC adds numerous detailed allegations concerning the materiality of these omissions (¶¶106, 110), addressing the Court's previous concerns. *See Green*, 2025 WL 1009121, at *10-*11. These related party transactions involved the acquisition of Maison's first two supermarkets, the Company's core business (¶¶106(a), 110 (a)), and are half of Maison's four majority-owned supermarkets

Sept. 6, 2017); *QuantumScape*, 580 F. Supp. 3d at 731, 732 (finding article and short seller report that relied on factual assertions and public information, in addition to unidentified employees, sufficiently reliable to support falsity allegations).

16

OPPOSITION TO MOTION TO DISMISS

(¶¶106(b), 110 (b)).[10]  *E.g.*, *Cheung v. Keyuan Petrochemicals, Inc.*, 2012 WL 5834894, at *8 (C.D. Cal. Nov. 1, 2012) (magnitude of related party transactions in proportion to company's operations as a whole supports materiality).  In fact, Defendants indirectly admit to the materiality of these stores and their acquisitions by pointing out that interruptions to the stores would be a key factor affecting Maison's operations, and by disclosing the related party nature of smaller equity acquisitions. ¶¶106(b)-(c), 110(b)-(c).

Defendants also admitted that Maison's related party transactions, all of which were with entities owned or run by Xu and his wife, run a "risk of conflicts of interests our management, and that such transactions may not reflect terms that would be available from unaffiliated third parties."  ¶¶106(d), 110(d).  Additional transactions with parties that are under the common control of, and/or are significantly influenced by, Defendant Xu, are information that a reasonable investor would want to know. *See, e.g.*, *Zagami v. Nat. Health Trends Corp.*, 540 F. Supp. 2d 705, 712 (N.D. Tex. 2008) ("Investors are also likely far more interested in related-party transactions because they may indicate that a conflict has affected whether they are in the best interest of the corporation and its shareholders").

Indeed, the SAC points out that the transactions with Good Fortune San Gabriel and Good Fortune Monrovia likely reflected terms not available to unaffiliated third parties.  ¶¶106(e), 110(e).  Although Maison states that "losses of a partially owned consolidated subsidiary [are to] be allocated to noncontrolling interests even when such allocation might result in a deficit balance[,]" Maison's net losses almost

---

[10] Maison failed to disclose all the details concerning its transactions with Good Fortune San Gabriel and Good Fortune Monrovia, such as the purchase amount, or how much of Maison's revenue is attributed to each supermarket. "Even under the more rigid pleading standard of Federal Rule of Civil Procedure 9, however, the pleader is not required to allege facts that are peculiarly within the opposing party's knowledge." *Nayab v. Cap. One Bank (USA), N.A.*, 942 F.3d 480, 493 (9th Cir. 2019).

quadrupled after attributing net income to the three noncontrolling interests—two of which concern the alleged related party acquisitions at issue here—rather than decreased, as one would expect with an arms'-length basis. *Id.* & n.3. As courts have noted in analyzing materiality of related transactions and in addressing arguments similar to Defendants', whether or not a related party transaction affects a company's financial statements, "disclosure is essential to enable investors to evaluate correctly the information they see" in its financials. *Zagami*, 540 F. Supp. 2d at 711, *see generally*, *id.* at 710-712; *S.E.C. v. China Ne. Petroleum Holdings Ltd.*, 27 F. Supp. 3d 379, 391 (S.D.N.Y. 2014) ("even if these transactions were fewer and of lesser value, what reasonable investor would not wish to know that the money raised by stock sales would be diverted to corporate officers?").

These detailed allegations "suffice to raise a reasonable expectation that discovery will reveal evidence satisfying the materiality requirement, and to allow the court to draw the reasonable inference that the defendant is liable." *Matrixx*, 563 U.S. at 43.

## V. PLAINTIFFS ALLEGE CLAIMS UNDER SECTION 10(B) OF THE EXCHANGE ACT

Plaintiffs bring claims under Section 10(b) of the Exchange Act (15 U.S.C. §78j(b), "Section 10(b)") and Rule10b-5 (17 C.F.R. §240.10b-5, "Rule 10b-5") against Maison, Xu, and Lopez. Section 10(b) "proscribes 'manipulative or deceptive' practices in connection with the purchase or sale of registered securities on a national securities exchange." *In re Genius Brands Int'l, Inc. Sec. Litig.*, 97 F.4th 1171, 1180 (9th Cir. 2024). "Rule 10b-5 of the Exchange Act's implementing regulations is coextensive with Section 10(b)[,]" and "prohibits making 'any untrue statement of a material fact' or omitting material facts 'necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.'" *In re Facebook, Inc. Sec. Litig.*, 87 F.4th 934, 947 (9th Cir. 2023). To state a claims under Section 10(b) and Rule 10b-5(b), a plaintiff must allege: (1) a

material misrepresentation or omission (*i.e.*, "falsity"); (2) scienter; (3) the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation. *Matrixx*, 563 U.S. at 37-38. Defendants challenge falsity, scienter, and loss causation. As to these and all required elements, the SAC is sufficient.[11]

### A. Plaintiffs Allege Material Misrepresentations And Omissions During The Class Period

A complaint adequately alleges falsity when it "specifies each statement alleged to have been misleading, and the reason or reasons why the statement is misleading." *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 701 (9th Cir. 2012). A plaintiff need only allege facts giving rise to a "reasonable inference" that the statement was false or misleading. *In re Atossa Genetics Inc. Sec. Litig.*, 868 F.3d 784, 797 (9th Cir. 2017). A statement is misleading if it would give a reasonable investor the "impression of a state of affairs that differs in a material way from the one that actually exists." *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 691 (9th Cir. 2011). Even "literally true" statements may be misleading due to "their context and manner of presentation." *Miller v. Thane Int'l, Inc.*, 519 F.3d 879, 886 (9th Cir. 2008); *Khoja*, 899 F.3d at 1008-09 ("Even if a statement is not false, it may be misleading if it omits material information."). While not required to disclose every single adverse event about their business to investors, once a defendant chooses to speak on a topic, they are "bound to do so in a manner that [won't] mislead investors, including disclosing adverse information that cuts against the positive information." *Khoja*, 899 F.3d at 1009.

---

[11] Defendants also challenge scheme liability claims. Mot. 28-29. "Claims under Rule 10b5–(a) and (c) are generally referred to as claims for 'scheme liability.'" *In re Galena Biopharma, Inc. Sec. Litig.*, 117 F. Supp. 3d 1145, 1192 (D. Or. 2015). While there is "considerable overlap among the subsections" of Rule 10b-5, *Lorenzo v. Sec. & Exch. Comm'n*, 587 U.S. 71, 80 (2019), "scheme liability claims are distinct from claims under Rule 10b–5(b). *Galena*, *supra id.* Plaintiffs do not advance scheme liability claims in their SAC or this Opposition.

Plaintiffs allege two categories of misleading statements and omissions during the Class Period, and identifies what facts were omitted to make the statements therein not misleading: (1) the pendency of the Zang Action; and (2) the existence of a number of related party transactions and balances. ¶¶116-142. Defendants' Motion does not advance any unique arguments as to falsity for Plaintiffs' Section 10(b) claim and refers the Court to their earlier arguments. Mot. 20-21. For the reasons discussed in Section IV.A, *supra*, these statements are also materially misleading under Section 10(b) and Rule 10b-5(b).

## B.    Plaintiffs Allege A Strong Inference Of Scienter

The PSLRA requires plaintiffs to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. §78u-4(b)(2); *Tellabs*, 551 U.S. at 314. "Scienter can be established by intent, knowledge, or certain levels of recklessness[,]" *i.e.*, "either 'deliberate recklessness' or 'conscious recklessness'—a 'form of intent rather than a greater degree of negligence.'" *VeriFone*, 704 F.3d at 702. A defendant is deliberately reckless if "he had reasonable grounds to believe material facts existed that were misstated or omitted, but nonetheless failed to obtain and disclose such facts although [he] could have done so without extraordinary effort." *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1064 (9th Cir. 2000); *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 390 (9th Cir. 2010) (quoting *Howard*).

"Courts must consider the complaint in its entirety …. The inquiry is whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Tellabs*, 551 U.S. at 322 (emphasis in original). "In making this determination, the court must review all the allegations holistically." *Matrixx*, 563 U.S. at 48; *VeriFone*, 704 F.3d at 698 (commenting that in assessing scienter, "the sum is greater than the parts."). A strong inference of scienter arises if a "reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one

1158739.2

20

OPPOSITION TO MOTION TO DISMISS

could draw from the facts alleged." *Tellabs*, 551 U.S. at 324-26. "The inference that the defendant acted with scienter need not be irrefutable, *i.e.*, of the smoking-gun genre, or even the most plausible of competing inferences" – the inference need only be equally plausible to any non-culpable inference. *Id.* at 324. A "tie goes to the plaintiffs when there are multiple plausible theories at the pleadings stage of litigation." *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 999 n.8 (9th Cir. 2014).

### 1. Plaintiffs Allege Strong Circumstantial Evidence Of Scienter

A plaintiff may establish scienter by alleging facts indicating that the defendants "knew, or should have known" of the falsity of their statements. *See New Mexico. State Inv. Council v. Ernst & Young LLP*, 641 F.3d 1089, 1098 (9th Cir. 2011).

Plaintiffs allege facts sufficient to show that Xu and Lopez knew or were deliberately reckless in not knowing of the pendency of the Zang Action. Maison's Hong Kong Supermarket in Monterey Park was a defendant and key subject of the action, and substantial damages are sought for the causes of action brought against it: $620,000 plus punitive damages, an accounting relating to the $500,000 investment, and a share of profits for the Monterey Park store. ¶¶63-67, 69; Ex. 1 at ¶¶13, 108-116; Ex. 2 (one defendant confessing judgment and stipulating that the Monterey Park location of the Hong Kong Supermarket was the subject of the action).

There can be credible dispute that Xu did not know about the Zang Action: not only was he named as a defendant, but he submitted at least one declaration in the action, displaying his involvement in and awareness of the lawsuit. ¶¶63, 68. In addition, another of Xu's businesses, J&C, is also named a defendant in the Zang Action. ¶¶26, 63; Ex. 1 at ¶3. As for Lopez, she has worked closely with Xu since at least 2014. ¶27. At the time the Zang Action was initiated and through 2023, Lopez served concurrently as CFOs for Maison and J&C. *Id.* These allegations sufficiently raise a strong inference of scienter. *Mulderrig v. Amyris, Inc.*, 492 F. Supp. 3d 999,

1026 (N.D. Cal. 2020) (allegations that defendants "had access to information contradicting their statements" may raise a strong inference of scienter); *Alphabet*, 1 F.4th at 706 ("we may consider a senior executive's role in a company to determine whether there is a cogent and compelling inference that the senior executive knew of the information at issue.").

Plaintiffs also allege numerous facts to show that Xu and Lopez knew or were deliberately reckless in not knowing that Good Fortune San Gabriel and Good Fortune Monrovia were related parties. <u>One</u>, Maison is a controlled by Xu. He holds 93.12% of the Company's voting rights (¶¶52-53) and holds many roles at Maison (¶26). Maison admits that Xu has the ability to control the "overall management and direction of our company." ¶53. <u>Two</u>, Maison regularly entered into other large transactions with Xu, his wife, and entities owned by these two. ¶¶54-56.

<u>Three</u>, Xu frequently entwined his various business ventures. For example, Xu: used the addresses of J&C and Maison stores in registration documents for his other ventures; displayed his control of these entities, even when that entity was, in name, owned and run by others; and, at least once, Maison stated Xu was the owner of an entity when other individuals were listed in the registration documents for that entity. ¶¶153-162. Lopez has also been listed as an officer in the business filings of at least one of Xu's entities. *See, e.g.*, ¶159. While it may be true that "individuals routinely create corporate entities to serve an array of business interests" (Mot. 23), here, what remains constant in each of the entities discussed in the SAC is the apparent display of Xu's control and/or significant influence over the entities.[12]

---

[12] Defendants also complain that Plaintiffs may not consider allegations from a complaint. Mot 23. This is incorrect. "[A] party can rely on allegations made in a separate complaint when they perform an adequate independent investigation." *SEB Inv. Mgmt. AB v. Wells Fargo & Co.*, 742 F. Supp. 3d 1003, 1021 (N.D. Cal. 2024). "The party need not corroborate every fact, but must provide an independent basis that goes towards corroborating the allegations such that they are reasonable." *Id.* Plaintiffs have done so here. *See* ¶¶158-159 & Ex. 3 at 16-21 (business entity records (footnote continued)

1158739.2

22

OPPOSITION TO MOTION TO DISMISS

Four, at the time of the transactions with Good Fortune San Gabriel and Good Fortune Monrovia, Xu was the chief operating officer of the general partners of Good Fortune San Gabriel and Good Fortune Monrovia.  ¶¶72-77; Ex. 3 at 1-7.

Five, Maison admits it lacks "timely related party transaction monitoring" and does not "keep a list of related party transactions on a regular basis."  ¶¶149.  This is despite Xu's penchant for entering into transactions with his own entities and with entities having suspiciously close ties to Xu.  Xu, Lopez, and Maison thus knew that there was a substantial risk of failing to identify related party transactions.  *S. Ferry LP #2 v. Killinger*, 687 F. Supp. 2d 1248, 1258 (W.D. Wash. 2009) ("notice of a risk is often enough" for deliberate recklessness) (citing and quoting *Makor Issues & Rts., Ltd. v. Tellabs, Inc.*, 513 F.3d 702, 704 (7th Cir. 2008) ("When the facts known to a person place him on notice of a risk, he cannot ignore the facts and plead ignorance of the risk.")).

Six, at the time Maison's former auditor, Friedman LLP, was engaged by the Company to audit its financials, the SEC charged Friedman with "improper professional conduct" in the audits of two different companies for its failure to properly detect and audit the companies' related party transactions. ¶¶150-152.  Thus Xu, Lopez, and Maison were put on notice that there was a high likelihood that Maison's auditor would not be able to independently detect related party transactions—and, as such, should have caused Xu, Lopez, and Maison to put additional checks/balances in place.  Instead, they admitted that Maison has utterly failed to do so.  ¶149.  Defendants respond that Maison dismissed Friedman nine months prior to the IPO.  Mot. 23.  Although Friedman may not have been Maison's auditor during the Class Period, Friedman *was* the auditor for certain Class Period statements including the material omissions of the related party transactions with Good Fortune San Gabriel and Good Fortune Monrovia from the list of related party

confirm allegations that GYL was a shell company created and run by Xu (and later Lopez) despite GYL allegedly being wholly owned by another individual.

1158739.2

23

OPPOSITION TO MOTION TO DISMISS

transactions and balances for the period ended April 30, 2022.  ¶¶125, 139.  Also, defendants did not dismiss Friedman for their failures relating to the audits of related parties but rather stated there were no disagreements with Friedman.  ¶152.

Courts in this district, when faced with similar allegations, have explained that "it would be absurd to suggest that [the defendant] was not aware of [the related party transactions]."  *Cheung*, 2012 WL 5834894, at *9 (inferring knowledge of related party transactions with CEO and Chairman's own companies); *see also, e.g.*, *In re LendingClub Sec. Litig.*, 254 F. Supp. 3d 1107, 1122 (N.D. Cal. 2017) ("[n]or can CEO [defendant] plausibly deny that, on these allegations, he knew about his relationship with [alleged undisclosed related party] and his company's relationship and the misleading nature of failing to disclose that relationship"); *Brown*, 875 F. Supp. 2d at 1124 ("It is natural to conclude that an executive is aware of the business dealings of his own son, particularly when those dealings were with the executive's own company."); *Snellink*, 870 F. Supp. 2d at 941 ("the omission of Gulf's related parties cannot be unintentional—it would be absurd to suggest that [Gulf's Chairman] did not know about the operations of his various companies."); *A-Power*, 2012 WL 1983341, at *8 ("cogent and compelling" inference of scienter pled when CEO and Chairman was "alleged to have had direct ties to the alleged related parties.").[13]

### 2.   Scienter Can be Inferred When Defendants Knew Of Their Disclosure Obligations

Defendants were well aware of their disclosure obligations.  In discussing its commitments and contingencies, defendants explained that Maison is periodically involved in various legal proceedings "incidental to the conduct of the business[,]" going on to describe other matters.  One such matter was pending litigation against Maison's El Monte store, in which it was a co-defendant in a complaint alleging

---

[13] Defendants complain that Plaintiffs' allegations are general and unspecific as to Xu and Lopez.  Mot. 23-24.  As discussed above, the SAC pleads numerous specific allegations that raise a strong inference of scienter as to Xu and Lopez.

violations of health and safety regulations, and another settled matter against Maison San Gabriel concerning employment issues. ¶¶117, 131. Discussing these others matters throughout the Class Period – despite one case having already settled – displays the Defendants' awareness of needing to disclose litigation concerning Maison's stores.

Likewise, Maison flagged other related party transactions with companies owned by Xu or his wife (*see* ¶¶120-121, 124, 134-135, 138), displaying awareness of defendants' disclosure obligations. *Montage*, 78 F. Supp. 3d at 1226; *Snellink*, 870 F. Supp. 2d at 941 ("The omission of related party transactions is not a trifle. Common sense dictates that this is material information and indeed, Regulation S–K devotes an entire section and notes that it is one of the core disclosures that companies have to report"). The "simplicity and obviousness" of the SEC regulations and GAAP concerning related party transactions further supports an inference of scienter. *Henning v. Orient Paper, Inc.*, 2011 WL 2909322, at *6 (C.D. Cal. July 20, 2011).

### 3. Plaintiffs Have Alleged Maison's Scienter

Plaintiffs have also sufficiently alleged Maison's scienter. Although a corporation does not have a "mental state," for purposes of determining scienter in the securities litigation context, "the scienter of the senior controlling officers of a corporation may be attributed to the corporation itself to establish liability as a primary violator of § 10(b) and Rule 10b-5 when those senior officials were acting within the scope of their apparent authority." *Alphabet*, 1 F.4th at 705; *see also, e.g.*, *Cho v. UCBH Holdings, Inc.*, 890 F. Supp. 2d 1190, 1205 (N.D. Cal. 2012) ("In light of the imputation of [officer's] scienter through respondeat superior, the Court finds that Plaintiffs have sufficiently alleged a primary violation of Section 10(b) and Rule 10b-5 by the Bank."); *Hollinger v. Titan Cap. Corp.*, 914 F.2d 1564, 1576-78 (9th Cir. 1990 as amended) (en banc) (affirming that principles of corporate agency law and respondeat superior apply in §10(b) cases).

### 4. Defendants Fail To Raise A *More* Cogent And Compelling Inference Of Non-Culpability

Defendants fail to offer any non-culpable inference that can be drawn from Plaintiffs' allegations, let alone any non-culpable inference that is *more compelling*. Rather, Defendants argue that Plaintiffs' allegations are generalized and conclusory (Mot. 24, 25), ignoring the numerous specific allegations, as detailed above, that support a strong inference of scienter.  Recognizing the weakness in their scienter challenge, Defendants focus on a lack of motive, and in particular, a lack of insider stock sales. Mot. 24, 25-26.[14]  But both the Supreme Court and the Ninth Circuit have instructed that "the absence of a motive allegation is not fatal." *Tellabs*, 551 U.S. at 325; *Matrixx*, 563 U.S. at 48; *Alphabet*, 1 F.4th at 707 ("allegations of suspicious stock sales or information from confidential witnesses are not needed where, as here, other allegations in the complaint raise a strong inference of scienter.").  Xu and Lopez were also subject to a lock-up provision and thus could not even sell their Maison stock.  ¶47, n.1.  As one court noted, when lock up provisions exist, "[t]he lack of trading and lock-up provisions neither help[s] nor harms[s] defendants." *In re LDK Solar Sec. Litig.*, 584 F. Supp. 2d 1230, 1255 (N.D. Cal. 2008) (when plaintiffs do not rely on insider trading to establish scienter, "the lack of stock sales by defendants [does] not negate the inference of scienter").

In sum, when viewing the allegations holistically, and taken collectively, the SAC gives rise to a strong inference of scienter.

### C. Plaintiffs Plead Loss Causation

To plead loss causation, a plaintiff need only "plausibly allege a causal connection between the defendant's misstatements and the plaintiff's economic loss[.]" *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 794 (9th Cir. 2020).  Loss

---

[14] Although Defendants cite *Webb v. Solarcity Corp.*, 884 F.3d 844 (9th Cir. 2018) and *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869 (9th Cir. 2012), those cases merely hold that a lack of stock sales may be relevant – not dispositive.

causation does not require a showing that a misrepresentation was "the sole reason for the decline in value of the securities," only that it was one "substantial cause." *Gilead*, 536 F.3d at 1055.

"To allege loss causation, the plaintiff must plead that 'the truth became known.'" *Genius*, 97 F.4th at 1184 (quoting *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005)). The Ninth Circuit advises courts to take a "flexible approach in evaluating whether an event or occurrence revealed fraud to the market," so long as it "reveals new facts that, taken as true, render **some** aspect of the defendant's prior statement false or misleading," *i.e.*, the disclosure need not "mirror" the misrepresentations and omissions and it may come from any source. *Genius*, 97 F.4th at 1184; *see also BofI*, 977 F.3d at 790. Because of loss causation's fact-intensive nature, "it is normally inappropriate to rule on loss causation at the pleading stage." *Gilead*, 536 F.3d at 1057.

Plaintiffs have plausibly pled loss causation if they "provide enough factual content to give the defendant some indication of the loss and the causal connection that the plaintiff has in mind." *BofI*, 977 F.3d at 794. At this stage, pleading loss causation should not be "burdensome" – so long as the allegations give defendants "notice of plaintiffs' loss causation theory" and provide the court "some assurance that the theory has a basis in fact[,]" it will suffice. *Id.*

Maison's stock price fell 83.6% on December 15, 2023, when Hindenburg posted the results of its investigation into Maison, revealing that Xu and one of Maison's grocery stores were the subjects of, and defendants in, pending litigation and that Maison was not disclosing related party transactions. That same day, Maison's share price fell 83.6%. ¶¶57-62, 143-147. At the pleading stage, this is sufficient. *Genius*, 97 F.4th at 1186.

Defendants claim this is insufficient with little explanation, citing *Loos v. Immersion Corp.*, 762 F.3d 880 (9th Cir. 2014). Mot. 27-28. *Loos* is factually inapt: there, the Ninth Circuit examined whether a company's announcement of an internal

investigation could satisfy the loss causation element, holding that "the announcement of an investigation, standing alone," was insufficient because it "does not 'reveal' fraudulent practices to the market," and in such situations, a decline in share price "can only be attributed to market speculation as to whether fraud has occurred." *Id.* at 883. Importantly, *Loos* reiterated that "a securities fraud plaintiff is not required to allege an outright admission of fraud to survive a motion to dismiss." *Id.* at 888-89.

The Ninth Circuit recently held that research conducted by Hindenburg – and premised on public information but made digestible by Hindenburg – was sufficient to allege loss causation. *Genius*, 97 F.4th at 1186-87. And Hindenburg's research here was not mere "speculation," it uncovered the pendency of the Zang Action and facts supporting undisclosed related party relationships, it came from "webpage[s] tucked deep in a corner of the internet" which Hindenburg "synthesized [] for the marketplace," and it revealed the truth about prior misstatements and omissions. *Genius*, 97 F.4th at 1186-87. This is sufficient to plead loss causation. *See id.* (loss causation adequately pleaded based on Hindenburg's research and analysis); *see also, e.g.*, *Garcia v. J2 Glob., Inc.*, 2021 WL 1558331, at *22 (C.D. Cal. Mar. 5, 2021) (same). To the extent any "skepticism" about the loss causation allegations remains, it "is best reserved for later stages of the proceedings." *Gilead*, 536 F.3d at 1055.

## VI.   PLAINTIFFS ALLEGE CONTROL PERSON LIABILITY

Plaintiffs also bring control person liability claims against the Individual Defendants under Section 15 of the Securities Act (15 U.S.C. §77*o*(a), "Section 15") and against Defendants Xu and Lopez under Section 20(a) of the Exchange Act (15 U.S.C. §78t(a), "Section 20(a)"), which provide for joint and several liability with the controlled person/company who has violated the securities laws. SAC at 70, 75. Control person liability under both Sections 15 and 20(a) requires: (i) a primary violation of the securities laws; and (ii) "that defendants exercised actual power or control over a primary violator." *In re Charles Schwab Corp. Sec. Litig.*, 257 F.R.D. 534, 550 & n.4 (N.D. Cal. 2009) (explaining that although "Section 15 and Section

1158739.2

28

OPPOSITION TO MOTION TO DISMISS

20(a) are separate bases of liability, the Ninth Circuit has held that the analysis is identical"); *In re CytRx Corp. Sec. Litig.*, 2015 WL 5031232, at *17-18 (C.D. Cal. July 13, 2015) (analyzing Sections 15 and 20(a) claims together).[15]

The SAC adequately alleges violations of Sections 11 and Section 10(b), and so Sections 15 and 20(a) may not be dismissed for lack of a primary violation. *Crews v. Rivian Auto., Inc.*, 2023 WL 4361098, at *14, *17 (C.D. Cal. July 3, 2023).

Defendants contend that the SAC's allegations are conclusory as to control. Mot. 18-19, 29. In support of their argument as to Section 15, Defendants solely cite *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046 (9th Cir. 2014). Mot. 19. But *NVIDIA* examines whether scienter had been sufficiently alleged for a Section 10(b) claim. *Id.* at 1048. Nowhere in the decision does the Ninth Circuit examine whether a control claim was adequately pleaded under Section 15 – or under Section 20(a).

Courts have explained that "[i]n general, the determination of who is a controlling person is an intensely factual question." *UCBH Holdings*, 890 F. Supp. 2d at 1205; *accord Howard*, 228 F.3d at 1065. "Courts have found general allegations concerning an individual's title and responsibilities to be sufficient to establish control at the motion to dismiss stage[,]" and "although a person's being an officer or director does not create any *presumption* of control, it is a sort of red light." *UCBH Holdings*, 890 F. Supp. 2d at 1205 (citing cases).

Allegations that the Individual Defendants are executive officers and/or directors of Maison's Board and signed or authorized the signing of the IPO Registration Statement and/or the Selling Shareholder Registration Statement are sufficient. ¶¶26-33, 95, 129. "Courts have presumed that directors exercise actual authority and control, at least over the contents of and/or release of the statements they sign." *CytRx*, 2015 WL 5031232, at *18 (citing cases); *Amgen*, 544 F. Supp. 2d

---

[15] The notice-pleading standard of Fed. R. Civ. P. 8(a) applies to Plaintiffs' Section 15 and 20(a) claims. *See, e.g., Washington Mut.*, 259 F.R.D. at 504 (Section 15); *Countrywide*, 588 F. Supp. 2d at 1201 (Section 20(a)).

at 1037 ("persuasive authority indicates an officer or director who has signed financial statements containing materially false or misleading statements qualifies as a control person"); *UCBH Holdings*, 890 F. Supp. 2d at 1208 (similar and citing cases); *see also United Ass'n Nat'l Pension Fund v. Carvana Co.*, 759 F. Supp. 3d 926, 991 (D. Ariz. 2024) *reconsideration denied*, 2025 WL 371717 (D. Ariz. Feb. 3, 2025) (in denying dismissal of Section 15 claims, the court noted that "'[t]raditional indicia' of a controlling person of a company include '… ownership of its stock, and a seat on its Board.'").

As for Xu, the SAC alleges that Xu controlled Maison, owned approximately 83.6% of Maison's outstanding Class A shares (¶52), had control of over 93% of the voting rights of the Company (¶53), and has the "ability to control the outcome of matter submitted to our stockholders for approval, … as well as the overall management of our company" (*id.*). Xu's control was plainly evident in the large number of transactions between Maison and Xu, his wife, and entities owned by them. *E.g.*, ¶¶54-56. The Ninth Circuit has found similar allegations sufficient to meet a *prima facie* showing that a defendant is a controlling person. *No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 945-46 (9th Cir. 2003) (control liability allegations that defendants were the largest stockholders of defendant company, had 57.4% of total voting power, and sat on board of directors, *inter alia*, were sufficient).

## VII. CONCLUSION

Defendants' motion should be denied. If the Court grants any portion of the motion, Plaintiffs request leave to amend. *See Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). While Plaintiffs believe the SAC more than sufficiently states claims, they have not yet had the benefit of the Court's view on their Section 15, Section 10(b), and Section 20(a) claims.

DATED:  July 21, 2025          **GLANCY PRONGAY & MURRAY LLP**


By:  */s/ Leanne H. Solish*
Robert V. Prongay
Leanne H. Solish
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email:  rprongay@glancylaw.com
              lsolish@glancylaw.com

*Counsel for Lead Plaintiffs and Lead Counsel*

**THE LAW OFFICES OF FRANK R. CRUZ**
Frank R. Cruz
2121 Avenue of the Stars, Suite 800
Century City, CA 90067
Telephone: (310) 914-5007

*Additional Counsel for Lead Plaintiffs*

## PROOF OF SERVICE

I hereby certify that on this 21st day of July, 2025, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/ *Leanne H. Solish*
Leanne H. Solish

1158739.2                OPPOSITION TO MOTION TO DISMISS