1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICK GREEN and EVGENIA NIKITINA, Individually and On Behalf Of All Others Similarly Situated,<br><br>               Plaintiffs,<br><br>     v.<br><br>MAISON SOLUTIONS INC., JOHN XU, ALEXANDRIA M. LOPEZ, TAO HAN, BIN WANG, MARK WILLIS, XIAOXIA ZHANG, JOSEPH STONE CAPITAL, LLC, and AC SUNSHINE SECURITIES LLC,<br><br>               Defendants. | Case No. 2:24-cv-00063-SPG-KS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS [ECF NO. 55]** |

Before the Court is the Motion to Dismiss (ECF No. 55 ("Motion")) filed by Defendants Maison Solutions Inc., John Xu, Alexandria M. Lopez, Tao Han, Bin Wang, Mark Willis, Xiaoxia Zhang, Joseph Stone Capital, LLC, and AC Sunshine Securities LLC. Lead Plaintiffs Migwang Jeong, Yun Jung Kim, Yousub Jun, Lee Sun-Bok, and Hyeonnam Gang ("Plaintiffs") timely opposed Defendants' Motion (ECF No. 57 ("Opp.")), and Defendants replied (ECF No. 59 ("Reply")). The Court has read and considered the parties' submissions and concluded that the Motion is suitable for decision without oral

argument.  *See* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.  Having considered the parties' submissions, the relevant law, and the record in this case, the Court GRANTS, in part, and DENIES, in part, the Motion.

## I.    BACKGROUND

Maison Solutions Inc. ("Maison") is a Los Angeles-based grocery retailer, run by John Xu as Maison's Chief Executive Officer ("CEO"), President, and Board Chair.  (ECF No. 52 ("SAC" OR "Complaint") ¶ 2).  In October 2023, Maison listed as a public company.  (*Id.* ¶ 3).  At the time of Maison's Initial Public Offering ("IPO"), Maison owned equity in six grocery stores operating under the brand names "HK Good Fortune Supermarket" or "Hong Kong Supermarket," including a 100% equity interest in a Hong Kong Supermarket location in Monterey Park, California.  (*Id.* ¶¶ 2, 42).  In the IPO, Maison sold 2.5 million shares of Class A common stock at a price of $4 per share.  (*Id.* ¶ 3).  Shortly after the IPO, in November 2023, Maison announced a private placement ("Private Placement") of 1.19 million shares of Class A common stock at a price of $4.20 per share.  (*Id.* ¶ 49).  Maison's stock price increased following the IPO and Private Placement.  (*Id.* ¶ 4).  By December 14, 2023, Maison's Class A common stock closed at an all-time high of $15.21 per share.  (*Id.*).  The next day, short-seller Hindenburg Research ("Hindenburg") made a series of posts on X, formerly known as Twitter, detailing "multiple red flags" concerning Maison's business.  (*Id.* ¶ 5).  By the end of the day, Maison's stock price lost more than 80% of its value, closing at $2.50 per share.  (*Id.* ¶ 6).

In its X posts, Hindenburg detailed a pending lawsuit, *Zang v. Xu, et al.*, Case No. 20GDC00485 ("*Zang* Litigation"), filed in Los Angeles County Superior Court in 2020.  *See* (*id.* ¶¶ 5, 63).[1]  In that action, the plaintiff, Yanbin Zang, alleges that, in 2018, Xu and

---

[1] *See* (ECF No. 52-1, Ex. 1) (incorporating by reference the second amended complaint in the *Zang* Litigation).  At the pleading stage, the Court may consider extrinsic documents, such as the complaint in *Zang*, when such documents are extensively referenced and thereby incorporated into the Plaintiffs' operative complaint.  *See Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6)

others fraudulently induced him to "invest" $500,000 in the Hong Kong Supermarket in Monterey Park by representing that this investment would allow him to legally obtain a green card. *See* (ECF No. 52-1, Ex. 1, ¶¶ 22–25). According to Zang, Xu used Hong Kong Supermarket "as a front for a scheme of immigration fraud." (*Id.* ¶ 40). Zang further alleges that Xu listed Zang and others as Hong Kong Supermarket "executives," even though these individuals "perform[ed] no work whatsoever." (*Id.*). As a remedy, Zang seeks accounting and a share of profits from Hong Kong and one other named defendant. (ECF No. 52-1, Ex. 1, ¶¶ 110–16). In March 2025, one of the defendants in the *Zang* Litigation submitted a "Confession of Judgment," and "certain other defendants" have agreed to settle Zang's claims. *See* (SAC ¶¶ 69–70).

Hindenburg also wrote that it believed "Maison was not disclosing related party transactions." (SAC ¶ 60). The Complaint alleges that Maison failed to disclose two specific related party transactions. In the Prospectus and Form S-1 Registration Statement filed in connection with the IPO (together, the "IPO Registration Statement"), as well as the Prospectus and Form S-1 Registration Statement filed in connection with the Private Placement (together, the "Private Placement Registration Statement"), Maison disclosed that it had acquired majority equity interests in Good Fortune Supermarket of San Gabriel, LP ("Good Fortune San Gabriel") and Good Fortune Supermarket of Monrovia, LP ("Good Fortune Monrovia" and, together with Good Fortune San Gabriel, the "Good Fortune Supermarkets"). (*Id.* ¶¶ 45–46, 49–50, 72, 75). The Complaint infers that "Xu was affiliated with and thus would have had common control and/or a significant influence" over both Maison and the Good Fortune Supermarkets, as Xu (a) served as Maison's CEO, President, and Board Chair; and (b) served as the agent for service of process for the Good Fortune Supermarkets, signed the Good Fortune Supermarkets' initial filings, and served as Chief Operating Officer ("COO") at the general partner to the Good Fortune Supermarkets. *See* (*id.* ¶¶ 2, 71, 73–74, 76–77).

---

motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.").

Plaintiffs allege that Maison's failure to disclose the *Zang* Litigation and these related party transactions in the IPO Registration Statement and the Private Placement Registration Statement (together, the "Registration Statements") rendered Maison's disclosures in these documents materially misleading. *See* (SAC ¶¶ 46, 115–42). Specifically, Plaintiffs allege that both omissions were misleading in light of the Registration Statements' disclosures concerning active litigation and historical related party transactions. *See* (*id.* ¶¶ 115–42).

## II.    LEGAL STANDARD

A complaint that fails to meet the applicable pleading standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). "Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). When ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The Court is "not required to accept as true allegations that contradict exhibits attached to the Complaint," allegations that contradict "matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Seven Arts Filmed Ent., Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013) (internal quotation marks and citation omitted). Dismissal is appropriate if it appears the plaintiff can prove no set of facts in support of its claims that would entitle it to relief. *City of Almaty v. Khrapunov*, 956 F.3d 1129, 1131 (9th Cir. 2020).

Where a private plaintiff alleges securities fraud, the complaint "must [also] satisfy the dual pleading [requirements] of Federal Rule of Civil Procedure 9(b) and the [Private Securities Litigation Reform Act ("PSLRA")]." *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 701 (9th Cir. 2012). Under Rule 9(b), a complaint "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "To

comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 765 (9th Cir. 2023) (internal quotation marks and citation omitted).

The PSLRA, in turn, "imposes formidable pleading requirements to properly state a claim and avoid dismissal under Rule 12(b)(6)." *Id.* (internal quotation marks and citation omitted). It requires that the complaint "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, . . . all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1). For each alleged misstatement or omission, the complaint must also "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* § 78u–4(b)(2)(A). A plaintiff also bears the burden of proving that a defendant's misrepresentations "caused the loss for which the plaintiff seeks to recover." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345–46 (2005) (internal quotation marks omitted) (quoting 15 U.S.C. § 78u-4(b)(4)).

### III.   DISCUSSION

The "Securities Act and the Exchange Act work together to prohibit the use of false or misleading statements in connection with the sale of securities." *In re Cloudera, Inc.*, 121 F.4th 1180, 1186 (9th Cir. 2024) (citing *Slack Techs., LLC v. Pirani*, 598 U.S. 759, 762–63 (2023)). The Securities Act focuses "on new offerings, imposing strict liability on issuing companies when their registration statements contain material misstatements or misleading omissions." *Id.* (internal quotation marks and citation omitted). The Exchange Act "[a]ppl[ies] more broadly" to "prohibit material misrepresentations or omissions in connection with the sale of any security . . . but only when the material misleading statement or omission was made with scienter, *i.e.*, with intent to deceive, manipulate, or defraud." *Id.* (internal quotation marks and citation omitted).

Section 11 of the Securities Act confers a private right of action to security purchasers when the security's issuer published a registration statement that "contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading."  15 U.S.C. § 77k(a). To prevail on a Section 11 claim, a plaintiff must prove that: "(1) the registration statement contained an omission or misrepresentation, and (2) [] the omission or misrepresentation was material, that is, it would have misled a reasonable investor about the nature of his or her investment." *In re Daou Sys., Inc.*, 411 F.3d 1006, 1027 (9th Cir. 2005), *abrogated on other grounds by Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27 (2011) (internal quotation marks and citation omitted).  Purchasers may assert this cause of action against "an issuer or designated individuals (directors, partners, underwriters, and so forth)." *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 179 (2015).  Unlike Section 10(b), "[n]o scienter is required for liability under § 11; defendants will be liable for innocent or negligent material misstatements or omissions." *In re Daou Sys.*, 411 F.3d at 1027.

Section 10(b) of the Exchange Act declares it unlawful to "use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange Commission ('SEC')] may prescribe as necessary."  15 U.S.C. § 78j(b).  SEC Rule 10b–5, in turn, implements Section 10(b) by making it unlawful to make any untrue statement of material fact or to omit a material fact necessary to make the statements made not misleading.  17 C.F.R. § 240.10b–5.  The Supreme Court has "implied a private cause of action from the text and purpose of § 10(b)." *Matrixx*, 563 U.S. at 37.  A plaintiff asserting a claim under Section 10(b) or Rule 10b–5 (collectively, "Section 10(b)") must adequately allege the six following elements: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission;

(5) economic loss; and (6) loss causation." *See Stoneridge Inv. Partners, LLC v. Scientific–Atlanta, Inc.*, 552 U.S. 148, 157 (2008).

Finally, Section 15 of the Securities Act and Section 20(a) of the Exchange Act extend liability to those who wield control over the primary violator. *See* 15 U.S.C. §§ 77o(a), 78t(a). To establish a cause of action under these provisions, a plaintiff must first prove a primary violation of the underlying federal securities laws and then show that the defendant exercised actual power over the primary violator. *See In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1052 (9th Cir. 2014).

Against this legal backdrop, Plaintiffs assert: (1) a Section 11 claim against all Defendants, *see* (SAC ¶¶ 174–85); (2) a Section 15 control liability claim against John Xu, Alexandria Lopez, Tao Han, Bin Wang, Mark Willis, and Xiaoxia Zhang (together, the "Individual Defendants"), *see* (*id.* ¶¶ 186–94); (3) a Section 10(b) claim against Maison, Xu, and Lopez, *see* (*id.* ¶¶ 195–205); and a Section 20 control liability claim against Xu and Lopez, *see* (*id.* ¶¶ 206–10). Defendants move to dismiss Plaintiffs' SAC in its entirety, arguing that Plaintiffs fail to plead an actionable omission under either Section 10(b) or Section 11, fail to plead scienter and loss causation for the Section 10(b) claim, and fail to allege how the Individual Defendants exercised control over any primary violator.

## A.    The Section 11 Claim

Defendants argue that the Court must dismiss Plaintiffs' Section 11 claim because the Complaint fails to allege that Maison's omissions of the *Zang* Litigation and related party transactions involving the Good Fortune Supermarkets were actionable. *See* (Motion at 21–28). Because the Complaint alleges a unified course of fraudulent conduct, the Court will assess Plaintiffs' Section 11 claim under Rule 9(b)'s heightened pleading standard. *See Green v. Maison Sols. Inc.*, No. 2:24-CV-00063-SPG-KS, 2025 WL 1009121, at *5 (C.D. Cal. Mar. 31, 2025) ("*Maison I*"). As such, the Complaint "must set forth what is

1    false or misleading about a statement, and why it is false." *Rubke v. Capitol Bancorp Ltd*,

2    551 F.3d 1156, 1161 (9th Cir. 2009) (internal quotation marks and citation omitted).[2]

3                    1.    *Zang* Litigation

4         "[I]n addition to proscribing lies and half-truths," Section 11 "creates liability for

5    failure to speak on a subject at all." *Macquarie Infrastructure Corp. v. Moab Partners*,

6    *L.P.*, 601 U.S. 257, 264 (2024).  Item 103 of SEC Regulation S-K ("Item 103") imposes

7    an affirmative duty on public companies to disclose in their registration statement "any

8    material pending legal proceedings, other than ordinary routine litigation incidental to the

9    business, to which the registrant or any of its subsidiaries is a party or of which any of their

10   property is the subject."  17 C.F.R. § 229.103(a); *see also* 1 Sec. Law Handbook § 6:23.

11   Therefore, "any omission of facts 'required to be stated' under Item [103] will produce

12   liability under Section 11." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1296 (9th Cir.

13   1998).  Defendants argue that Maison was not required to disclose the *Zang* Litigation for

14   two reasons.  (Motion at 23).

15         First, Defendants argue that Maison was not required to disclose the *Zang* Litigation

16   because "Maison is not a named defendant" in that action.  (Motion at 23).  In other words,

17   Maison argues that Item 103 does not apply because it does not involve litigation "to which

18   the registrant or any of its subsidiaries is a party or of which any of their property is the

19   subject."  17 C.F.R. § 229.103(a).  However, the Court has already rejected this argument.

20   *See Maison I*, 2025 WL 1009121, at *6 (rejecting the argument that Defendants "had no

21   affirmative duty to disclose the *Zang* lawsuit, because, according to Defendants, the *Zang*

22   lawsuit is in no way related to Maison or its property") (internal quotation marks and

23   citation omitted).  Zang named "Hong Kong Supermarket" as a defendant, specifying that

24   he is referring to the "Hong Kong Supermarket in Monterey Park." (ECF No. 52-1, Ex. 1,

25   _____

26   [2] As the Court previously noted, Plaintiffs need not plead with particularity their Section
     11 claim insofar as it has been brought against Defendants Joseph Stone and AC Sunshine
27   Securities, LLC, who served as underwriters for Maison's IPO and who are not alleged to
     have engaged in any fraudulent conduct.  *Maison I*, 2025 WL 1009121, at *5 n.4.
28

-8-

¶¶ 13, 22). As the Court previously noted, it is of no moment that Zang named Hong Kong Supermarket "as an entity of unknown corporate status." *Maison I*, 2025 WL 1009121, at *6 n.5; *see also* (Motion at 22) (raising the same argument). Plaintiffs allege that, at the time of the IPO, Maison owned "a 100% equity interest" in the Hong Kong Supermarket in Monterey Park; one of four supermarkets in which Maison owned a majority interest. (SAC ¶¶ 41–42). Based on the facts alleged, it is plausible that either Maison's subsidiary is a party to the *Zang* Litigation, or its property is the subject of the *Zang* Litigation. *See* 17 C.F.R. § 229.103(a).

Next, Defendants argue that Maison was not required to disclose the *Zang* Litigation because the litigation would not have been material to investors. *See* (Motion at 23).[3] The materiality inquiry is "fact-specific," *Matrixx*, 563 U.S. at 43 (internal quotation marks and citation omitted), and therefore, "requires delicate assessments of the inferences a reasonable shareholder would draw from a given set of facts and the significance of those inferences to him," *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 700 (9th Cir. 2021) (internal quotation marks and citation omitted). The Ninth Circuit has emphasized that such fact-intensive assessments "are peculiarly ones for the trier of fact." *Alphabet,* 1 F.4th at 700. As such, dismissal premised on "materiality as a matter of law is generally appropriate only if the adequacy of the disclosure or the materiality of the statement is so obvious that reasonable minds could not differ." *Id.* (internal quotation marks omitted).

Based on the facts alleged in the Second Amended Complaint, the Court declines to conclude at this stage of the proceedings that disclosure of the *Zang* Litigation would have been immaterial to investors. Plaintiffs allege that "Maison's Monterey Park supermarket

---

[3] Item 103 requires a registrant to disclose all "material litigation" but includes exceptions for proceedings that (1) "involve negligence or other claims or actions if the business ordinarily results in such claims or actions"; or (2) "involve primarily a claim for damages if the amount involved, exclusive of interest and costs, does not exceed 10 percent of the current assets of the registrant and its subsidiaries on a consolidated basis." 17 C.F.R. § 229.103(b). Because neither party has addressed whether the *Zang* Litigation falls within either exception, the Court assumes for purposes of this Motion that it does not.

and certain of Defendant Xu's actions relating to Maison's supermarkets . . . are key subjects of the Zang action." (SAC ¶ 99(a)). Indeed, Zang accuses Xu of operating Maison's Monterey Park store "as a front for a scheme of immigration fraud" and alleges that, as part of this "scheme," various "executives" at the store "perform no work whatsoever." *See* (ECF No. 52-1, Ex. 1, ¶ 40). Plaintiffs also claim that any recovery in the *Zang* Litigation could imperil Maison's business, as Zang seeks accounting and a share of the profits on the $500,000 he contributed to the Hong Kong Supermarket in Monterey Park. *See* (SAC ¶ 99(b)).[4] Plaintiffs allege that any recovery would be material to investors, since Maison only reported $1.61 million in cash on hand at the time of the IPO, with a working capital deficit of $1.44 million and a net loss of $104,939. *See* (SAC ¶ 99(d)).

The Court does not conclude, as a matter of law, that investors would consider the *Zang* Litigation to be immaterial, given the market reaction following Hindenburg's posts on X, the specific allegation that Xu engaged in fraudulent conduct involving Maison's business, the fact that Maison was operating at a net loss at the time of the IPO, and the fact that an award of $500,000 in accounting would amount to more than 30% of Maison's cash on hand at the time of the IPO. *See, e.g.*, *Alphabet*, 1 F.4th at 703 (considering market reaction following disclosure in assessing materiality); *In re Snap Inc. Sec. Litig.*, No. 217CV03679SVWAGR, 2018 WL 2972528, at *6 (C.D. Cal. June 7, 2018) (lawsuit material where plaintiff sought significant damages and company was losing money).

---

[4] Plaintiffs also allege that Zang seeks "damages of $620,000 plus punitive damages" against Hong Kong Supermarket. *See* (SAC ¶ 67). However, Zang only seeks these damages for claims against other defendants. *See* (ECF No. 52-1, Ex. 1, at 29–30 (seeking $620,000 in damages under the complaint's first through fourth causes of action)). While Zang has named Hong Kong and two other defendants in an additional claim under California's Unfair Competition Law (the complaint's fifth cause of action), he has not requested any relief under this count. *Compare* (*id.* ¶¶ 108–11) *with* (*id.* at 28–29).

1 | 
2 | 
3 | 

### 2. Related Party Transactions

Federal securities regulations also require companies to disclose certain related party transactions in their registration statements. Specifically, Item 404 of SEC Regulation S-K ("Item 404") requires a registrant to describe transactions that involve: (1) an amount exceeding $120,000, and (2) any related person who has a direct or indirect material interest. *See* 17 C.F.R. § 229.404(a). A "related person" includes any director or executive officer of the registrant or any immediate family member of such a director or officer. *Id.*

Registrants must also disclose related party transactions in order to comply with generally accepted accounting principles ("GAAP"). Regulation S-X states that financial statements "not prepared in accordance with [GAAP] will be presumed to be misleading or inaccurate." 17 C.F.R. § 210.4-01(a)(1). The Financial Accounting Standards Board's ("FASB") Statement of Financial Accounting No. 57 ("FAS No. 57") defines what constitutes a related party transaction. *See* SEC Release No. 33-8056 ("[FAS] No. 57 . . . sets forth the requirements under GAAP concerning transactions with related parties."). There, the FASB states that related party transactions include transactions between "affiliates," meaning "[a] party that, directly or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with an enterprise." FAS No. 57(24)(a). The FASB further defines "control" to mean "[t]he possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an enterprise through ownership, by contract, or otherwise." FAS No. 57(24)(b).

Plaintiffs argue that Maison was required to disclose that it acquired the Good Fortune Supermarkets through related party transactions. *See* (SAC ¶¶ 103–11). In response, Defendants raise three arguments as to why Maison was not required to disclose these acquisitions as related party transactions. *See* (Motion at 24–28). The Court will address each in turn.

First, Defendants argue that Maison was not required to disclose the Good Fortune Supermarket acquisitions as related party transactions because these acquisitions took place, respectively, in July and October 2019 and therefore fall outside the required

reporting period for Item 404.  *See* (Motion at 24–25); *see also* 17 C.F.R. § 229.404, inst.
1 (registrants required to list related party transactions for period specified in item and two
preceding fiscal years).  However, the Registration Statements provide "a summary of
transactions since July 2019 . . .  in which any [Maison] directors, executive officers, or
holders of more than 5% of [Maison's] capital stock . . . had or will have a direct or indirect
material interest."  (SAC ¶¶ 124, 138).  Therefore, even if Maison was not required to
disclose related party transactions from before May 2020 under Item 404, Maison was
nevertheless required to disclose any material related party transactions since July 2019,
so as to avoid misleading investors based on what it did disclose.  *See Garcia v. J2 Glob.,
Inc.*, No. 2:20-CV-06096-FLA (MAAX), 2021 WL 1558331, at *13 (C.D. Cal. Mar. 5,
2021) ("Even if J2 was not required to disclose van der Weijden's involvement pursuant
to Item 404, J2 had an independent duty to disclose information to ensure the statement it
made to the market in its 2015 press release was not misleading.").

Next, Defendants challenge whether the Complaint adequately alleges that Maison
and the Good Fortune Supermarkets are related parties.  *See* (Motion at 25–26).  The Court
has already addressed this argument.  *See Maison I*, 2025 WL 1009121, at *10 (factual
allegations sufficient to "demonstrate at the pleading stage that, through his managerial
roles in these connected entities, Defendant Xu may have exercised common control over
the [Good Fortune Supermarkets]").  Plaintiffs allege that Xu was listed as the agent for
service of process in the Certificates of Limited Partnership for Good Fortune San Gabriel
and Good Fortune Monrovia, signed both filings, and later served as COO at the general
partner for both entities.  *See* (SAC ¶¶ 73–74, 76–77).  This is enough to proceed to
discovery.  *See Snellink v. Gulf Res., Inc.*, 870 F. Supp. 2d 930, 939 (C.D. Cal. 2012) ("The
question whether Hongye was a related party in 2009 is a question of fact, and is
inappropriate to resolve at this stage of litigation.").[5]

---

[5] The Court rejects Defendants' related argument that "the Second Amended Complaint's
only allegations concerning undisclosed related parties is based on a post from
Hindenburg." (Motion at 26).  The Complaint explicitly states that "Plaintiffs' independent

1    Finally, Defendants argue that Plaintiffs have failed to plausibly allege that Maison's
2    acquisition of the Good Fortune Supermarkets through related party transactions would be
3    material to investors.  *See* (Motion at 28).  Plaintiffs allege that disclosure on this topic
4    would have been material, because these acquisitions related to "the Company's first two
5    supermarkets," which constitutes "Maison's core business." (*Id.* ¶ 106(a)).  According to
6    Plaintiffs, at the time of the IPO, Maison only owned a majority interest in four
7    supermarkets and, therefore, Good Fortune San Gabriel and Good Fortune Monrovia
8    "materially contributed to the Company's revenues." (*Id.* ¶ 106(b)).

9    Here, given the alleged importance of the Good Fortune Supermarkets to Maison's
10    revenues in relation to Maison's overall business, the Court concludes Plaintiffs'
11    allegations are sufficient to demonstrate a reasonable investor could have considered it
12    important to know that Maison acquired these stores in related party transactions. *See*
13    *Cheung v. Keyuan Petrochemicals, Inc.*, No. CV 11-9495 PSG JCGX, 2012 WL 5834894,
14    at *8 (C.D. Cal. Nov. 1, 2012) ("Given the magnitude of these [related party] transactions,
15    both in dollar terms and in proportion to the company's operations as a whole, these
16    transactions are something a reasonable investor might have considered . . . important and
17    so are material.") (internal quotation marks and citation omitted); *see also Sharma v. Rent*
18    *the Runway, Inc.*, 751 F. Supp. 3d 82, 114 (E.D.N.Y. 2024) (a misstatement may be
19    material because of its "relation to a significant aspect of the company's operations" even
20    "if the quantitative size of the misstatement is small") (quoting *ECA & Loc. 134 IBEW*
21    *Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 204 (2d Cir. 2009)).

22    Plaintiffs have therefore plausibly alleged that Maison was required to disclose the
23    *Zang* Litigation and related party transactions between Maison and the Good Fortune
24    Supermarkets.  The Court thus DENIES the Motion as to the Section 11 claim.

25    ────────────────

26    investigation has confirmed that Defendants failed to disclose transactions with entities
27    which Defendant Xu was affiliated with." (SAC ¶ 71).  Thus, the allegations of the
pleadings are not "derive[d] completely from a short-seller report's attributions." (Motion
28    at 27) (internal quotation marks omitted).

-13-

**B.      Section 15 Control Person Liability**

Defendants also move to dismiss Plaintiffs' claim for control person liability under Section 15 of the Securities Act.  To establish control person liability, Plaintiffs must allege (1) "a primary violation of the Securities Act"; and (2) that the Individual Defendants "directly or indirectly controlled the person or entity liable for the primary violation."  *Pino v. Cardone Cap., LLC*, 55 F.4th 1253, 1257 (9th Cir. 2022).  "In general, the determination of who is a controlling person . . . is an intensely factual question."  *Paracor Finance, Inc. v. General Electric Capital Corp.*, 96 F.3d 1151, 1161 (9th Cir. 1996); *see also Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000) (determining control person status "involv[es] scrutiny of the defendant's participation in the day-to-day affairs of the corporation and the defendant's power to control corporate actions").  However, to survive a motion to dismiss, Plaintiffs nevertheless must plausibly allege that a given defendant exercised control over a primary violator.  *See In re Downey Sec. Litig.*, No. CV 08-3261-JFW(RZX), 2009 WL 2767670, at *15 (C.D. Cal. Aug. 21, 2009) ("boilerplate allegation[s]" are "insufficient to state a claim for control person liability").

Here, Plaintiffs allege that Xu and Lopez, Maison's CFO, "planned and contributed" to the IPO, IPO Registration Statement, and Selling Shareholder Registration Statement, and further "possessed the power and authority to control the contents of the Company's reports to the SEC" and its "press releases and presentations" to "the market."  (SAC ¶¶ 27–29).  Plaintiffs also allege that all the Individual Defendants, in their capacity as Maison directors and officers, "signed or authorized the signing of the IPO Registration Statement" and did not make "a reasonable investigation or possess[] reasonable grounds" to believe that the statements therein were complete and accurate.  (*Id.* ¶¶ 190, 193).

These allegations are sufficient to survive a motion to dismiss.  *See Kyung Cho v. UCBH Holdings, Inc.*, 890 F. Supp. 2d 1190, 1208 (N.D. Cal. 2012) ("numerous courts have found that allegations that directors signed the statements which contain the material misrepresentations are sufficient to state . . . control status") (collecting cases); *Wool v. Tandem Computers Inc.*, 818 F.2d 1433, 1440–42 (9th Cir. 1987) (officers subject to

-14-

control person liability where they allegedly "had direct involvement not only in the day-to-day affairs of [the company] in general but also in [the company's] financial statements in particular"), *overruled on other grounds by Hollinger v. Titan Cap. Corp.*, 914 F.2d 1564, 1575 (9th Cir. 1990).  Thus, the Court DENIES the Motion as to the Section 15 claim.

### C.    The Section 10(b) Claim

Defendants argue that Plaintiffs' Section 10(b) claim fails to adequately plead an actionable misstatement or omission, a strong inference of scienter, or loss causation. *See* (Motion at 30–38).  As discussed below, Plaintiffs have adequately pled falsity but have not shown that Defendants acted with scienter in failing to disclose the *Zang* Litigation or loss causation as to Maison's failure to disclose that the Good Fortune Supermarkets were acquired in related party transactions.

#### 1.    Falsity

First, the Court must determine whether Maison, Xu, and Lopez made a false or misleading statement.  Unlike under Section 11, "[p]ure omissions are not actionable" under Section 10(b).  *Macquarie*, 601 U.S. at 260.  "Silence, absent a duty to disclose, is not misleading." *Basic Inc. v. Levinson*, 485 U.S. 224, 239 n.17 (1988).  Instead, "the failure to disclose information . . . can support a [Section 10(b)] claim only if the omission renders affirmative statements made misleading." *Macquarie*, 601 U.S. at 265; *see also Matrixx*, 563 U.S. at 44 ("Disclosure is required under these provisions only when necessary to make . . . statements made, in the light of the circumstances under which they were made, not misleading") (internal quotation marks and citation omitted).  Here, Plaintiffs challenge disclosures in Maison's Registration Statements. *See* (SAC ¶¶ 97–139).  Both Registration Statements were signed by Xu and Lopez, *see* (*id.* ¶ 28), and Defendants do not contest that Xu, Lopez, and Maison "made" the challenged statements.

Plaintiffs allege that Maison's failure to disclose the *Zang* Litigation was materially misleading in light of Maison's disclosures in the Registration Statements that (1) "there is no pending litigation or proceeding involving any of our directors, officers or employees

for which indemnification is sought, and we are not aware of any threatened litigation that may result in claims for indemnification"; and (2) "[t]he Company is otherwise periodically involved in various legal proceedings that are incidental to the conduct of its business," including a May 2020 lawsuit and a June 2022 lawsuit. *See* (*id.* ¶¶ 97–98, 116–17). While Plaintiffs have not pled any facts to suggest that Maison may be required to indemnify Xu, the Court agrees that the failure to disclose the *Zang* Litigation was nevertheless misleading in light of Maison's partial disclosure of legal proceedings dating back to 2020. By disclosing relatively minor proceedings, including a 2022 agreement to settle an employment law case for $98,500, *see* (SAC ¶ 131), a reasonable investor could surmise that Maison had completely disclosed all material litigation since 2020. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1010 (9th Cir. 2018) (once Defendants choose to speak on a topic, they are "bound to do so in a manner that wouldn't mislead investors").

Similarly, Plaintiffs allege that Maison's failure to disclose related party transactions involving the Good Fortune Supermarkets was materially misleading in light of Maison's disclosures in the Registration Statements (1) that it had acquired a majority interest in the Good Fortune Supermarkets; and (2) of "Certain Relationships and Related Party Transactions" from July 2019 forward, including a $20,000 loan that Maison provided to Xu. *See* (*id.* ¶¶ 124–25, 130–31, 134–35, 138–139). Again, the Court agrees. As with Maison's partial disclosure of pending litigation proceedings, these disclosures could lead a reasonable investor to conclude that Maison had provided a complete list of related party transactions since 2019. *See Khoja*, 899 F.3d at 1010.

For the reasons stated above, Plaintiffs have sufficiently alleged that Maison's disclosure of the *Zang* Litigation and its acquisition of the Good Fortune Supermarkets in alleged related party transactions would have been material to investors. *See supra* § III.A.

2.  Scienter

Next, the Court considers whether the Complaint adequately alleges that Defendants made each of the challenged statements with scienter. *See* 15 U.S.C. § 78u-4(b)(2)(A); *see also In re Wet Seal, Inc. Sec. Litig.*, 518 F. Supp. 2d 1148, 1157 (C.D. Cal. 2007). To

-16-

establish scienter, the complaint must show that Defendants acted with "a mental state embracing intent to deceive, manipulate, or defraud." *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1424 (9th Cir. 1994) (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 194 n.12 (1976)).   A plaintiff may meet this standard through a showing of reckless conduct, reflecting "an extreme departure from the standard of ordinary care" which "presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *Hollinger*, 914 F.2d at 1569, 1572 (internal quotation marks and citation omitted).   As a corporation, Maison "can only act through its employees and agents and can likewise only have scienter through them." *Alphabet*, 1 F.4th at 701 (internal quotation marks and citation omitted).   The scienter of Xu and Lopez, as Maison's "senior controlling officers," may be imputed to Maison "to establish liability as a primary violator of § 10(b) and Rule 10b-5." *Id.*

To determine whether Plaintiffs have pled scienter, the Court must determine "whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Tellabs*, 551 U.S. at 323.   To do so, courts within the Ninth Circuit conduct a two-part inquiry. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 992 (9th Cir. 2009), *as amended* (Feb. 10, 2009).   First, the Court must "determine whether any of the plaintiff's allegations, standing alone, are sufficient to create a strong inference of scienter." *Id.*   Then, "if no individual allegations are sufficient," the Court "will conduct a 'holistic' review of the same allegations to determine whether the insufficient allegations combine to create a strong inference of intentional conduct or deliberate recklessness." *Id.* In making this inquiry, "courts must 'take into account plausible opposing inferences' and determine that 'a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged.'" *Alphabet*, 1 F.4th at 701 (quoting *Tellabs*, 551 U.S. at 323, 324).

Based on the facts alleged, Plaintiffs have failed to establish Xu, Lopez, or Maison acted with scienter in failing to disclose the *Zang* Litigation.   True, Plaintiffs have plausibly

alleged that Xu, as a named defendant in *Zang*, and Lopez, as the CFO of another entity named as a defendant in *Zang*, were aware of that litigation. *See* (SAC ¶¶ 27, 63, 68); *see also* (Opp. at 30). However, "the important issue in this case is not whether Defendants knew the underlying facts, but whether Defendants knew that not disclosing the [*Zang*] Litigation posed [a] substantial likelihood of misleading a reasonable investor." *City of Philadelphia v. Fleming Companies, Inc.*, 264 F.3d 1245, 1264 (10th Cir. 2001); *see also S.E.C. v. Patty*, 891 F.2d 295, 295 (9th Cir. 1989) (Table) ("the danger of misleading buyers or sellers must be actually known or so obvious that any reasonable person would be aware of it"). Indeed, Plaintiffs have failed to allege any facts to suggest that the *Zang* Litigation was so obviously material to Maison's business that Xu and Lopez failed to disclose the litigation "knowingly, intentionally, or with deliberate recklessness." *Alphabet*, 1 F.4th at 701.

Nothing in the Complaint suggests, that at the time of the IPO, Xu or Lopez had reason to believe the *Zang* Litigation was likely meritorious. *Compare City of Philadelphia*, 264 F.3d at 1265 (no scienter for failure to disclose pending litigation where plaintiffs "alleged no particular facts on which [the] court could conclude that Defendants 'must' have known the . . . [l]itigation was meritorious, or that the damage award would be substantial") *with City of Fort Lauderdale Police & Firefighters' Ret. Sys. v. Pegasystems Inc.*, 683 F. Supp. 3d 120, 132 (D. Mass. 2023) (finding scienter where CEO reassured investors $3 billion claim against the company lacked merit, in light of allegations to plausibly suggest he was aware of meritorious claim). Nor do the other allegations in the Complaint, considered holistically, suggest that Maison acted with scienter in failing to disclose the *Zang* Litigation. Beyond allegations that Maison's omission of the *Zang* Litigation and omission of the related party transactions were both materially misleading, nothing connects the two. *See* 15 U.S.C. § 78u-4(b)(2)(A) (complaint must "state with particularity facts giving rise to a strong inference" of scienter "with respect to each act or omission"); *see also In re New Century*, 588 F. Supp. 2d 1206,

1228 (C.D. Cal. 2008) ("the Court reads the language in *Tellabs* as cautioning courts to

view the scienter allegations holistically with respect to each allegedly violative act").

However, the Court does not reach the same conclusion with respect to Xu and,

through him, Maison's alleged failure to disclose the Good Fortune Supermarket

acquisitions as related party transactions. Plaintiffs have plausibly alleged that Xu stood

on both sides of these transactions, acting as Maison's CEO, President, and Board Chair

and as COO for the general partner to the Good Fortune Supermarkets. *See* (*id.* ¶¶ 2, 74,

77); *see also* (*id.* ¶¶ 73, 76 (further alleging Xu signed the Certificate of Limited Partnership

for the Good Fortune Supermarkets and was named as their agent for service of process)).

Therefore, the Court may infer that Xu was aware of the related party transactions. *See*

*Vanleeuwen v. Keyuan Petrochemicals, Inc.*, No. CV 11-9495 PSG JCGX, 2013 WL

2247394, at *17 (C.D. Cal. May 9, 2013) ("it would be absurd to suggest" company's CEO

and Board Chair was not aware of related party transactions "worth millions of dollars with

his own companies"); *see also Brown v. China Integrated Energy, Inc.*, 875 F. Supp. 2d

1096, 1124 (C.D. Cal. 2012).

The inference that Xu and, through him, Maison were aware that Maison's failure

to disclose these acquisitions as related party transactions was misleading is "at least as

compelling as any opposing inference one could draw from the facts alleged." *Alphabet*,

1 F.4th at 701 (quoting *Tellabs*, 551 U.S. at 324). The Registration Statements each purport

to provide a "summary" of related party transactions "since July 2019," noting that most

of these transactions were between Xu and Maison and, elsewhere, that such transactions

carry "a risk of conflicts of interest" and "may not reflect terms that would be available

from unaffiliated third parties." (SAC ¶¶ 107, 110(d)); *see In re Montage Tech. Grp. Ltd.*

*Sec. Litig.*, 78 F. Supp. 3d 1215, 1226 (N.D. Cal. 2015) ("Montage has previously flagged

related party transactions in its financial statements, which shows that it was well aware of

its duty to comply with this disclosure requirement"). Moreover, the central place of the

Good Fortune San Gabriel and Good Fortune Monrovia supermarkets in Maison's business

at the time of the IPO, as two of the four stores in which Maison owned a majority equity

1    interest, supports the inference that Maison, through Xu, acted with scienter in failing to

2    disclose these transactions.

3        However, the Complaint has failed to allege Lopez acted with scienter in failing to

4    disclose these acquisitions involving related party transactions.  The well-pled facts are

5    insufficient to suggest Lopez was aware of Xu's relationship with the Good Fortune

6    Supermarkets, and the Court will not draw such an inference merely because Lopez has

7    "been listed as an officer in the business filings of at least one of Xu's entities."  (Opp. at

8    31).  Notably, the Complaint does not allege Lopez held a position at Good Fortune San

9    Gabriel, Good Fortune Monrovia, or the general partner to either entity.  *See* (SAC ¶ 159).

10            3.    Loss Causation

11        Finally, the Court must consider whether the Complaint adequately pleads loss

12    causation.   Under the PSLRA, a plaintiff must plausibly allege that the challenged

13    misstatements "caused the loss for which the plaintiff seeks to recover damages."   15

14    U.S.C. § 78u-4(b)(4).  In other words, "the plaintiff must demonstrate a causal connection

15    between the deceptive acts that form the basis for the claim of securities fraud and the

16    injury suffered by the plaintiff."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th

17    Cir. 2008).   "In fraud-on-the-market cases like this one, the plaintiff's theory of loss

18    causation begins with the allegation that the defendant's misstatements (or other fraudulent

19    conduct) artificially inflated the price at which the plaintiff purchased her shares—meaning

20    the price was higher than it would have been had the false statements not been made."  *In

21    re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 789 (9th Cir. 2020); *see also* (SAC ¶¶ 166–

22    70) (alleging fraud on the market to establish reliance).

23        To establish loss causation, a "plaintiff must show that after purchasing her shares

24    and before selling": (1) "the truth became known"; and (2) "the revelation caused the fraud-

25    induced inflation in the stock's price to be reduced or eliminated."  *In re BofI*, 977 F.3d at

26    789.  "The most common way for plaintiffs to prove that 'the truth became known' is to

27    identify one or more corrective disclosures."  *Id.* at 790.  Where a plaintiff seeks to establish

28    loss causation through a corrective disclosure, they "must plausibly allege that the

defendant's fraud was *revealed* to the market and *caused* the resulting losses." *Grigsby v. BofI Holding, Inc.*, 979 F.3d 1198, 1205 (9th Cir. 2020) (internal quotation marks and citation omitted). However, "[a] plaintiff is not required to show that a misrepresentation was the *sole* reason for the investment's decline in value." *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1062 (9th Cir. 2008) (internal quotation marks and citation omitted). Instead, the Complaint must plausibly allege "the drop in defendant's stock price was causally related to the defendant's financial misstatements." *Id.* (internal quotation marks and citation omitted).

Here, Plaintiffs allege that they purchased Maison's stock at an artificially inflated price. (SAC ¶ 144). Maison's Class A common stock "clos[ed] at an all-time high of $15.21 per share . . . on December 14, 2023," the day before Hindenburg detailed the results of its investigation through a series of X posts. (*Id.* ¶ 57). The next day, on December 15, 2023, Hindenburg detailed the *Zang* Litigation and also "posted that, based on its research, it believes that Maison was not disclosing related party transactions." (*Id.* ¶¶ 59–60). Maison's stock price fell after "Hindenburg posted the results of [its] investigation." (SAC ¶¶ 146–47). By the end of the day on December 15, 2023, "the price of Maison's Class A common stock fell 83.6%, or $12.71 per share, to close at just $2.50 per share." (*Id.* ¶ 61). Shortly thereafter, on December 18, 2023, Maison issued a statement that directly attributed the decline in its stock price to Hindenburg's reporting. *See* (*id.* ¶ 62).

Based on the facts alleged, Plaintiffs have failed to show that the "alleged revelation contains enough information to significantly undermine the allegedly fraudulent misrepresentation, such that it can be reasonably read to reveal the underlying fraud." *In re Genius Brands Int'l, Inc. Sec. Litig.*, 97 F.4th 1171, 1184 (9th Cir. 2024) (internal quotation marks and citations omitted). At the pleading stage, Plaintiffs are not required to disentangle investors' reaction to Hindenburg's report on the *Zang* Litigation and Hindenburg's suggestion that Maison engaged in undisclosed related party transactions. *See Gilead*, 536 F.3d at 1057. However, the bare allegation that Hindenburg "posted that, based on its research, it believes that Maison was not disclosing related party transactions,"

1  (SAC ¶ 60), is not enough to allege loss causation, *see Curry v. Yelp Inc.*, 875 F.3d 1219,
2  1225 (9th Cir. 2017) ("the mere 'risk' or 'potential' for fraud is insufficient to establish
3  loss causation") (citation omitted); *see also Loos v. Immersion Corp.*, 762 F.3d 880, 890
4  (9th Cir. 2014), *as amended* (Sept. 11, 2014) ("market speculation about whether fraud has
5  occurred . . . cannot form the basis of a viable loss causation theory").

6  　　　To be sure, "any corrective disclosure will necessarily take the form of contestable
7  allegations of wrongdoing," *In re BofI*, 977 F.3d at 792, and "[a] corrective disclosure also
8  need not precisely mirror the misrepresentation," *Genius*, 97 F.4th at 1184 (internal
9  quotation marks and citation omitted).  However, the disclosure must "reveal[] new facts
10 that, taken as true, render some aspect of the defendant's prior statement false or
11 misleading." *Genius*, 97 F.4th at 1184 (internal quotation marks and citation omitted).
12 While Plaintiffs claim that "Hindenburg's research . . . was not mere 'speculation'" because
13 it revealed "facts supporting undisclosed related party relationships," the Complaint
14 provides no allegations as to what facts Hindenburg "uncovered." (Opp. at 37).  Therefore,
15 Plaintiffs have failed to plead loss causation with particularity.  *See Grigsby*, 979 F.3 at
16 1206 (Rule 9(b)'s "heightened pleading standard applies to all elements of a securities
17 fraud claim, including loss causation").

18 　　　Because Plaintiffs fail to plausibly allege that Defendants acted with scienter in
19 failing to disclose the *Zang* Litigation or allege loss causation based on Defendants' failure
20 to disclose related party transactions involving the Good Fortune Supermarkets, the Court
21 GRANTS the Motion as to Plaintiffs' claims under Section 10(b) and Section 20(a).  *See*
22 *Zucco*, 552 F.3d at 990 ("Section 20(a) claims may be dismissed summarily . . . if a
23 plaintiff fails to adequately plead a primary violation of section 10(b).").

24 　　　**D.　Leave to Amend**

25 　　　Plaintiffs have requested leave to amend.  Generally, "in dismissals for failure to
26 state a claim, a district court should grant leave to amend." *Cook, Perkiss & Liehe, Inc. v.*
27 *N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).  Nevertheless, a district
28 court may, in its discretion, deny leave to amend when amendment would be futile.  *Zucco*,

552 F.3d at 1007. Amendment is considered futile where "allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010) (citation omitted). The Court does not find at this time that amendment would be futile and will grant Plaintiffs an additional opportunity to amend to cure the deficiencies identified in this Order only.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS, in part, and DENIES, in part, the Motion. Within twenty-one (21) days of the issuance of this Order, Plaintiffs may file a Third Amended Complaint curing the deficiencies identified herein. If Plaintiffs fails to file a Third Amended Complaint within twenty-one days, the SAC shall become the operative complaint, and Defendants must answer the SAC within fourteen (14) days thereafter.

**IT IS SO ORDERED.**

DATED: September 30, 2025

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE